UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:11-61663-CIV MORENO
ELECTRONICALLY FILED

CONTINENT AIRCRAFT TRUST 1087

    Plaintiff,

vs.

DIAMOND AIRCRAFT INDUSTRIES, INC.

    Defendant.
_____/

## PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT DIAMOND AIRCRAFT INDUSTRIES, INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Respectfully submitted,

/s/Juan Martinez
Juan Martinez (FBN 9024)
GRAYROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131-0014
Telephone: 305-416-6880
Facsimile: 305-416-6887
E-mail: juan.martinez@gray-robinson.com
COUNSEL FOR PLAINTIFF
-and-
V. Brandon McGrath
BINGHAM GREENEBAUM DOLL LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
Telephone: 513-455-7643
Facsimile: 513-455-8500
E-mail: BMcgrath@bgdlegal.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................. 1

      A.    Standard of Review ............................................................................ 1

      B.    Plaintiff Sufficiently Plead Its Claim That An Agency Relationship Exists
            Between Diamond and Premier ......................................................... 3

            1.    Plaintiff Pled Sufficient Facts to Demonstrate that Diamond
                  Provided Premier With Actual Agency Authority ..................... 3

            2.    Plaintiff Pled Sufficient Facts to Demonstrate That Diamond Gave
                  Premier Apparent Agency Authority ......................................... 6

            3.    Florida Law Only Requires Pleading Agency to Meet
                  Requirements Under Rule 8, Not The Heightened Standard Under
                  Rule 9(b) ................................................................................... 7

      C.    The Agency Relationship Between Diamond and Premier Does Not
            Establish Contractual Privity Between Plaintiff and Diamond ............ 8

            1.    The Disclaimers in the Aircraft Sale Agreement Do Not Apply ....... 8

            2.    The Economic Loss Rule Does Not Apply .................................. 9

      D.    Plaintiff Has Sufficiently Pled Its Claims for Fraudulent
            Misrepresentation, Negligent Misrepresentation, and Fraudulent
            Concealment ................................................................................... 10

            1.    Plaintiff Has Sufficiently Pled Its Claims for Fraudulent and
                  Negligent Misrepresentation ..................................................... 10

            2.    Plaintiff Has Sufficiently Pled Fraudulent Concealment ......... 15

            3.    Plaintiff is Proper Party to Bring the Complaint.  Alternatively,
                  Rules 17 and 15 Provide Relief to Amend Same to Include Proper
                  Party ........................................................................................ 19

III.  CONCLUSION ............................................................................................. 20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:11-61663-CIV MORENO**
**ELECTRONICALLY FILED**

**CONTINENT AIRCRAFT TRUST 1087**

**Plaintiff,**

**vs.**

**DIAMOND AIRCRAFT INDUSTRIES, INC.**

**Defendant.**

_____/

**PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT**
**DIAMOND AIRCRAFT INDUSTRIES, INC.'S MOTION TO DISMISS AND**
**INCORPORATED MEMORANDUM OF LAW**

**I.**     **INTRODUCTION**

Plaintiff's Complaint with Jury Demand (**Doc. 1**) ("Complaint") alleges the necessary elements to state claims for fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment.   Plaintiff also sufficiently alleges an agency relationship between Diamond and its authorized distributors.   Therefore, Diamond's Motion to Dismiss (Doc. 30, "Diamond's Motion") should be denied.

**II.**     **ARGUMENT**

**A.**     **Standard of Review**

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must be construed in a light most favorable to the plaintiff and the factual allegations taken as true.   *Watts v. Florida Int'l Univ.,* 495 F.3d 1289, 1295-1296 (11th Cir. 2007).   To survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and provide "enough facts to state a claim to relief that is *plausible* on its

1

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (emphasis added). Notably, the U.S. Supreme Court, in defining "facial plausibility," emphasized that this standard is "not akin to a 'probability requirement' ...." *Id.* (citation omitted). Rather, the standard simply calls for "more than a *sheer possibility* that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). The Eleventh Circuit has summarized the principles established in *Twombly* as follows:

> The standard is one of "plausible grounds to infer." *Id.* The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible."

*Watts*, 495 F.3d at 1295 (citing *Twombly*). Therefore, if a complaint's statement of the claim "'give[s] the defendant fair notice of what the... claim is and the grounds upon which it rests,'" then the complaint is sufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

Additionally, the heightened pleading requirements under Fed. R. Civ. P. 9(b) "must be read in harmony" with Fed. R. Civ. P. 8, which only requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 663. Detailed factual allegations are not required." *Id.* "[W]hile mere conclusory allegations of fraud will not satisfy Rule 9(b), allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient." *In re Sahlen & Assocs., Inc.* 773 F. Supp. 342, 352 (S.D. Fla. 1991). "[T]he degree of specificity required by Rule 9(b) may vary according to the background of the parties and the information available to them at the time of pleading." *Id.* In some cases, "courts have determined that strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud." *Id.*

In short, Rule 9(b) does not eliminate notice pleading, and its requirements are satisfied by allegations of date, time, place, or through alternative means – all of which are contained in Plaintiff's Complaint.  Therefore, Defendant's Motion to Dismiss should be denied.

**B.     Plaintiff Sufficiently Plead Its Claim That An Agency Relationship Exists Between Diamond and Premier**

Generally, the issue of whether an agency relationship exists is a question of fact and not proper for determination on a motion to dismiss.  *See Villazon v. Prudential Health Care Plan*, 843 So. 2d 842, 853 (Fla. 2003) ("[T]he existence and scope of an agency relationship are generally questions of fact."); *see also McFeely v. Prudential Healthcare Plan Inc.*, 843 So. 2d 1023, 1024 (Fla. 1st DCA 2003).

**1.     Plaintiff Pled Sufficient Facts to Demonstrate that Diamond Provided Premier With Actual Agency Authority**

Plaintiff Under Florida law, actual agency, either implied or express, can be shown if there is: (1) consent to the agency by both principal and agent; and (2) control of the agent by the principal.  *CFTC v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009).  Implied actual authority is established when "the course of dealing between the agent and principal or the nature of the duties that the alleged agent is assigned by the alleged principal suggests that the agent possesses authority to act in some representative capacity for the principal."  *CFTC v. Gibraltar Monetary Corp.*, 2006 U.S. Dist. LEXIS 45129, at *64 (S.D. Fla. May 30, 2006).

Plaintiff pled sufficient facts to demonstrate the course of dealing between Diamond and Premier and that an agency relationship exists through the distributor agreement and that Diamond had significant control over Premier's operations, and thus, Diamond is liable for any misrepresentations or concealment of information made by its distributors, including Premier. [1]

---

[1] Note that Diamond did not dispute this very issue in its Motions to Dismiss in the other two companion representative cases currently before this Court, *Twinstar Partners, LLC v. Diamond Aircraft Industries, Inc.*, Case

(Complaint ¶¶ 19-29).  Under the distributorship agreement, Diamond gives Premier significant authority to speak on its behalf in regard to Diamond's aircraft.  (*Id.*)  "[A]n agent's authority 'may be conferred by writing, by parole [sic], or it may be inferred from the related facts of the case.'"  *Matienzo v. Mirage Yacht, LLC*, 2011 U.S. Dist. LEXIS 39703, at *7 (S.D. Fla. Apr. 12, 2011).  The authority to perform an act can be "created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account."  *Gilson v. T.D. Bank,* 2011 U.S. Dist. LEXIS 7805, at *10-11 (S.D. Fla. Jan. 27, 2011).  In fact, "apparent agency can arise even in the face of the principal's silence when the principal by its actions creates a reasonable appearance of authority."  *Borg-Warner Leasing v. Doyle Electric Co.*, 733 F.2d 833, 836 (11th Cir. 1984).  Here, Diamond has publically promoted its agency/distributor relationship with Premier through its course of dealings with potential customers.  Further, Florida law is clear that the characterizations used by parties to describe their relationship do not dictate whether an agency relationship exists.  *See Villazon*, 843 So. 2d at 853-854.

Contrary to Diamond's allegations, Plaintiff alleges numerous facts in its Complaint that demonstrate an agency relationship between Diamond and Premier.  In addition to alleging that "Diamond authorized distributors and their employees were agents of Diamond" (Complaint ¶ 19), Plaintiff also alleged the following in its Complaint: "Diamond required its authorized distributors to execute written distributorship agreements, which specified the duties and obligations of the authorized distributors" (*Id.* at ¶ 21); "Diamond trained all of the staff of the authorized distributors" regarding its procedures which must be followed when marketing its products (*Id.* at ¶ 24); "Diamond…mandated strict inventory requirements and sales procedures"

---

No. 0:11-CV-61684-MORENO (Doc. 26) and *World Traveling Fools, LLC v. Diamond Aircraft Industries, Inc.*, Case No. 0:11-CV-61670-MORENO (Doc. 30), which involve almost identical facts related to two other authorized distributors of Diamond.

for its authorized distributors (*Id.*); Diamond "provided the authorized distributors with precise statements to make to customers and precise guidelines to follow" (*Id.* at ¶ 25); "[i]f distributors do not closely and carefully comply with Diamond's rules, Diamond *can and will strip authorized distributors of their status*" (*Id.* at ¶ 26) (emphasis added)); "Diamond participated in all aspects and phases of the sales process" with its authorized distributors for all aircraft sales (*Id.* at ¶ 27); that "Diamond's representatives often appeared alongside the authorized distributors in sales and promotional settings such as…airshows… At these air shows, individuals from Diamond's corporate offices and individuals from Diamond's authorized distributors wore identical shirts and worked together to answer questions for potential customers" (*Id.* at ¶ 29); and that "[t]o Diamond's customers, Diamond and its authorized distributors were indistinguishable, which was Diamond's intent" (*Id.* at ¶ 30).

Moreover, Plaintiff's Complaint alleged, specifically with regard to Premier, that Mr. Damgaard-Iversen only began negotiations with Premier "after reading about and researching Diamond…[and] noted that Premier was mentioned in numerous publications alongside Diamond's name and appeared to be the largest authorized distributor for Diamond's aircraft. As such, he began negotiations and discussions with Susan McKenzie, the Sales Coordination Manager at Premier, in late December of 2006 or early January of 2007." (*Id.* at ¶ 42). Therefore, Premier held itself out to be an agent of Diamond. Likewise, Diamond publicized Premier as one of its largest distributors and Mr. Damgaard-Iversen only dealt with Premier as he reasonably believed Premier meant he was working with Diamond for the purchase, which is exactly what Diamond wanted him to believe. Moreover, the allegations in Plaintiff's Complaint directly allege Diamond's agency relationship with Premier. Diamond clearly had control over

all aspects of Premier's day-to-day sales and negotiation process when marketing Diamond's products, as Premier was its agent.

> **2.     Plaintiff Pled Sufficient Facts to Demonstrate That Diamond Gave Premier Apparent Agency Authority**

Plaintiff also pled sufficient facts to demonstrate that apparent agency was present between Diamond and Premier.  The "representation" requirement identified by Diamond for pleading apparent agency can be satisfied in multiple manners.  *See Gilson*, 2011 U.S. Dist. LEXIS 7805, at *10-11.  Contrary to Diamond's implication that Plaintiff needed to provide examples of Diamond explaining to the Plaintiff that Diamond's authorized distributors were its agents, "[a]n agent's authority 'may be conferred by writing, by parole, *or it may be inferred from the related facts of the case.*'"  *Matienzo*, 2011 U.S. Dist. LEXIS 39703, at *7 (emphasis supplied).  In fact, "[e]ven if the principal is silent, *apparent authority can arise when the principal by his or her actions creates a reasonable appearance of authority*."  *Gilson*, 2011 U.S. Dist. LEXIS 7805, at *19-20 (emphasis added).

Further, Diamond attacks Plaintiff's factual allegations which demonstrated sufficient representations made by Diamond to Plaintiff that Premier was its agent as "the focus is on the appearance created by the principle, and not the appearance created by the agent." (Diamond's Motion, p. 8).  However, Diamond continued to hold Premier out to be its agent, as a distributor, throughout the entire sales and negotiation process beginning with in 2006 through the ultimate purchase of the involved aircraft.  And again, Diamond's website lists all of its authorized distributors for the purchase of its aircraft, which is one of the primary reasons Mr. Damgaard-Iversen contacted Premier, and Diamond continually works with Premier at airshows, wearing the exact same shirt with a Diamond logo and affirmatively boasting about its relationship with all of its authorized dealership, including Premier (Complaint ¶¶ 23, 29-30).

Plaintiff's Complaint outlines that Diamond's relationship with its authorized distributors created at least a "reasonable appearance of authority." (Complaint ¶¶ 19-30). Based on Diamond's relationship with Premier, Plaintiff specifically alleges that "[t]o Diamond's customers, Diamond and its authorized distributors were indistinguishable." (*Id.* at ¶ 30). The mere fact that Plaintiff can "point to *any* conflicting facts or inferences to be drawn from the facts," precludes the issue of agency being decided as a matter of law. *McFeely*, 843 So. 2d at 1024 (citations omitted) (emphasis added). Accordingly, Plaintiff has alleged facts demonstrating that an agency relationship existed between Diamond and Premier sufficient to survive a motion to dismiss.

### 3.   Florida Law Only Requires Pleading Agency to Meet Requirements Under Rule 8, Not The Heightened Standard Under Rule 9(b)

Diamond's attempt to require the allegations of agency meet the heightened standards for fraud under Rule 9(b) is unfounded. (Diamond's Motion, p. 9, n. 8). Plaintiff's Complaint contains sufficient factual matter to meet the requirements of Rule 8, and the heightened standard under Rule 9(b), including specifics regarding Diamond and Premier. (Complaint at ¶¶ 19-30, 40-47); *Iqbal*, 556 U.S. at 663.

The Southern District of Florida previously held that the Rule 8 pleading standard applies to agency allegations. In *CFTC v. Gibraltar Monetary Corp.*, 2004 U.S. Dist. LEXIS 30495 (S.D. Fla. Oct. 21, 2004), this Court examined a party's "motion to dismiss pursuant to Rules 12(b)(6) and 9(b)" in which it was "asserted that the [opposing party] failed to plead the existence of an agency relationship with particularity as is require[d]...by Rule 9(b) when agency is a circumstance of an alleged fraud." *Id.* at *2-3. After review, this Court explicitly "rejected [the movant's] assertion that Rule 9(b) specificity was required...*[as] the proper*

*pleading standard for the agency relationship [alleging fraud] was under Rule 8….*" *Id.* at *3 (emphasis added).

Therefore, this Court has affirmatively held that the heightened pleading standard of Rule 9(b) **does not apply** when pleading the existence of an agency relationship **in circumstances involving alleged fraud** for a motion dismiss, and the Eleventh Circuit has affirmed same. *See id.; CFTC v. Gibraltar Monetary Corp.,* 575 F.3d 1180.  Accordingly, Diamond's position that Rule 9(b) extends to the establishment of agency is without legal support and contradictory to this Court's own precedent.  Therefore, Diamond's Motion to Dismiss should be denied.

### C.   The Agency Relationship Between Diamond and Premier Does Not Establish Contractual Privity Between Plaintiff and Diamond

#### 1.   The Disclaimers in the Aircraft Sale Agreement Do Not Apply

As discussed above, Plaintiff pled sufficient facts regarding the agency relationship between Diamond and Premier.  However, the agency relationship does not, without more, give rise to contractual privity between Diamond and Plaintiff.  Neither party has ever claimed that contractual privity exists between Diamond and Plaintiff, either in this action or any prior action before this Court,[2] as is obvious from the fact that Diamond is not a party to the Aircraft Sales Agreement ("Agreement").  (Diamond's Motion, p. 1, Exh. A).  Accordingly, Diamond cannot avail itself of the warranty disclaimers set forth in the Agreement as a defense to Plaintiff's claims.

Even assuming *arguendo* that the agency relationship between Diamond and Premier somehow creates contractual privity between Plaintiff and Diamond, Florida law is clear that the existence of a written disclaimer, such as the one contained in the Agreement, is ineffective to negate liability for intentional torts.  *See, e.g., Pinellas Suncoast Transit Auth. v. Mincom, Inc.,*

---

[2] *See Mascaro Aviation, L.L.C., v. Diamond Aircraft Industries, Inc.*, No. 10-60556-CIV-MORENO-BROWN.

2007 U.S. Dist. LEXIS 30018, at *7 (M.D. Fla. Apr. 24, 2007) ("[A] warranty disclaim cannot relieve a party from liability for fraud.").

### 2.      The Economic Loss Rule Does Not Apply

Under Florida law, even if privity existed, the economic loss rule would not bar Plaintiff's claims because they are tort claims independent of breach of contract claims.  *See Indem. Ins. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).  As conceded by Diamond (Diamond's Motion, p. 12), the economic loss rule applies under Florida law in only two circumstances: (1) when the parties are in contractual privity and one party seeks to recover damages in tort rather than through available contract remedies; and (2) when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property.  *Indem. Ins.*, 891 So. 2d at 536.  Neither of these circumstances applies in this case.

In circumstances involving contractual privity, the economic loss rule "is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort."  *Id.* (citation omitted).  "Underlying this rule is the assumption that the parties to a contract have allocated the economic risks of nonperformance through the bargaining process," and thus, through negotiations of a contract, the economic loss rule prevents "[a] party to a contract who . . . is, in effect, seeking to obtain a better bargain than originally made."  *Id.*  There was no such contract between Diamond and Plaintiff.

In *Indemnity Ins.*, the Florida Supreme Court gave an in-depth analysis of the economic loss rule under Florida law, and held that even if privity exits, the economic loss rule does not bar tort claims that are "independent of [a] breach of contract" claim.  *Id.* at 537.  In short, the Florida Supreme Court held that tort claims may still be brought even where privity exists, if the defendant "committed a tort independent of the breach of contract."  *Id.*  More specifically, the Court held "[a]lthough parties in privity of contract are generally prohibited from recovering in

tort for economic damages, we have permitted an action for such recovery… [when it] involves torts committed independently of the contract breach, such as fraud in the inducement." *Id.*

In this case, Plaintiff's claims are based on Diamond's "intentional or negligent acts considered to be independent from" a breach of contract claim. Therefore, even assuming contractual privity existed, the economic loss rule would not bar Plaintiff's claims, as its claims are independent tort claims that "require proof of facts separate and distinct from [a] breach of contract." *Id.   See also Allen v. Stephan Co.*, 784 So. 2d 456, 457-458 (Fla. 4th DCA 2000) ("The law is well established that the economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation."); *Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999). Accordingly, Plaintiff's claims are *outside the scope of the economic loss doctrine* and Defendant's Motion to Dismiss should be denied. *Indem. Ins., supra*; *Allen*, 784 So. 2d at 458.

**D.    Plaintiff Has Sufficiently Pled Its Claims for Fraudulent Misrepresentation, Negligent Misrepresentation, and Fraudulent Concealment**

**1.    Plaintiff Has Sufficiently Pled Its Claims for Fraudulent and Negligent Misrepresentation**

The fraudulent and negligent misrepresentation claims are based on two primary factual allegations: (1) Diamond knew or should have known that TAE could not provide the warranty Plaintiff relied on when it purchased the DA42; and (2) Diamond intended to make such misrepresentations in order to induce Plaintiff to purchase the DA42, causing Plaintiff to suffer significant damages. Although Diamond mischaracterizes these claims, the Complaint properly alleges facts to support both.

Diamond actively promoted the availability and extent of TAE's engine warranty at every stage of the aircraft sale process in order to induce customers to purchase its aircraft. (*See* Complaint ¶¶ 31-34, 37, 46-47). By affirmatively disseminating the terms of TAE's warranty to

10

potential customers, Diamond represented to Plaintiff that the engines would be under a pro-rated warranty for 2,400 flight hours or 12 years, when in fact, Diamond knew TAE would not be able to honor the warranty's terms.

Plaintiff properly alleges that Diamond and its authorized distributors knew or should have known that TAE could not honor the warranty which was intended to cover the additional, costly engine maintenance and inspections. (*See Id.* at ¶¶ 8, 11-13, 31, 38, 50, 53). Assuming Plaintiff's allegations are true, then the fact that TAE was facially offering a warranty at the time Diamond made its representations is immaterial because Diamond knew the warranty was merely a facade. Diamond's assertion that no misrepresentation took place lacks merit as Premier and Diamond did not simply restate the terms of the warranty, but instead affirmatively represented to Plaintiff that it could have complete confidence in TAE and the engine warranty administered by TAE. (*Id.* at ¶¶ 41-45). Moreover, the Complaint alleged that "Ms. McKenzie expressed to Mr. Damgaard-Iversen that TAE engines were high quality...and that Diamond worked closely with TAE in developing the turbo-diesel engines and that Diamond was extremely confident in TAE and the engine technology." (*Id.* at ¶ 45).

Diamond has continued to argue that such statements are either not *mis*representations and/or that such statements are not material facts but mere puffery which no reasonable investor would rely upon. (*Id.* at 14-15). However, as has been explicitly recognized by this Court, "materiality is a question of fact that typically is not resolved at [the motion to dismiss] stage...[unless] the misrepresentations are 'so obviously unimportant to an investor that reasonable minds cannot differ.'" *In re Hamilton Bancorp, Inc. Sec. Litig.*, 194 F. Supp. 2d 1353, 1356 (S.D. Fla. 2002) (citation omitted). Therefore, in addition to the allegations of material facts which were misrepresented to Mr. Damgaard-Iversen about the reliability and

administration of the engine warranty (Complaint ¶ 45), the Complaint provided Plaintiff's general allegations concerning the significance of the engine warranty (*Id.* at ¶¶ 32-38), and its specific allegation that '[b]ecause Mr. Damgaard-Iversen knew how much these replacements [guaranteed to be covered under the warranty] could cost, he sought additional assurances regarding the engine warranty" from Diamond's representatives. (*Id.* at ¶ 44). Therefore, Plaintiff sufficiently alleged a material misrepresentation.

For Diamond to argue that a reasonable buyer would not have found it material if Diamond disclosed its knowledge of TAE's issues as it relates to fulfilling its obligations under the warranty is disingenuous. In fact, the most important issue for Mr. Damgaard-Iversen was the new engine technology and that a warranty covered the expensive and continual costs related thereto. Diamond knew or should have known about TAE's investigations and financial problems, and its continued affirmative statements that TAE and the warranty could be relied upon was a clear misrepresentation of a material fact – one which induced Plaintiff to purchase the involved DA42 (*Id.* at ¶¶ 48, 51).

Moreover, under Florida law, although "[i]t is true that 'generally a misrepresentation, to be actionable, must be one of fact rather than of opinion'," this rule does not apply "where the representee does not have equal opportunity to become apprised of the truth or falsity of the fact represented." *Vokes v. Arthur Murray, Inc.*, 212 So. 2d 906, 908-909 (Fla. 3d DCA 1968) (citation omitted). *See also Majia v. Jurich*, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001) ("Where the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false, then the opinion may be treated as a statement

of fact.").[3]  Plaintiff alleges in its Complaint that, due to its "close business relationship with TAE," and status as "TAE's largest customer," Diamond was aware of the auditor's report describing "serious financial irregularities at TAE" and the report of the German investigation which released details of the investigation of TAE in 2006.  Further, even after reasonable due diligence, Plaintiff could not have found and/or been able to understand as such information was not published in the United States and was written in German.

Accordingly, Plaintiff has "identif[ied] facts that are suggestive enough" to make the alleged misrepresentations more than just mere puffery or opinion, but instead actionable statements made by Diamond and its representatives/agents. *Watts*, 495 F.3d at 1296.  Further, even though Diamond has claimed that having a close business relationship with TAE is not sufficient to establish Diamond's knowledge of TAE's troubles, Plaintiff is not required to plead this "relationship" with any greater specificity, in that Rule 9(b) only requires knowledge to be "alleged generally."

Diamond knew the engine warranty was the only reason anyone would purchase a DA42 with a TAE engine and Plaintiff was justified in relying on statements and misrepresentations related thereto made by Diamond and Premier.  (*Id.* at ¶¶ 37-38, 51, 54, 60).  Diamond's argument that because Plaintiff did not explicitly allege reliance on representations made by Mr. Heinrich of Diamond is irrelevant and unfounded.  Plaintiff's Compliant specifically discloses the conversations Mr. Damgaard-Iversen had with Mr. Heinrich regarding the DA42, its new engine and the warranty covering same, as well as multiple conversations with Ms. McKenzie, another agent of Diamond.  (*Id.* at ¶¶ 51, 54).  Plaintiff's Complaint has made it abundantly clear

---

[3] Such case law was specifically relied upon by Magistrate Judge, Hon. Stephen T. Brown  in *Mascaro Aviation, L.L.C., v. Diamond Aircraft Industries, Inc.*, No. 10-60556-CIV-MORENO-BROWN (S.D. Fl. 2011), which involved similar circumstances and allegations, when it was correctly determined in the Report and Recommendation (dated Jun.14, 2011) that Mascaro Aviation pled sufficient factual matter in order for its claims of, *inter alia*, fraudulent and negligent misrepresentation, to pass the motion to dismiss stage.

that Mr. Damgaard-Iversen relied on these affirmative representations and it was reasonable for him to do so, which is more than sufficient to meet the reliance element of the fraudulent and negligent misrepresentation claims.

   In terms of damages resulting from TAE's voiding of the warranty and Diamond's misrepresentations regarding same, Plaintiff sufficiently pled that "as a direct and proximate result of Mr. Damgaard-Iversen's justified reliance on" Diamond and its agent's misrepresentations, Plaintiff suffered damages including the value of the voided warranty, the expenses incurred in repairing the engine no longer covered by a warranty, and the diminution in value of the DA42 as a result of same. (*Id.* at ¶¶ 52, 55). Moreover, the warranty had an ascertainable value at the time Plaintiff purchased the aircraft. *See, e.g., Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 36 (E.D.N.Y. 2006); *Woods v. Maytag Co.*, 2010 U.S. Dist. LEXIS 116595, at *31 – 37 (E.D.N.Y. Nov. 2, 2010) (stating in part "[b]ecause a warranty is considered to be a statement of present fact and not a promise of performance, a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim") (citations and quotations omitted); *Mobil Chemical Co. v. Hawkins*, 440 So. 2d 378, 382-383 (Fla. 1st DCA 1983) ("The same facts that are the basis for a breach of warranty count *can be* . . . the basis of a fraudulent misrepresentation count") (emphasis added).

   Importantly, the TAE warranty was designed to cover the additional engine inspections and replacements which TAE, Diamond, and Premier already **knew** were required for the engines due to their novelty. Diamond knew that without the warranty protection, no one would have purchased the DA42. Accordingly, the TAE warranties were not warranties of future performance. *See Ontario Hydro v. Zallea Systems, Inc.*, 569 F. Supp. 1261, 1266 – 1267 (D. Del. 1983) ("[A] warranty of future performance of a product must expressly provide some form

of guarantee that the product will perform in the future as promised."). The warranties did not promise that TAE engines would perform in a certain manner in the future or state that the engines would not fail for a specified amount of years. Rather, the warranties Diamond affirmatively represented to Plaintiff explained that certain known, frequent repair, inspection, and replacement costs would be covered.

Even under Rule 9(b), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face,'" in which plausible only requires a "sheer possibility" that the allegations could be true. *Iqbal*, 556 U.S. at 678 (citation omitted) (emphasis added). *See also Twombly*, 550 U.S. at 570. Thus, dismissal under Fed. R. Civ. P. 12(b)(6) is only permitted when "it is clear that no relief could be granted under *any set of facts* that *could* be provided consistent with the allegations." *Id.* at 563.

In the present matter, the Complaint did not merely contain "threadbare recitals of elements of a cause of action," but instead provided specific and detailed information to establish at least a possibility that Diamond and its agent participated in the impropriety pled herein. *Iqbal*, 556 U.S. at 663. Therefore, Plaintiff pled factual matter sufficient to meet all elements required for its fraudulent and negligent misrepresentation claims against Diamond and the heightened pleading standards found in Rule 9(b) as it relates to such claims. Accordingly, this Court must deny Diamond's Motion to Dismiss for such claims.

### 2.    Plaintiff Has Sufficiently Pled Fraudulent Concealment

It is clear that the criminal investigations by German authorities of TAE were not public in Germany until late 2006. (*See* Complaint ¶ 9). Plaintiff was completely in the dark regarding the claims and allegations which German authorities were bringing against TAE. In marked contrast, Diamond, being TAE's largest customer, would have been contacted by German authorities fairly early in the investigations because the focus of same revolved around TAE

using fraudulent invoices from its *customers* to deceive potential stockholders. (*Id.* at ¶¶ 11-12). Because Diamond would have been a potential target for TAE's alleged fraudulent invoices (in fact, the biggest target), Diamond would have been a logical early contact for German authorities investigating TAE. These facts illustrate that Diamond had drastically superior knowledge and access to information regarding TAE's financial and legal woes, as compared to Plaintiff.

Additionally, even when the findings of the German investigations were made "public," such information was published in German and appeared primarily, if not exclusively, in German media outlets and Diamond was aware of same. (*Id.* at ¶ 57). Mr. Damgaard-Iversen performed a "diligent inquiry" regarding all aspects of the DA42, its new engine and the costs associated therewith and thus met any requirements of a reasonable buyer under Florida law. It is unreasonable to expect Plaintiff to possess the knowledge or locate reports not available in U.S. outlets. Diamond, on the other hand, has operations in Austria, which is near TAE's German headquarters, and has multiple high-ranking employees that speak fluent German.

Moreover, Diamond's reliance on *Taylor v. American Honda Motor Co.,* 555 F. Supp. 59 (M.D. Fla. 1982) (Diamond's Motion, p. 17) is inappropriate, as under Florida law, the *Taylor* rule does not apply when the plaintiff does not have an equal opportunity to discover the facts at issue. *Ramel v. Chasebrook Constr. Co.,* 135 So. 2d 876, 882 (Fla. 2d DCA 1961). Furthermore, "if [a party] undertakes to [disclose facts within his knowledge].... he must disclose the whole truth." *Id.* Both exceptions apply here. Therefore, Diamond's claim that "superior knowledge is the only plausible avenue for Plaintiff to meet the 'duty' element of fraudulent concealment claim," and that Plaintiff did not allege any "half-truths" by Diamond or Premier that could trigger such duty is completely meritless. (Diamond's Motion, p. 17).

Plaintiff's Complaint satisfies the first exception by alleging that Diamond's close business relationship with TAE provided Diamond with superior access to TAE-related information, as compared to Plaintiff. (*See, e.g.*, Complaint ¶¶ 11-12, 45, 57). Plaintiff's Complaint satisfies the second exception by repeatedly alleging that Diamond: (1) disclosed facts regarding TAE and its engine warranty; (2) had secret knowledge regarding TAE's legal and financial woes; and (3) did not disclose the whole truth regarding TAE and the soundness of its engine warranty to Plaintiff. (*See id.* at Counts I, II & III).

Again, as pled in the Complaint, all of "[t]he concealed information was material to the transaction" because if Mr. Damgaard-Iversen had been informed that TAE was experiencing financial problems, may not be able to honor its warranties, and/or "that Diamond was developing its own engine intended to replace the TAE engine in the DA42, [he] would not have purchased the DA42" for fear of what ultimately happened – TAE voided the warranty, making Plaintiff responsible for significant costs which were to be covered by the warranty and left with a plane severely diminished in value due to same. (*Id.* at ¶¶ 61, 64-65). Thus, Plaintiff alleged the necessary factual elements for the claim of fraudulent concealment based on Diamond's failure to disclose relevant and material information about TAE and its exclusive knowledge about the Austro engine development.

Finally, Diamond argues that "[t]he mere fact that Diamond conducted business with TAE does not inherently mean that Diamond had special knowledge of the finances of TAE . . . [to] give rise to a duty to disclose that knowledge." (Diamond's Motion, p. 18). Diamond, however, continues to forget that even under the heightened pleading requirements of Rule 9(b), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face,'" and that the term plausibility only

requires "more than a sheer *possibility*" that events or actions alleged to have occurred in fact occurred. *Iqbal*, 556 U.S. at 678 (citation omitted) (emphasis added). *See also Twombly*, 550 U.S. at 570. Based on the allegations contained in the Complaint in the present matter, it would be improper to dismiss the case under Fed. R. Civ. P. 12(b)(6) as it would be nearly impossible to state that "no relief could be granted under *any set of facts*" pled by Plaintiff.

In regard to "half-truths" by Diamond, Plaintiff has continually maintained that Diamond and its agents not only completely failed to disclose its superior knowledge about TAE's financial condition and the development of its own engine to replace the TAE, but these representations could also be viewed as "half-truths" given that it made representations about the reliability of TAE, when it knew that this may no longer be the case given its financial problems and ongoing criminal investigation. Under Florida law, a duty has been recognized "where a party not under a duty to disclose undertakes to do so, but does so with half-truths." *Nourachi v. First American Title Ins. Co.*, 44 So. 3d 602, 612 (Fla. 5th DCA 2010). Plaintiff adequately alleged such a factual scenario with respect to Ms. McKenzie's statements regarding the TAE engine, and therefore stated a claim for fraudulent concealment as to that information.[4]

Plaintiff has sufficiently pled factual matter demonstrating that it is at least "plausible," if not extremely likely, that Diamond had "superior knowledge" of TAE's financial problems, criminal investigation and inability to administer the warranty and failed to do so, and/or failed to disclose the whole truth to Mr. Daamgard-Iversen. Moreover, it is clear that only Diamond would have information about its secret development of the Austro engine as it intentionally

---

[4] Note that Magistrate Judge, Hon. Stephen T. Brown in *Mascaro Aviation, L.L.C., v. Diamond Aircraft Industries, Inc., supra* at 10, correctly determined in his Report and Recommendation (Doc. 49, dated Jun.13, 2012) that Mascaro Aviation pled sufficient factual matter in order to establish that Diamond had a duty to disclose based on half-truths by a Premier sales representative in similar circumstances to the present matter and thus, Diamond's motion to dismiss related thereto was denied.

withheld such information from prospective buyers until after TAE became insolvent, so as not to scare potential buyers away from purchasing a TAE-powered DA42.

Therefore, the Complaint contains sufficient information to demonstrate that, whether through the "superior knowledge" or "half-truths" avenue, Diamond had a duty to disclose this material information to Mr. Damgaard-Iversen and Plaintiff, Diamond purposefully failed to disclose such information to benefit financially, and Plaintiff suffered damages as a direct result thereof. Accordingly, Diamond's Motion to Dismiss requesting the dismissal of Plaintiff's claim of fraudulent concealment must be denied.

### 3.     Plaintiff is Proper Party to Bring the Complaint.  Alternatively, Rules 17 and 15 Provide Relief to Amend Same to Include Proper Party

On a final note, Diamond incorrectly argues that Plaintiff is not the proper party to bring the lawsuit as the representations were not made to the trust, but to its sole beneficiary, namely Mr. Damgaard-Iversen.  (Diamond's Motion, p. 15-16).  First, it is important to note that this Court has previously held that it is improper to determine the real party in interest at the motion to dismiss stage because it is a question of fact.  *United States Distrib., Inc. v. Block*, 2009 U.S. Dist. LEXIS 95391 at *10 (S.D. Fla. Oct. 13, 2009).  Moreover, Fed. R. Civ. P. 17, explicitly permits a person, such as a trustee of a trust, to sue under the trust "without joining the person for whose benefit the action is brought."  Thus, in the present matter, Plaintiff brought the claims on behalf of Mr. Damgaard-Iversen without joining him, the person for whose benefit the action is brought, under Rule 17(a).  Accordingly, it is irrelevant that the involved misrepresentations made by Diamond and its representatives were not made to the trust (Plaintiff), as Plaintiff is bringing the claims on behalf of Mr. Damgaard-Iversen, the equitable owner of the DA42 and sole beneficiary of the trust holding same.

Alternatively, if the Court does determine that the proper party to bring the involved claims is Mr. Damgaard-Iversen, in his individual capacity, then the claims should not be dismissed, as claimed by Diamond (Diamond's Motion, p. 16), as the proper remedy under Rule 17 is for the Court to provide Mr. Damgaard-Iversen with a reasonable amount of time to ratify, join or be substituted in the action and then the action will proceed as if it was originally commenced by Mr. Damgaard-Iversen. Fed. R. Civ. P. 17(a)(3).  Thus, Diamond's Motion to Dismiss should be denied as to this issue.[5]

## III.   **CONCLUSION**

WHEREFORE, for the reasons herein stated, Plaintiff respectfully requests this Court to enter an order dismissing Diamond's Motion in its entirety.

---

[5] Moreover, Rule 15 provides, *inter alia*, that a district court "should freely give leave when justice so requires" in order to make other amendments to its pleading. Fed. R. Civ. P. 15(a).  Therefore, in addition to the mandates of Rule 17, the Court should not dismiss the matter but instead allow the Complaint to be amended to include Mr. Damgaard-Iversen under Rule 15. *See, e.g., Blue Marine Shipping SA De CV v. Gulmar Offshore Middle East, LLC*, 2010 U.S. Dist. LEXIS 49287, *19 (N.D. Fla. Apr. 26, 2010).

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 30, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified.

               Respectfully submitted,

               /s/Juan Martinez
               Juan Martinez (FBN 9024)
               GRAYROBINSON P.A.
               1221 Brickell Avenue, Suite 1600
               Miami, Florida 33131-0014
               Telephone: 305-416-6880
               Facsimile: 305-416-6887
               E-mail: juan.martinez@gray-robinson.com
               COUNSEL FOR PLAINTIFF
               -and-
               V. Brandon McGrath
               BINGHAM GREENEBAUM DOLL LLP
               2350 First Financial Center
               255 East Fifth Street
               Cincinnati, Ohio 45202
               Telephone: 513-455-7643
               Facsimile:  513-455-8500
               E-mail: BMcgrath@bgdlegal.com

## SERVICE LIST

**Continent Aircraft Trust 1087**
**vs.**
**Diamond Aircraft Industries, Inc.**
**Case No. 0:11-cv-61663 (MORENO)**
**United States District Court, Southern District of Florida**

Carl R. Nelson
cnelson@fowlerwhite.com
Ashley Bruce Trehan
ashley.trehan@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Phone: 813-228-7411
Fax:      813-229-8313
Attorneys for Defendant Diamond Aircraft Industries, Inc.

[Service by Notice of Electronic Filing generated by CM/ECF]