UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number:  11-61663-CIV-MORENO

CONTINENT AIRCRAFT TRUST, 1087,

      Plaintiff,

vs.

DIAMOND AIRCRAFT INDUS., INC.,

      Defendant.

_____/

### ORDER GRANTING IN PART MOTION TO DISMISS

      Plaintiff is a trust company that owns an aircraft manufactured by Defendant, Diamond

Aircraft Industries, Inc.  Plaintiff filed suit when the engine manufacturer, who succumbed to the

equivalent of bankruptcy proceedings in Germany, voided the engine warranty.  Plaintiff filed a

three-count complaint for negligent misrepresentation, fraudulent misrepresentation, and fraudulent

concealment, claiming its beneficiary relied on the validity of the engine warranty when he

purchased the aircraft.  Defendant has moved to dismiss arguing Plaintiff insufficiently pleads

agency and fraud.  The Court disagrees with those arguments in reviewing the motion to dismiss.

The Court does, however, agree that under Federal Rule of Civil Procedure 17, the trustee is the

proper party to bring this action and grants the motion to dismiss solely on that issue.

      THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss **(D.E. No. 30)**,

filed on **November 15, 2012**.

      THE COURT has considered the motion, the response, and the pertinent portions of the

record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED in part. Plaintiff has leave to file an amended complaint by no later than **June 13, 2013**.

### I. Background

Plaintiff, Continent Aircraft Trust 1087, is the owner of a Diamond DA42 Twin Star aircraft, sold by a Florida company, Premier Aircraft Sales, Inc., a non-party to this case. Defendant Diamond Aircraft Industries is a Canadian company that manufactures different models of light aircraft, including the Diamond DA42 Twin Star (the "DA42"). Karsten Damgaard-Iversen is presently the sole beneficiary of the Plaintiff Continent Aircraft Trust. The Aircraft Sales Agreement confirms that Mr. Damgaard-Iversen purchased the aircraft in his individual capacity. He later transferred ownership of the aircraft to Plaintiff.

Premier is a distributor of Diamond aircraft. The aircraft at issue in this case was equipped with twin turbo diesel engines that were manufactured by the German company Thielert Aircraft Engines GmbH ("TAE"). TAE and Diamond are two separate, unrelated entities. Diamond installed TAE engines in some of its aircraft. The engines were warranted only by TAE. Diamond specifically excluded the TAE engines from its warranty. On or about April 24, 2008 – more than a year after Mr. Damgaard-Iversen contracted to purchase the aircraft – TAE entered into a proceeding in Germany that is akin to a bankruptcy in the United States, and its warranties were voided.

Plaintiff seeks to recover from Diamond the damages Plaintiff suffered due to the loss of the warranty. Plaintiff claims it relied on the statements of Diamond's distributor, Premier, whose employee explained the terms of the TAE warranty. Specifically, Plaintiff's complaint makes claims for fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment.

The complaint also alleges an agency relationship between Diamond and its distributor, Premier. Plaintiff alleges that Diamond created a network of authorized distributors across the United States through which it markets and sells aircraft in the U.S. market. Diamond required its authorized distributors to execute written distributorship agreements, which specified the duties and obligations of the authorized distributors. These distributorship agreements designated specific territories of the United States to each of the distributors and contractually obligated the distributors to market Diamond aircraft in those states. Diamond provides the contact information for all of its U.S. authorized distributors on its website, which enables U.S. customers to log onto Diamond's website, obtain information about Diamond's aircraft, and immediately receive Diamond's recommendation on where to purchase. Plaintiff further alleges that Diamond also trained all of the staff of the authorized distributors on the operations of Diamond's aircraft and mandated strict inventory requirements and sales procedures. Diamond also distributed periodic memoranda and updates on promotions and technical problems to its distributors. Plaintiff alleges that Diamond was part of every transaction and encouraged customers to take delivery of the aircraft at the manufacturing facility in Ontario. Plaintiff's complaint also alleges that Diamond's representatives often appeared along with Premier's employees at sales events and air shows, and Diamond's employees would wear identical shirts to the distributors.

With regards to the TAE engine warranty, Plaintiff alleges Diamond created two standard Limited Warranty documents containing Diamond's own statements and representations regarding the length and reliability of the TAE engine warranty. Diamond provided these documents to its authorized distributors and Diamond intended that these documents be communicated to prospective buyers.

-3-

Mr. Damgaard-Iversen, Plaintiff Continent Aircraft Trust 1087's sole beneficiary, flew a DA42 Diamond Aircraft in the United Kingdom with a Diamond authorized representative believed to be Mr. Heinrich. During this flight, Plaintiff alleges that Mr. Damgaard-Iversen was told by Mr. Heinrich that the TAE engines would be covered by a warranty. After the test flight, Mr. Damgaard-Iversen learned that Premier was the largest authorized distributor of Diamond's aircraft. As such, he began negotiations and discussions with Susan McKenzie, the Sales Coordination Manager at Premier, in late December 2006.

Plaintiff alleges that in communicating with Susan McKenzie, Mr. Damgaard-Iversen emphasized the importance of the fuel economy and engine warranty. Ms. McKenzie informed him that the aircraft would need periodic replacements of the clutches and gearboxes, which would be covered by the engine warranty. Plaintiff claims that because Mr. Damgaard-Iversen knew how much these would cost, he sought additional assurance regarding the engine warranty.

As part of the transaction for the aircraft, Ms. McKenzie attached multiple documents to an email providing a limited warranty for the engines. Based on this representation, Mr. Damgaard-Iversen decided to purchase the aircraft through Premier. Plaintiff alleges that Ms. McKenzie's representations were fraudulent and negligent because Diamond knew or should have known that TAE would be unable to honor the warranties. Plaintiff alleges it reasonably relied on the misrepresentations to its detriment and has been damaged as a result. Continent Trust, the current owner of the aircraft, suffered damages, including the value of the voided TAE engine, the additional expenses incurred in repairing the TAE engines no longer covered by a warranty, and the diminution in value of the aircraft.

The complaint contains three counts: negligent misrepresentation, fraudulent

misrepresentation, and fraudulent concealment.  Defendant has moved to dismiss the complaint based on Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II. Legal Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986).  This tenet, however, does not apply to legal conclusions.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.  Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

Also at issue in this motion to dismiss is Federal Rule of Civil Procedure 9(b).  Under Rule 9(b), a plaintiff must plead the circumstances constituting fraud with particularity.  In considering a motion to dismiss for failure to plead fraud with particularity, however, courts must also keep in mind the notice pleading standard set forth in Rule 8(a).  Courts "must be careful to harmonize the directives of Fed. R. Civ. P. 9(b) with the broader policy of notice pleading." *SEC v. Physicians Guardian Unit Inv. Trust ex rel. Physicians Guardian, Inc.*, 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999) (citing *Friedlander v. Nims*, 755 F.2d 810, 810 (11th Cir. 1985)).  According to the Eleventh

Circuit, "Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997)).

### III.  Legal Analysis

#### A. Agency

The issue of whether an agency relationship exists generally is a question reserved for the trier-of-fact when resolution of the issue depends on the inferences to be drawn from the facts adduced. *See Villazon v. Prudential Health Care Plan*, 843 So. 2d 842, 853 (Fla. 2003) ("[T]he existence of an agency relationship is normally one for the trier of fact to decide.").  Florida law provides for actual or apparent agency. *Great Fla. Bank v. Countrywide Home Loans, Inc.*, No. 10-22124-CIV-HUCK, 2011 WL 382588, *4 (S.D. Fla. Feb. 3, 2011).  Under the doctrine of apparent authority, agency arises "when the principal allows or causes others to believe that an individual has authority to conduct the act in question, inducing their detrimental reliance." *Borg-Warner Leasing, v. Doyle Electric Co. Inc.*, 733 F.2d 833, 836 (11th Cir. 1984).  Apparent agency can arise even if the principal is silent, when the "principal by its actions creates a reasonable appearance of authority." *Id.*

The motion to dismiss presents the issue of whether Plaintiff has sufficiently pled an agency relationship under either actual or apparent authority.  To demonstrate an actual agency relationship,

a plaintiff must allege "(1) that the principal acknowledges the reputed agent was acting as its agent; (2) the reputed agent accepts that undertaking; and (3) control by the principal over the agent's day-to-day activities during the course of the agency relationship." *Great Fla. Bank*, 2011 WL 382588, at *4.  To allege apparent agency, a plaintiff must demonstrate facts showing "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation." *Id.*

Defendant argues the allegations do not sufficiently plead agency.  Specifically, Defendant argues there are no allegations to show Diamond's control over Premier's day-to-day operations. *See Great Fla. Bank*, 2011 WL 382588, at *4; *GEMB Lending, Inc. v. RV Sales of Broward, Inc.*, No. 09-61670-CIV-COHN, 2010 WL 3385343, *3-4 (S.D. Fla. Aug. 25, 2010).  For instance, Defendant argues there is no allegation that Diamond could hire, fire, or supervise Premier's employees or owners.  As to apparent agency, Diamond also argues Plaintiff has not identified any representation by Diamond designating Premier as its agent.  Citing *Pardo v. Tanning Research Laboratories, Inc.*, 996 F. Supp. 1222, 1226 (M.D. Fla. 1998), Defendant argues that the "focus is on the appearance created by the principal, and not the appearance created by the agent."

Although the Court agrees the allegations as to actual agency are thin, the Court disagrees that dismissal is appropriate at this stage of the litigation.  Plaintiff does allege that Diamond trained all of the staff of the authorized distributors on the operations of Diamond's aircraft and mandated strict inventory requirements and sales procedures.  Diamond also distributed periodic memoranda and updates on promotions and technical problems to its distributors.  Plaintiff alleges that Diamond was part of every transaction and encouraged customers to take delivery of the aircraft at the manufacturing facility in Ontario.  Based on these allegations of Diamond's involvement, the Court

cannot say on a motion to dismiss that Plaintiff fails to sufficiently allege actual agency.

Likewise, the Court disagrees with Defendant that Plaintiff fails to state a claim for apparent agency. Plaintiff alleges that Diamond made a representation on its website on where its aircraft could be purchased and that the Plaintiff relied on that representation in purchasing the aircraft. These allegations sufficiently state a claim for apparent agency.

### 1. Rule 9(b) Pleading Standard

At issue in the motion to dismiss is whether Rule 9(b) applies when pleading an agency relationship in circumstances involving fraud. In *CFTC v. Gibraltar Monetary Corp., Inc.*, No. 04-80132-CIV-DIMITROULEAS (S.D. Fla. Oct. 21, 2004), Judge Dimitrouleas affirmed his prior holding and rejected the argument that Rule 9(b) requires a plaintiff to plead the existence of an agency relationship with particularity when agency is a circumstance of an alleged fraud. The Court held the proper pleading standard for the agency relationship was under Rule 8. Although *CFTC* recognizes that the plaintiff was using entirely separate facts to plead agency and the fraud, the Court finds the holding persuasive here, albeit the allegations of agency and fraud are more intertwined. In reviewing the allegations of agency, the Court finds the Rule 8 standard applies and is met.

### B. Contract Disclaimers and the Economic Loss Rule

Defendant argues that even if this Court were to find agency is sufficiently pled, the contract disclaimers preclude Plaintiff's claims for fraudulent and negligent misrepresentation from going forward. Citing the contract disclaimers, Defendant argues that dismissal of the fraud claims is appropriate because the contract disclaimers preclude Plaintiff's reasonable reliance on any statements prior to executing the Aircraft Sales Agreement. The Court disagrees with this argument.

Florida law provides that the existence of a written disclaimer, such as the one contained in

the Aircraft Sales Agreement, is ineffective to negate liability for intentional torts. *See Pinellas Suncoast Transit Auth. v. Mincom, Inc.*, No. 06-CIV-2042, 2007 WL 1222595, *7 (M.D. Fla. April 24, 2007) ("A warranty disclaim cannot relieve a party from liability for fraud.").

In addition to arguing the disclaimers void liability for the Plaintiff's claims, Defendant also argues the economic loss rule precludes Plaintiff's agency argument. The argument is that if Plaintiff proves agency, and establishes contractual privity, then the Defendant argues the economic loss rule bars Plaintiff's tort claims. "The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Tiara Condo. Assoc., Inc. v. Marsh & McLennan Co., Inc.*, No. 09-11718, 2013 WL 1606345, *2 (11th Cir. April 16, 2013) (quoting *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004)). Despite the general prohibition against recovery in tort for economic damages for parties in privity of contract, Florida law has allowed claims for torts committed independent of the contract breach, such as is present in this case, fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment. *Id.*, at *3; *Tiara Condo. Assoc. Inc. v. Marsh & Mclennan Co., Inc.*, No. SC10-1022, 2013 WL 828003, *2 (Fla. March 7, 2013). The facts underlying the intentional tort claims (i.e. how Plaintiff was induced to purchase the aircraft) are distinct from the breach of the aircraft sales agreement, which is a failure to provide an engine warranty as per the contract. Accordingly, the Court will not dismiss the claims based on the economic loss rule at this stage of the litigation.

Moreover, the Florida Supreme Court in *Tiara* limited the application of the economic loss rule to products liability cases. *Id.* This case is not one based on products liability and therefore, this

Court will not apply the rule to dismiss Plaintiff's claims.

### C. Is Fraud Sufficiently Pled?

In moving to dismiss, the Defendant argues there are no allegations that amount to a misrepresentation. Plaintiff claims Defendant knew or should have known TAE was facing bankruptcy and would be unable to honor the engine warranty. Despite the German proceedings, Plaintiff claims Ms. McKenzie sent Mr. Damgaard-Iversen an email attaching several documents outlining the warranty terms – terms Plaintiff claims Ms. McKenzie either knew or should have known would not be honored. The emailed documents indicate the engines had "a full-factory warranty" for "12 years or 2400 hours." A separate Limited Warranty document attached to the email stated the DA42 engines were covered by a warranty for "parts and labor prorated over 2,400 hours or 12 years." Plaintiff alleges that consistent with the documents, Ms. McKenzie verbally expressed to Plaintiff the terms of the engine warranty between December 2006 and February 2007, while negotiating the sale of the aircraft.

Defendant argues these representations do not amount to fraud, but are merely a dissemination of the terms of the warranty. The Court disagrees. Because Plaintiff alleges Ms. McKenzie knew or should have known TAE could not honor the warranty, the Court finds that sending out the email with the attached warranty documents could sufficiently state a claim for misrepresentation. Accordingly, the Court finds that dismissing the claims at this stage is not appropriate.

In addition, the heightened pleading standard of Rule 9(b) applies to claims for both negligent and fraudulent misrepresentation. *Recreational Design & Const. Inc. v. Wiss, Janney, Elstner Assoc., Inc.*, 867 F. Supp. 2d 1234, 1241 (S.D. Fla. Sept. 20, 2011) (negligent misrepresentation);

*Bonita Villas Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 09-21887-CIV-SEITZ, 2010 WL

2541763, *4 (S.D. Fla. June 23, 2010) (fraudulent misrepresentation).  To comply with Rule 9(b),

Plaintiff must allege:

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, (2) the time and place
> of each such statement and the person responsible for making (or in
> the case of omissions, not making) same, (3) the content of such
> statements and the manner in which they misled the plaintiff, and (4)
> what the defendants obtained as a consequence of the fraud.

*Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1294 (S.D. Fla. 2007).  The Court finds

the Plaintiff has satisfied the requirements of Rule 9(b). Plaintiff has identified the communications

regarding the warranty and the date and the person responsible for providing the warranty terms.

Plaintiff also indicates that Mr. Damgaard-Iverson was misled into believing he had a solid warranty,

and that turned out to be false.  As a result of the statements, Defendant obtained the sale of the

aircraft.  Accordingly, the Court finds these allegations sufficient to satisfy Rule 9(b).

### 1. Fraudulent Concealment

Plaintiff alleges that Diamond failed to disclose TAE's financial condition and Defendant's

superior knowledge of that situation gives rise to a cause of action for fraudulent concealment.  For

Plaintiff to properly allege "superior knowledge," it is not sufficient to allege Diamond's "superior

actual knowledge".  *See Taylor v. American Honda Motor Co., Inc.*, 555 F. Supp. 59, 64-65 (M.D.

Fla. 1982).  In *Taylor*, the Court stated:

> In absence of a fiduciary relationship, mere non-disclosure of material
> facts in an arm's length transaction is ordinarily not actionable
> misrepresentation unless some artifice or trick has been employed to
> prevent the representee from making further independent inquiry,
> though non-disclosure of material facts may be fraudulent where the

> other party does not have an equal opportunity to become appraised
> of the facts.

*Taylor*, 555 F. Supp. at 64. "Florida law additionally charges a claimant with knowledge of all facts

that he could have learned through diligent inquiry." *Id.* Defendant argues that Plaintiff's allegations

fail to establish that it was unable to learn of TAE's financial status through diligent inquiry. The

Court agrees that Plaintiff has not sufficiently pled that it did not have an equal opportunity to

become appraised of the facts.

The Court is persuaded by Plaintiff's reliance on *Ramel v. Chasebrook Constr. Co.*, 135 So.

2d 876, 882 (Fla. 2d DCA1961). In *Ramel*, the Florida court identified a second exception. It said:

> Another exception to the above rule is to the effect that even though
> a party to a transaction owes no duty to disclose facts within his
> knowledge, or to answer inquiries respecting such facts, if he
> undertakes to do so he must disclose the whole truth.

*Ramel*, 135 So. 2d at 882. In this case, the Plaintiff alleges that by providing the terms of the

warranty and not indicating the status of the warrantor, Defendant fraudulently concealed that

TAE may not be able to honor the terms of said warranty. Accordingly, the Court denies the

motion to dismiss this claim.

### D. Improper Party

Plaintiff is a trust company, whose sole beneficiary is Mr. Damgaard-Iversen. Federal

Rule of Civil Procedure 17 provides that "[a]n action must be prosecuted in the name of the real

party in interest." It allows "a trustee of an express trust" to sue without joining the person for

whose benefit the action is brought. Fed. R. Civ. P. 17(1)(E). Here, the Trust is the current

owner of the aircraft.

-12-

Florida Statute § 736.0816(23) vests the trustee of a trust with the authority to "[p]rosecute or defend, including appeals, an action, claim or judicial proceeding in any jurisdiction to protect trust property or the trustee in the performance fo the trustee's duties."§ 736.0816(23), Fla. Stat. Plaintiff, in this case, is the trust itself.  The Court grants the motion to dismiss on this issue and provides Plaintiff leave to amend the complaint to name the proper party.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of May, 2013.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-13-