UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  11-61663-CIV-MORENO
ELECTRONICALLY FILED

AIRCRAFT GUARANTY CORPORATION, TRUSTEE OF
CONTINENT AIRCRAFT TRUST 1087
270 W. Pearl, STE 103-B
Jackson, Wyoming 83001

      Plaintiff,

v.

DIAMOND AIRCRAFT INDUSTRIES, INC.
1560 Crumlin Sideroad
London, Ontario
Canada  N5V 1S2;

DIAMOND AIRCRAFT INDUSTRIES, GMBH
N.A. Ottostrasse 5
A-2700 Wiener Neustadt, Austria;

and

DIAMOND AIRCRAFT SALES U.S.A., INC.
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

      Defendants.

_____/

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

### Introduction

Plaintiff Aircraft Guaranty Corporation, Trustee of Continent Aircraft Trust 1087

("Plaintiff"), by counsel and pursuant to Federal Rule of Civil Procedure 15(a), hereby moves

this Court for leave to file a Second Amended Complaint, primarily to add new Defendants,

Diamond Aircraft Industries GmbH ("Diamond Austria") and Diamond Aircraft Sales U.S.A., Inc. ("Diamond USA"). In support of its Motion, Plaintiff states that leave to amend its Amended Complaint is proper because the Second Amended Complaint satisfies all requirements of Rule 15(a) and no grounds to deny leave exist.

**Argument**

Plaintiff seeks leave to amend in good faith based on information Plaintiff has discovered regarding the corporate structure of Diamond USA and Diamond Austria as it relates to Defendant Diamond Aircraft Industries, Inc. ("Diamond Canada") and their roles in the course of conduct that proximately caused Plaintiff's damages. The allegations in the Second Amended Complaint are substantially identical to the prior Complaints except for the addition of allegations regarding Defendants Diamond Austria and Diamond USA. Plaintiff respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2) because there is no undue delay, bad faith, undue prejudice to the Diamond Canada, or futility of the proposed amendments. *Foman v. Davis*, 31 U.S. 172, 182 (1962) (citation omitted).

**I.   THE PROPOSED AMENDMENT DOES NOT PREJUDICE DIAMOND CANADA**

The Court recently issued its Order regarding Diamond Canada's Motion to Dismiss (Doc. 43), and issued a Scheduling Order (Doc. 39). No depositions have been taken, and the written discovery exchanged has been limited. Adding Diamond Austria and Diamond USA to this litigation will not materially change the scope of discovery. The management personnel for these corporations are essentially the same. During all relevant times, Peter Maurer was the President of Diamond USA and Diamond Canada, and Christian Dries was the Chief Executive Officer ("CEO") for Diamond USA, Diamond Canada, and Diamond Austria.

2

The dispute at issue in this case will not change in any significant way by the proposed amendment.  The facts relating to Diamond's knowledge with respect to the engines, the warranties, and the financial stability and business practices of Thielert Aircraft Engines GmbH ("TAE") remain central questions of this case.  The same general parties would be deposed, regardless of the amendment to bring in Diamond Austria and Diamond USA.  Thus, the proposed Second Amended Complaint with the addition of Diamond Austria and Diamond USA is timely and will prejudice neither Diamond Canada nor the proposed defendants in any way.

## II.     THE PROPOSED AMENDMENT IS NOT FUTILE

The proposed amendment is not futile because: (1) Plaintiff has already withstood a Motion to Dismiss its claims; (2) Diamond Canada does not have standing to attack the Second Amended Complaint on the grounds that this Court lacks personal jurisdiction over Diamond Austria and Diamond USA; and (3) the Court has personal jurisdiction over Diamond Austria and Diamond USA, as discussed below.

### A.     Plaintiff's Proposed Claims against Diamond Austria and Diamond USA Are Substantially Identical To the Claims Against Diamond Canada

The Court already denied Diamond Canada's Motion to Dismiss Plaintiff's negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment claims (Doc. 39). In the Second Amended Complaint, Plaintiff asserts nearly identical claims against Diamond Austria and Diamond USA.   "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Holst v. Oxman*, 290 Fed. Appx. 508, 510 (3d Cir. 2008); *see also City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010) (holding that a district court's decision to deny a motion for leave to amend must be reviewed identically to a review of a dismissal pursuant to 12(b)(6));  *Schindler Elevator Corp. v. Otis Elevator Co.*, 2009 U.S. Dist. LEXIS 40994, at *13 (D.N.J. May 12, 2009) ("Whether the

Court has personal jurisdiction over the newly named counterclaim-defendant is more appropriately addressed in a fully developed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)."). Accordingly, because the claims alleged in the Second Amended Complaint have already in substance survived a motion to dismiss, they are not futile.

**B.    Diamond Canada Does Not Have Standing to Dispute Jurisdiction of the Proposed Defendants**

The Court should not consider any objections to personal jurisdiction that Diamond Canada may assert.  Diamond Canada, the only Defendant currently before the Court, has waived its right to dispute personal jurisdiction as to itself, and, in the context of a motion to amend, no existing defendant has standing to raise a personal jurisdiction objection on behalf of proposed defendants. *See SmithKline Beecham v. Geneva Pharms.*, 287 F. Supp. 2d 576, 580 n.7 (E.D. Pa. 2002) (holding, in context of deciding motion for leave to amend, that the party defendant lacked standing to contest personal jurisdiction on the proposed defendant's behalf); *Jenkins v. Smead Mfg. Co.*, 2009 U.S. Dist. LEXIS 101545 at *3 (S.D. Cal. Oct. 28, 2009) (holding that defendants could not, in opposition to a motion for leave to amend, raise lack of personal jurisdiction or venue on behalf of the proposed defendants); *Sayles v. Pac. Eng'rs & Constructors, Ltd.*, 2009 U.S. Dist. LEXIS 23449 at *6 (W.D.N.Y. Mar. 23, 2009) (holding that the court may consider personal jurisdiction only where the affected defendant challenges the assertion of personal jurisdiction over it).

"The personal jurisdiction requirement . . . represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Insurance Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982) (hereinafter "*Compagnie Des Bauxites*").  Thus, the defense of lack of personal jurisdiction

> is waivable, reflecting the principle that the individual can subject himself to powers from which he may otherwise be protected.  Given the individual nature

of this right, many courts have found that a defendant lacks standing to raise absence of personal jurisdiction on behalf of proposed co-defendants.

*Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012). Courts have relied on the Supreme Court's ruling in *Compagnie Des Bauxites* to hold that a current defendant does not have the right or the authority to determine whether a proposed defendant will object on the grounds of personal jurisdiction.[1] *See e.g., id.*

As such, Diamond Canada does not have standing to attack Plaintiff's Motion to Amend on the basis of lack of personal jurisdiction over Diamond Austria and Diamond USA. The only parties with standing to assert lack of personal jurisdiction are proposed Defendants, who are, of course, not parties to the litigation at this stage.

## C.   The Court May Exercise Personal Jurisdiction Over Diamond Austria and Diamond USA

If the Court were to evaluate personal jurisdiction, the continuous and systematic contacts of both Diamond USA and Diamond Austria compel a finding of personal jurisdiction. "When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must only establish a *prima facie* case of personal jurisdiction over a nonresident defendant." *Morris v. SEC, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). In making this determination, the Court must accept all allegations in the Second Amended Complaint as true to the extent affidavits submitted by proposed Defendants do not controvert those allegations. *Id.* If the allegations in the Second Amended Complaint and any affidavits offered by a Defendant conflict, all reasonable inferences must be construed in Plaintiff's favor, and Plaintiff should be entitled to jurisdictional discovery to test the accuracy of, and context for,

---

[1] Although some courts have allowed a defendant to object to a motion to amend on the grounds of lack of personal jurisdiction, *see e.g., Smith v. Trans-Siberian Orchestra, et al.*, 728 F. Supp. 2d 1315 (M.D. Fla. 2010), Plaintiff respectfully submits that these decisions are not consistent with the Supreme Court's holding in *Compagnie Des Bauxites. See* 456 U.S. at 702.

statements made in the affidavits submitted. *Id.*; *Majd-Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d 901, 903 (11th Cir. 1984). Plaintiff has easily demonstrated personal jurisdiction by this standard.

To determine whether personal jurisdiction over a nonresident defendant is proper, a federal court sitting in Florida must apply a two-step process. <u>First</u>, the Court must determine whether the defendant's activities satisfy the Florida long-arm statute. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citations omitted). <u>Second</u>, the Court must determine if the exercise of jurisdiction over the defendant comports with the due process requirements of the Fourteenth Amendment. *Id.* General jurisdiction is appropriate over Diamond Austria and Diamond USA under this two-step analysis.

The reach of the Florida long-arm statute is a matter of Florida law, and thus, federal courts must construe the statute as the Florida Supreme Court would. *See Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 627 (11th Cir. 1996). "The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: specific and general jurisdiction." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). "Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" *Id.* (citations omitted). General jurisdiction refers to the court's exercise of jurisdiction over a defendant based on the defendant's contacts with the forum state that are unrelated to the cause of action. *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

Once a court determines that a defendant's contacts satisfy the Florida long-arm statute, the court must ensure that the exercise of jurisdiction satisfies the requirements of due process. The court must therefore determine whether the defendant has "minimum contacts" with the

forum such that the exercise of jurisdiction will not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310 (U.S. 1945). This process ensures that a defendant has "fair warning" that it may be subject to suit in that state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). "Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (quoting *Burger King*, 471 U.S. at 475).

If a court determines that a defendant has the requisite "minimum contacts," it must then determine whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1516. To make this determination the court must consider the defendant's contacts with the forum in light of the following factors: i) the burden on the defendant in defending the lawsuit; ii) the forum state's interest in adjudicating the dispute; iii) the plaintiff's interest in obtaining convenient and effective relief; iv) the interstate judicial system's interest in obtaining the efficient resolution of controversies; and v) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

For the reasons set forth below, this Court may exercise either general or specific personal jurisdiction over the proposed Defendants.

### 1.  This Court May Exercise General Jurisdiction Over Diamond USA and Diamond Austria

First, the Court must determine whether the general jurisdiction prong of the Florida long-arm statute is satisfied. The statute allows general jurisdiction as follows:

> A defendant who is engaged in *substantial and not isolated activity* within this state, whether such activity is wholly interstate, intrastate or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2) (emphasis added).  Florida has construed this requirement to be analogous to the "continuous and systematic" contacts standard announced by the Supreme Court.  *See Woods v. Nova Cos. Belize Ltd.,* 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999).  In interpreting this statute, Florida courts hold, "the substantial connection between a defendant and the forum state must come about by an action of the defendant purposefully directed toward the forum state."  *Nida Corp. v. Nida,* 118 F. Supp. 2d 1223, 1229 (M.D. Fla. 2000) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.,* 480 U.S. 102, 108-09 (1987)).

Second, the Court must ensure that the exercise of personal jurisdiction comports with due process.  Generally, due process will be met so long as the nonresident defendant has certain minimum contacts with the forum so that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Oldfield v. Pueblo de Bahia Lora, S.A.,* 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros de Colombia v. Hall,* 466 U.S. 408, 414 (1983)).  However, if the court is satisfied that a proposed nonresident defendant's contacts satisfy Fla. Stat. § 48.193(2), then minimum contacts is likewise satisfied and the court may exercise personal jurisdiction over the proposed defendant without engaging in a due process analysis.  *See Fraser v. Smith,* 594 F.3d 842, 846 (11th Cir. 2010) (citing *Woods,* 739 So. 2d at 620).

### a.    General Jurisdiction Over Diamond USA is Proper

The paradigm forum for general jurisdiction over a corporation is the venue "fairly regarded as home," which includes the corporation's principal place of business.  *Goodyear Dunlop Tires Operations v. Brown,* 131 S. Ct. 2846, 2854 (2011).  Diamond USA is a Delaware corporation with its principal place of business in Florida. (Second Am. Compl., ¶ 4).  Diamond USA incorporated in Delaware in 1995, and registered to do business in Florida in 1997. (*Id.* at ¶ 12; *see also* Diamond USA Annual Report 1998, attached as Exhibit A).  After 1997, Diamond

USA continued to operate in Florida for the sole purpose of developing a market for Diamond Austria and Diamond Canada's products. (Second Am. Compl., ¶¶ 12-14, 20). Diamond USA's principal place of business was originally in Fort Pierce, Florida and subsequently, in Sarasota, Florida. (*Id.* at ¶ 18; *see also* Exhibit A).

In 2006, Diamond USA entered into an exclusive distribution agreement ("Distributor Agreement") with Premier Aircraft Sales, Inc. ("Premier"), a Florida corporation. (*See* Second Am. Compl. ¶ 21; Distributor Agreement, p. 1, attached as Exhibit B). The Distributor Agreement established that Premier is the exclusive distributor in Florida for all products manufactured by Diamond Austria and Diamond Canada. (Exhibit B, p. 1) Under this agreement, Premier is required to provide office space for Diamond representatives at its Fort Lauderdale facility. (*Id.* at p. 6, ¶ 6.2).

Further, Diamond USA presumably leased or rented property in Fort Pierce, Florida and Sarasota, Florida for several years. (Second Am. Compl., ¶ 18; *see also* Exhibit A). Diamond USA conducted its business operations out of these facilities, and apparently employed persons to facilitate sales of Diamond's products in Florida. (Second Am. Compl., ¶ 19). Diamond USA actively advertised, marketed, sold and distributed Diamond products in Florida; Plaintiff is but one example of a purchaser of Diamond's products in Florida.

Diamond USA's contacts with Florida go far beyond the "substantial and not isolated" contacts necessary to exercise jurisdiction. Florida can be "fairly regarded" as home to Diamond USA. Although Diamond USA incorporated in Delaware and appointed a registered agent there, it consistently operated out of Florida during all relevant periods.

Although Florida courts have held that the Florida long-arm statute does not extend jurisdiction to the full extent of due process, Florida courts recognize that some bases of

jurisdiction enumerated in Fla. Stat. § 48.193 do satisfy minimum contacts concerns. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). "Because section 48.193(2) requires this high threshold, if the defendant's activities meet the requirements of section 48.193(2), minimum contacts is also satisfied." *Woods*, 739 So. 2d. at 620 (citations omitted). Because Diamond USA's contacts with Florida meet the jurisdictional requirements of Fla. Stat. § 48.193(2), jurisdiction over Diamond USA complies with the due process requirements of the Fourteenth Amendment. *Id.*

### b.    General Jurisdiction Over Diamond Austria is Proper

Exercising personal jurisdiction over Diamond Austria is proper for two reasons: <u>first</u>, for more than sixteen years, Diamond Austria has maintained a significant physical presence in Florida to establish general jurisdiction; and <u>second</u>, Diamond Austria acted through agents, such as Diamond USA, at all relevant times, and this Court may exercise jurisdiction over Diamond Austria based on the contacts of Diamond USA.

### (i)    Diamond Austria's Contacts with Florida Make General Jurisdiction Over Diamond Austria Proper

Diamond Austria's contacts with Florida are continuous and systematic so as to provide an independent basis for exercising jurisdiction over it. Diamond Austria has manufactured the DA42 in Austria since its inception. (Second Am. Compl., ¶ 27). Diamond Austria then transported the fully assembled aircraft to Diamond Canada.[2] (*Id.*). The DA42s then were distributed either directly to consumers or through a third party distributor, such as Premier. (*Id.*).

Since bringing its products to the United States, Diamond Austria specifically targeted the Florida market in many significant ways. For example, the CEO of Diamond Austria,

---

[2] For a very short period of time, Diamond Austria sent the DA42 to Canada in a kit for final assembly.

10

Christian Dries,[3] and the President of Diamond Canada, Peter Maurer, came to Florida for various trade shows throughout the last decade, including Sun 'n Fun in Lakeland, Florida. While attending these events, Christian Dries and Peter Maurer stood side by side with other Diamond representatives, dressed in identical clothing, all holding themselves out as "Diamond" representatives.  (Second Am. Compl., ¶ 14).  Further, Diamond Austria and its representatives set-up static displays, conducted demonstrations and took orders for new products.  (*Id.* at ¶ 13).

In 2001, Christian Dries attended the Sun 'n Fun trade show in Florida and accepted the type certificate from the Federal Aviation Administration ("FAA") for Diamond Austria's DA40 aircraft.[4]  (*Id.* at ¶ 15).  Moreover, Diamond Austria owns the type certificate issued by the FAA for the manufacture of the DA42 in the United States.  (*Id.* at ¶ 26; *see also* Type Certificate of Diamond Austria, attached as Exhibit C).

In order to expand its presence in Florida, Diamond Austria designated the first ever Diamond Brilliance Flight Center in Naples, Florida in 2006.  (*Id.* at ¶ 16; *see also Diamond Sets New Standard: 1st 'Diamond Brilliance' Fit Center Opens*, Aero News Network, June 24, 2006, attached as Exhibit D).  More recently, Christian Dries, CEO and owner of Diamond Austria, signed a partnership agreement with Embry-Riddle Aeronautical University, whereby Diamond Austria plans to expand its presence at Daytona Beach.  (*Id.* at ¶ 17; *see also* Press Release, *Diamond Aircraft, Diamond Aircraft Expands International Research & Development Program With Embry-Riddle* (June 18, 2013), attached as Exhibit E).

In order to develop a maintenance and support network for Diamond aircraft, Diamond Austria, along with Diamond Canada, designated several service centers in Florida.  (Second

---

[3] At all relevant times, Christian Dries operated as the CEO of all three Diamond corporations.  (Second Am. Compl., ¶ 7).
[4] The single engine variant of the DA42.

Am. Compl., ¶ 22).  To date, there are four authorized service centers, located throughout the state in Naples, Daytona Beach, Fort Lauderdale, and St. Augustine.  (*Id.*).

Diamond Austria has systematically conducted business in Florida, as required for a finding of general jurisdiction.  Diamond Austria's contacts with Florida reach far beyond "mere purchases" or "isolated business contacts."  Since 1997, Diamond Austria has targeted the Florida market for the purpose of selling its products in Florida.  Diamond's substantial connections to Florida have arisen from its own purposeful actions taken to infiltrate the Florida market and appeal to Florida consumers.

Diamond Austria representatives, such as Christian Dries, have been conducting business and operating out of Florida since 1997.  (*Id.* at ¶¶ 12, 14; *see also* Exhibit A).  The foundations of due process lie in considerations of fairness, and there can be no doubt that exercising personal jurisdiction over Diamond Austria is fair.  Diamond Austria has reaped the benefits and protections of Florida law by selling and distributing its products in the state.  Diamond Austria cannot accept the benefits of the Florida economy and its laws without subjecting itself to Florida courts.

As indicated above, Florida courts recognize that Fla. Stat. § 48.193(2), if satisfied, will also suffice to show that minimum contacts with the forum state have been established.  *See Venetian Salami Co.*, 554 So. 2d at 502.  Diamond Austria's contacts with Florida meet the jurisdictional requirements stated in Fla. Stat. § 48.193(2), and therefore, jurisdiction over Diamond Austria similarly complies with the due process requirements of the Fourteenth Amendment.  *Id.*

**(ii)** **Diamond Austria's Relationship with Diamond USA Also Provides Grounds to Exercise Personal Jurisdiction Over Diamond Austria**

Courts may also exercise personal jurisdiction over a corporation based on the actions of an affiliated corporation. *See Meier*, 288 F.3d at 1273. Where a corporate entity acts as a mere alter-ego of an affiliated corporation, jurisdiction may be asserted over the affiliated corporation under the Florida long-arm statute based on the contacts the alter-ego has with the forum state. *See Verizon Trademark Servs., LLC v. The Producers, Inc.*, 810 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011). The Florida long-arm statute also confers jurisdiction based on the activities of an agent. *Meier*, 288 F.3d at 1273.

Under Florida law, courts will pierce the corporate veil if the corporation "is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose." *Aztec Motel, Inc. v. Faircloth*, 251 So. 2d 849, 852 (Fla. 1971). Further, "[i]f the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction." *Meier,* 288 F.3d at 1272.

Where the subsidiary is created to serve the defendant parent, the subsidiary will be deemed an agent of the foreign parent corporation and jurisdiction over the parent will be proper. *See id.* The Eleventh Circuit has made clear that the agency theory for jurisdiction was not limited to the parent-subsidiary relationship. *See id.* "Personal jurisdiction over affiliated

13

parties, whether a parent or another related subsidiary, is warranted when the resident corporation acts on behalf of those foreign affiliates." *Id.* at 1273.

For example, Florida courts have found a sufficient agency relationship where a domestic subsidiary acted as an exclusive "booking agent" for the foreign corporation. *See Universal Caribbean Establishment v. Bard*, 543 So. 2d 447, 448 (Fla. Dist. Ct. App. 1989). Diamond USA was the functional equivalent of a booking agency for Diamond Austria. Diamond USA operated solely for the benefit of Diamond Austria and Diamond Canada, and existed only to sell, advertise and market Diamond Austria and Diamond Canada's products. (Second Am. Compl., ¶ 8). Diamond USA did not have any semblance of independence; it had no business purpose apart from its efforts to sell Diamond Austria and Diamond Canada's products. Diamond USA was directed by Christian Dries, and all of Diamond USA's directives came from Diamond Austria. In fact, at all relevant times, Christian Dries operated as the CEO for all three Diamond entities and directed and controlled the actions of Diamond Canada and Diamond USA. (*Id.* at ¶¶ 6-7).

Moreover, Diamond Austria used Diamond USA as a shield to protect Diamond Austria from any liability arising from its products sold to American purchasers. Diamond USA was essentially a shell company with little or no significant assets that was unable to satisfy any significant judgment against it. (*Id.* at ¶ 8). Without a doubt, Diamond USA "is a mere device or sham to accomplish some ulterior purpose," and it existed to "accomplish some fraud or illegal purpose" by purporting to limit purchasers' ability to bring legal claims against Diamond Austria.

At all relevant times, Diamond USA was the alter-ego and/or agent of Diamond Austria. Diamond USA's contacts with Florida therefore should be imputed to Diamond Austria, making the exercise of personal jurisdiction undoubtedly proper.

### 2. This Court May Exercise Specific Personal Jurisdiction Over Diamond USA and Diamond Austria

The Florida long-arm statute provides several circumstances in which a court may exercise specific personal jurisdiction. *See* Fla. Stat. Ann. § 48.193(1). Relevant to this action, a court may exercise jurisdiction over a nonresident if the defendant, "personally or through an agent:" i) operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agency in this state; ii) commits a tortious act within Florida; or ii) causes injury to persons or property within Florida arising out of an act or omission by the defendant outside this state, if, at the time of injury, either – a) the defendant was engaged in solicitation activities in Florida; or b) products, materials or things processed, serviced or manufactured by the defendant were used or consumed within the state in the ordinary course of commerce, trade or use. *See id.* at (1)(b), (f).

To determine whether a defendant is "operating, conducting, engaging in or carrying on a business," the defendant's activities must be considered "collectively and show a general course of business activity in the State for pecuniary benefit." *Sculptchair*, 94 F.3d at 628. Also, the tortfeasor need not have a physical presence in Florida "to commit a tortious act within Florida" so long as the tort produces an injury in Florida. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). For instance, allegations arising from communications made by the tortfeasor, even if made outside the jurisdiction, will be sufficient if the cause of action arises from those communications. *Id.*

a.        **Specific Jurisdiction Over Diamond USA is Proper**

Diamond USA clearly operated, conducted, and carried on a business in Florida.  It also had an office or agency in Florida.  Diamond USA demonstrated a "general course of business activity for pecuniary benefit" in Florida through its acts to market and sell Diamond Austria and Diamond Canada's products.  "A purchase of goods or services inures to the **seller's** pecuniary benefit."  *Fraser*, 594 F.3d at 847 (emphasis added).  Diamond USA sold Diamond Austria's products for pecuniary benefit, and thus, specific jurisdiction is appropriate under Florida's long-arm statute.   Even more, Diamond USA maintained offices and presumably employees in Fort Pierce and Sarasota making specific jurisdiction appropriate.

With respect to due process, Diamond USA has at least minimum contacts with Florida.  In examining minimum contacts the Court must examine three elements: i) the defendant must have contacts related to or giving rise to the cause of action; ii) the defendant must have purposefully availed itself of the forum benefits; and iii) the defendant's contacts with the forum must be enough that it could reasonably anticipate being haled into court in the forum.  *Sculptchair*, 94 F.3d at 623.

First, Diamond USA's contacts with the forum clearly related to Plaintiff's cause of action.  Diamond USA facilitated the sale of Diamond Austria's products, and Plaintiff purchased its DA42 in Florida based on the representations made by Diamond representatives in the state.  Diamond USA existed solely to advertise, market, and establish a network of service providers for Diamond Austria and Diamond Canada's products in Florida, and its contacts with Florida were directly related to the fraudulent sale of the DA42 to Plaintiff.

Second, Diamond USA purposefully availed itself to the benefits not only of the Florida economy, but the laws of this state.  Diamond USA sold products to Florida consumers, it registered to do business in Florida, and it maintained offices and employees in Florida.

16

Diamond USA also contracted with Premier, a Florida corporation, to establish a substantial business relationship to be carried out in Florida. Diamond USA structured its relationship with Premier to create continuous contacts with Florida long into the future.

Third, Diamond USA engaged in business in Florida, selling and distributing Diamond Austria's products to consumers, for more than a decade. When events arising from those sales cause an injury to a purchaser, Diamond USA cannot be surprised when it is haled into court for its business activities in the state. As due process contemplates, a person cannot reap the benefits and protections of a forum without also being subject to its courts.

Finally, the exercise of jurisdiction over Diamond USA does not offend traditional notions of fair play and substantial justice. In looking at this issue, courts must consider the defendant's contacts with the forum based on the following factors: i) the burden on the defendant in defending the lawsuit; ii) the forum state's interest in adjudicating the dispute; iii) the plaintiff's interest in obtaining convenient and effective relief; iv) the interstate judicial system's interest in obtaining the efficient resolution of controversies; and v) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

An examination of these factors supports the exercise of jurisdiction. The burden on Diamond USA is minimal because Diamond USA operates out of Florida, and has the same officers and directors as Diamond Austria and Diamond Canada. Florida has a strong interest in adjudicating this suit, as it involves a Florida purchaser subjected to tortious acts by the Defendants. Florida is also a convenient forum to Plaintiff because the majority of the events giving rise to its claims took place in Florida, and as a result, Florida substantive law applies in this case. Diamond USA has more contacts with Florida than any other state; Florida courts can

most efficiently adjudicate this issue and will not step on the toes of any other court.  As a result, Florida is the most convenient, efficient and fair forum for this litigation.

**b.      Specific Jurisdiction Over Diamond Austria is Proper**

Diamond Austria's contacts with Florida satisfy the Florida long-arm statute in several ways.  First, through its agent, Diamond USA, Diamond Austria operated and conducted a business in Florida.  As described above, Diamond USA engaged in the business of selling Diamond Austria's products in Florida for more than a decade, and the sales generated from the efforts created significant pecuniary benefit for Diamond Austria.

Specific Jurisdiction is also proper because Diamond Austria committed a tortious act in Florida.  As indicated prior, Diamond Austria need not have a physical presence in Florida to commit a tortious act.  *Wendt*, 822 So. 2d at 1260.  Quite clearly, the communications arising in Austria and communicated to Diamond Canada, Diamond USA and its agents in Florida caused the negligent and/or fraudulent acts at issue in this litigation.

Finally, Diamond Austria caused injury to Plaintiff within Florida based on an act or omission by Diamond Austria related to products it manufactured that were being sold and consumed in Florida.  *See* Fla. Stat. Ann. § 48.193(f).

Each of these provisions provides an independent basis for exercising specific jurisdiction over Diamond Austria under the Florida long-arm statute.  Furthermore, Diamond Austria's contacts with Florida provide a sufficient basis to assert personal jurisdiction over Diamond Austria without offending due process.  Diamond Austria's contacts with Florida clearly gave rise to the cause of action.  Diamond Austria negotiated the warranties at issue and manufactured the DA42.  Diamond Austria controlled every major decision made by Diamond Canada or Diamond USA.  Diamond Austria's acts and omissions caused the negligent and/or fraudulent acts giving rise to this litigation.

18

Second, Diamond Austria purposefully availed itself of the benefits of the forum by selling its products to Florida consumers. More than that, Diamond Austria specifically targeted Florida consumers and attended trade shows in Florida for the purpose of marketing and selling its products. It cannot transact business throughout the state either independently or through an agent without being responsible for the tortious acts that arise from those transactions.

Finally, there can be no doubt that Diamond Austria reasonably anticipated being haled into court in Florida. Diamond Austria, through its agents, transacted with numerous Florida citizens, contracting not only for the sale of its products but to warrant them as well. Diamond Austria cannot avoid the laws of this state by hiding behind its agents.

As for the balance of these contacts with the traditional notions of fair play and substantial justice, the exercise of jurisdiction over Diamond Austria is eminently fair. The burden on Diamond Austria is minimal because the same officers and directors defending the litigation on behalf of Diamond Canada will defend Diamond Austria in this action. During all relevant times, the decisions for Diamond Austria, Diamond Canada and Diamond USA were made by Christian Dries, including the decision to remove himself as an officer of both Diamond Canada and Diamond USA only after the commencement of the DA42 litigation.

As mentioned prior, Florida has a significant interest in adjudicating this case because the tort occurred in Florida and injured a Florida consumer. Moreover, as described above, Florida is the most convenient, efficient and fair forum for this litigation. If this Court does not exercise jurisdiction over Diamond Austria and Diamond USA, it is unlikely that any other forum would hear this case. Diamond Austria purposefully directed its contacts to Florida, and after more than a decade of selling and marketing its products in Florida, its contacts with Florida are far-reaching.

Diamond Austria created significant contacts with Florida over the last decade, and those contacts with Florida directly related to the causes of action asserted by Plaintiff.  For these reasons, this Court may exercise of specific jurisdiction over Diamond Austria without offending the requirements of due process.

### Conclusion

The Motion for Leave should be granted because the proposed Second Amended Complaint is not futile and will not unfairly prejudice any party.  For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion for Leave to File the Second Amended Complaint.  A proposed Order and the proposed Second Amended Complaint are tendered herewith.

Respectfully submitted,

/s/ Juan Martinez
Juan Martinez
Florida Bar No. 9024
GRAYROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131-0014
Telephone: 305-416-6880
Facsimile: 305-416-6887
E-mail: juan.martinez@gray-robinson.com
COUNSEL FOR PLAINTIFFS
-and-
V. Brandon McGrath
Michael A. Grim
BINGHAM GREENEBAUM DOLL LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
Telephone: 513-455-7643
Facsimile: 513-455-8500
E-mail:Bmcgrath@bgdlegal.com
E-mail: mgrim@bgdlegal.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served in compliance with the Court's ECF Guidelines on September 4, 2013 upon:

Carl R. Nelson
Ashley Bruce Trehan
Fowler White Boggs P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, Florida  33602

COUNSEL FOR DEFENDANT
DIAMOND AIRCRAFT INDUSTRIES, INC.

/s/ Juan Martinez
COUNSEL FOR PLAINTIFFS

14778713_4.docx