# Exhibit

# B



**AIRCRAFT DISTRIBUTION
AGREEMENT**

**By and Between**

**DIAMOND AIRCRAFT SALES USA INC. ("DIAMOND", or "Seller")**

**and**

**PREMIER AIRCRAFT SALES, INC. ("DRDC", or "Buyer")**

**EXHIBITS**

**Diamond Aircraft Sales USA Inc.
1209 Orange Street
Wilmington, Delaware 19801
Phone: (519) 457-4000
Fax: (519) 457-4021**

Revision 08032006

Initials _____  _____
              Diamond      DRDC

DAI000098



## AIRCRAFT DISTRIBUTION
## AGREEMENT

This Agreement ("Agreement") for the distribution of aircraft and related accessories is entered into as of _____ 12/31 _____, 2006 ("Effective Date"),

BY AND BETWEEN:  **DIAMOND AIRCRAFT SALES USA INC.**, a corporation organized and existing under the laws of the State of Delaware, USA with its offices located at 1209 Orange Street, Wilmington, Delaware 19801 ("**DIAMOND**")

AND:  **PREMIER AIRCRAFT SALES, INC** , a corporation organized and existing under the laws of the State of **FLORIDA, USA**, with its offices located at 5544 NW 23rd Avenue, Hangar 15, Ft Lauderdale, FL  33309 ("**DIAMOND Regional Distribution Center**", or "**DRDC**")

WHEREAS, DIAMOND is the exclusive distributor for the U.S.A. for all products manufactured by Diamond Aircraft Industries Inc. and Diamond Aircraft Industries GmbH (collectively, together with their respective affiliated entities, "Manufacturer");

WHEREAS, DIAMOND desires that the aircraft listed in Exhibit A ("Aircraft") and related accessories (collectively with the Aircraft, "Products") be sold and supported by DRDC, and that the owners' and users' customer support needs be satisfied to Diamond's standards and satisfaction by DRDC in the Geographic Territory ("GT"), depicted in Exhibit C;

WHEREAS, DIAMOND desires to appoint DRDC as a distributor and retail seller of the Products in the GT with the privilege of selling and servicing the Products in the GT;

WHEREAS, DRDC desires to become a distributor for the Products in the GT;

WHEREAS, DIAMOND desires that the DRDC perform or arrange for the repair, maintenance, service and warranty work of the Products in the GT by DRDC either (a) qualifying for appointment as an authorized Diamond Service Center ("Service Center") pursuant to a separate Service Center Agreement between Manufacturer and DRDC, or (b) making arrangements satisfactory to DIAMOND and Manufacturer for the performance of such services with an authorized existing Service Center; and

WHEREAS, DRDC desires to perform or arrange for the performance of the customer support, repair, maintenance, service and warranty work of the Products in the GT.

Revision 08032006                     Page 1 of 24               Initials _____  _____
                                                                           Diamond    DRDC

DAI000074

NOW, THEREFORE, in consideration of the foregoing and the covenants, representations, acknowledgments and agreements made herein, DIAMOND and DRDC agree as follows:

**1.0   Responsibilities and Appointment of DIAMOND Regional Distribution Center**

**1.1**   Subject to the terms and conditions of this Agreement, DIAMOND appoints DRDC as a distributor and retail seller of the Products in the GT. DRDC hereby accepts such appointment and agrees to carry out its obligations and duties as set forth herein within the GT during the term of the Agreement; to use its best efforts to promote and secure maximum sales and service of the Products to DIAMOND's reasonable satisfaction; and to provide the highest possible standard of customer service and support to assure the satisfaction of owners and users of the Products to the reasonable satisfaction of DIAMOND. Provided that there is no Default (as defined in Section 25.1) that DRDC fails to cure within the time period specified in Section 25.2, Diamond agrees to refrain from appointing any other person as a distributor or retail seller of the Products in the GT.

**1.2**   DRDC shall use all reasonable efforts to attend exhibits, shows and conventions sponsored by various associations of owners and users of the Products and all DIAMOND sponsored meetings, seminars and promotions which are designed to enhance the parties' competitive position within the GT.

**1.3**   DIAMOND will, in as timely as manner as practicable, advise DRDC of all potential sales leads it receives from the GT. Leads may be distributed through the use of a customer and prospect contact management software system over the internet. If the DRDC wishes to receive the leads generated by national advertising purchased by DIAMOND, DRDC agrees to purchase appropriate software and maintain and share database information by use of the software.

**1.4**   DRDC agrees to comply with all applicable laws and regulations, including, but not limited to, the careful observance of laws prohibiting collusion and the determination of prices and/or other potential anti-competitive activities, and agrees to conduct its business pursuant to this Agreement.

**1.5**   In entering into this Agreement, DIAMOND has relied upon and approved the ownership, financial interests, sales figures, and personal qualifications of the management of DRDC as represented on DRDC's Application Form and Business Plan attached hereto as Exhibit B. DRDC represents and warrants to DIAMOND that the information contained on such form is complete, true and correct at the time it was provided and as

of the Effective Date hereof, and that it will notify DIAMOND of any materially adverse change in the information contained therein immediately upon the occurrence of such material change.

1.6 This Agreement, any right or obligation hereunder, and any order for Products made hereunder may not be assigned by DRDC without the prior written approval of DIAMOND, which approval may be withheld in DIAMOND's sole discretion. Any attempt to assign this Agreement without the prior written consent of DIAMOND will result in the immediate and automatic termination of this Agreement. Any change in control or ownership of DRDC, any change in Designated Management of DRDC identified in Exhibit B, or any merger or sale of substantially all of the assets of DRDC shall be deemed to constitute an attempted assignment of the Agreement; provided, however, that DIAMOND will not unreasonably withhold its consent to a change in ownership or Designated Management of DRDC. For the purposes hereof, it is agreed that Diamond shall be deemed to be acting reasonably if it withholds consent to any such change by reason of DRDC's ongoing financial condition, personal qualifications, suitability and ability to perform its obligations under this Agreement and any Service Center Agreement between DRDC and Manufacturer or any matter referred to in Section 1.5 or Section 15 of this Agreement. DRDC shall furnish DIAMOND with current information with respect to the management, officers, ownership, financial condition and organization of DRDC upon the execution of the Agreement, and shall thereafter furnish such additional information as DIAMOND may from time to time reasonably request.

1.7 DIAMOND and the DRDC acknowledge and agree that there may be occasions where DIAMOND will make Direct Fleet Sales within the GT during the term of this Agreement. DIAMOND specifically reserves in its sole discretion the right to make Direct Fleet Sales within the GT. For purposes of this Agreement, "Direct Fleet Sales" shall mean the direct sale of Aircraft by DIAMOND or any of its affiliated companies within the GT comprising government sales, institutional sales, or sales pursuant to other bid invitations to aircraft manufacturers. DIAMOND will endeavor to consult with, and enlist the assistance of the DRDC in connection with Direct Fleet Sales. The Compensation Schedule set forth on Exhibit J hereto shall not apply to Direct Fleet Sales. The amount of compensation, if any, to the DRDC for such assistance may vary and DIAMOND reserves for itself the right to determine and establish any such compensation in its sole discretion.

1.8 DRDC shall refrain from acting as a distributor, sales representative, or service center with respect to aircraft or products not manufactured by Manufacturer that DIAMOND reasonably determines to be in competition

DAI000076

with the Products, unless and only to the extent approved in writing by DIAMOND.

1.9     DRDC represents and warrants that it possesses and will obtain and maintain at its own expense during the term of this Agreement any and all regulatory licenses and certifications which may at any time be required by appropriate governmental entities for the DRDC to fully perform under this Agreement and, if applicable, to perform under a Service Center Agreement.

1.10    DRDC agrees to conform and comply with DIAMOND operational procedures as set forth in writing by DIAMOND, from time to time, as the same may be updated and amended.

1.11    DRDC agrees that none of the Products purchased pursuant to this Agreement will be diverted from delivery and ultimate use in the country of domicile of DRDC without the prior written consent of DIAMOND.

1.12    DRDC represents and warrants that it has the necessary authority to enter into this Agreement and that the execution of this Agreement by the DRDC will not violate the terms or conditions of any law, statute, ordinance or regulation applicable to DRDC or any agreement or contract to which DRDC or its principal owners or managers are bound.

1.13    DRDC represents and warrants that it has the financial, management and technical capability to fully perform its obligations under this Agreement.

## 2.0     Compensation to DRDC

2.1     DRDC's sole compensation for the sale, promotion, and support of DIAMOND Products shall be as set forth in this Section 2.0 and upon the schedule contained in Exhibit J hereto ("Compensation Schedule"). Except as otherwise provided for in this Agreement, such compensation shall be in the form of sales commissions, discounts and or incentive bonuses to be paid or allowed to DRDC in accordance with the Compensation Schedule set forth on Exhibit J, as such Schedule may from time to time be amended by DIAMOND in its sole discretion, upon thirty (30) days written notice to DRDC.

2.2     Unless otherwise agreed to in writing by DIAMOND, payment of sales commissions, discounts or incentive bonuses allowed by DIAMOND to DRDC as provided for in this Agreement will only be made if DRDC is not in default under this Agreement at the time the payment is due to be paid to the DRDC.

Initials _____
          Diamond     DRDC

DAI000077

**3.0     Payments or Deposits**

All payments and/or deposits to be made by DRDC under this Agreement to DIAMOND shall be in United States Dollars in cash or cash equivalent only. Payments and/or deposits shall be made to DIAMOND's account at such bank as may be designated by DIAMOND. The current bank information for DIAMOND is attached as Exhibit H and is subject to change in DIAMOND's sole discretion.

**4.0     Relationship of DIAMOND and DRDC**

Nothing contained in this Agreement or otherwise arising or existing between the parties hereto shall constitute a partnership, agency, joint venture, employer/employee relationship, master and servant relationship, franchise arrangement, or the like, or in any way alter the status of the parties as independent contractors to each other, and each of the parties specifically disclaims to the other and to any third party that such a relationship exists, either in fact or in law. Neither party has the power to commit or bind the other.

**5.0     Service Responsibilities of DRDC**

**5.1**     DRDC agrees that it will assist and support owners and users of the Products in the GT in obtaining maintenance, service repair and warranty work relating to the Products. DRDC shall designate one or more of its duly trained and qualified employees to act as a technical support representative ("Technical Representative"), to assist owners and users of the Products in obtaining service from a Service Center or authorized alternative service provider, all in accordance with DIAMOND's standards. The Technical Representative shall coordinate matters relating to maintenance, repair, service and warranty work of the Products with the Service Center or authorized alternative service provider. The DRDC shall refer all issues relating to maintenance, repair, service and warranty work to a Service Center or authorized alternative service provider.

**5.2**     DRDC hereby agrees that it shall either (a) qualify for appointment as an authorized Service Center pursuant to a separate Service Center Agreement between Manufacturer and DRDC, or (b) make arrangements satisfactory to DIAMOND and Manufacturer for the performance of its service obligations hereunder with an authorized existing Service Center forthwith upon the execution of this Agreement.

**5.3**     DIAMOND and DRDC acknowledge and agree that there may instances when it is impractical for the DRDC to utilize its own Service Center to provide service to owners and users of the Products. DRDC agrees to locate, identify and recommend to DIAMOND alternative candidates to service the Products in the GT. The DRDC shall not refer owners or users of the Products to non-authorized entities for maintenance, repair or service without the written permission of DIAMOND.

DAI000078

5.4    No warranty work may be performed on the Products by a Service Center or any other service provider without prior approval in writing of DIAMOND, with the exception of warranty repairs performed by a Service Center specifically listed and pre-authorized by DIAMOND.  The list of pre-authorized warranty repairs is subject to revision from time to time by DIAMOND in its absolute discretion.  All work performed by, transactions conducted with or by, and liabilities incurred by a Service Center or concerning the Products or regarding any relation between the DRDC and a Service Center or alternate service provider are the sole responsibility of the DRDC. DRDC shall immediately report to DIAMOND any attempt by any person or entity which has not been appointed by DIAMOND to act as a Service Center and holding itself out as a Service Center or otherwise as an authorized DIAMOND service provider, and DRDC shall cooperate with DIAMOND in taking such action in connection therewith as DIAMOND may deem appropriate.

5.5    Notwithstanding any provision of this Agreement or any Service Center Agreement between DRDC and Manufacturer, DIAMOND specifically reserves the right to appoint one or more Service Centers in the GT at any time.

5.6    DRDC agrees to assist owners and users of the Products in the processing and administration of all warranties that apply to the Products, utilizing the Technical Representative.

5.7    DRDC agrees to render assistance to Aircraft owners and users in the GT with respect to complying with service bulletins and distribution of similar technical information supplied by the Manufacturer or its suppliers.

6.0    **Facilities and Location**

6.1    DRDC agrees to provide adequate facilities for the performance of its obligations hereunder at its present address or at such other address or addresses within the GT as DIAMOND may reasonably approve and to keep such facilities neat, orderly and businesslike so as to reflect credit upon it and DIAMOND.  DRDC also agrees to conduct all sales of the Products only at such locations, and not elsewhere, without DIAMOND's prior written consent. All DRDC facilities will remain open for business during regular business hours, public holidays excepted.  DRDC shall provide such telephone, telefax and internet capabilities as are necessary for it to perform its obligations under this Agreement in a professional manner.

6.2    DRDC agrees to provide without cost, upon reasonable request, office facilities for occasional use by DIAMOND representatives who visit DRDC. Such facilities shall include, at a minimum, use of a desk, chair, computer with internet access, and telephone and reasonable clerical assistance.

DAI000079

**7.0     Personnel**

DRDC agrees to employ a staff of adequately trained and qualified sales and service personnel to perform DRDC's responsibilities and duties hereunder. Such personnel shall be employed on a full-time basis and dedicated to the promotion and sale of the Products. Nothing in this agreement shall preclude a full time aircraft sales person from selling other new or used aircraft not manufactured by the Manufacturer, so long as such activities are, in the reasonable discretion of DIAMOND, consistent with the DRDC's obligations under this Agreement, including, but not limited to, Section 1.8 hereof.  Part-time sales personnel, who conduct their sales activities within the GT, but away from the DRDC's principal place of business, may be employed by DRDC only with DIAMOND's prior written consent which may be withdrawn if DRDC fails to exercise sufficient supervision and control over such part-time sales personnel to insure compliance with this Agreement.  All sales and service personnel, whether full-time or part-time, shall be the employees of DRDC and DRDC shall be solely responsible for their salaries and other benefits and any labor or other obligations imposed on employers by the laws in effect in the GT. This paragraph shall not be construed to mean that DRDC may not engage independent contractors but such independent contractors shall not be employed for sales or service of the Products without DIAMOND's prior written consent.

**8.0     Demonstrator(s) & Sales Quotas**

DRDC agrees:

**8.1**    to own or have on order with a scheduled delivery date, for use as demonstrator(s), a minimum of one (1) current model of each Aircraft to be offered for sale under this Agreement by DRDC as specified in Exhibit A.

**8.2**    that no Aircraft designated by DRDC as a demonstrator shall be over one year old.

**8.3**    that no Aircraft designated by DRDC as a demonstrator shall have more than 300 hours total airframe time, unless DRDC and DIAMOND mutually agree that the condition of the aircraft designated as a demonstrator with more than 300 hours total airframe time continues to be in a condition, except for total airframe time, which is representative of a new aircraft.

**8.4**    that all Aircraft designated by DRDC as a demonstrator shall be maintained by DRDC in accordance with all applicable laws and regulations and directives from the Manufacturer, and shall be kept clean, painted and in good repair.

**8.5**    that all Aircraft designated as demonstrators will be used primarily for purposes of sales demonstration to prospective purchasers.

Initials _____

Diamond        DRDC

DAI000080

8.6   to develop and follow an aircraft demonstration procedure that insures all demonstration flights will be conducted in a safe and professional manner and in accordance with all appropriate government laws/regulations which govern such flights.

8.7   to maintain insurance, in accordance with Section 30 hereof.

8.8   to purchase from DIAMOND, on the terms and conditions provided for herein, the Available Scheduled Production as and when allocated to DRDC by DIAMOND (the "Allocated Available Scheduled Production") and to use its best efforts to promote and secure maximum sales of the Aircraft in the GT.

8.9   For the purposes of this Agreement, "Available Scheduled Production" shall mean the number and model of Products determined by DIAMOND and Manufacturer from time to time, scheduled to be made available to DIAMOND for distribution and sale in the U.S.A.  DRDC hereby acknowledges and agrees that DRDC'S Allocated Available Scheduled Production shall be established by Diamond on a six month rolling forward basis and shall remain subject to change based on the Available Scheduled Production.  Notwithstanding the preceding, DIAMOND hereby agrees that, once established by DIAMOND, DRDC's  Allocated Available Scheduled Production will not be varied by more than twenty per cent (20%) (subject to rounding up, if required) of Orders that have been accepted and confirmed by DIAMOND subject to the provisions of Section 16 "DRDC Product Orders", without DRDC's consent. Diamond shall advise DRDC of its Allocated Available Scheduled Production on a monthly basis.

## 9.0   Use of Trademarks and Trade Names

9.1   Each party, as licensor, hereby grants to the other party, as licensee, a non-exclusive, worldwide, royalty-free license for the duration of this Agreement to use, display and reproduce the trademarks, trade names and other symbols of the licensor (collectively, the "Marks") for the limited purposes of:

(a) identifying DRDC's association with DIAMOND as set forth in this Agreement, in DIAMOND literature and advertising, at DRDC's facilities and on stationery, electronic mail, brochures and other forms of marketing or advertising, and

(b) advertising the services available for the Products.

9.2   DRDC shall not use any of the Marks associated with DIAMOND or the Manufacturer or the word "Diamond" as part of its corporate, company or business name without the prior written consent of DIAMOND.

Furthermore, DRDC acknowledges that it has not acquired any right, title or interest in or to the DIAMOND Marks, and agrees neither to register, nor to have registered, any trademarks, trade names, other symbols of DIAMOND or the Manufacturer or any marks or symbols which may reasonably be deemed to be confusingly similar to those of DIAMOND or the Manufacturer.

9.3   DRDC will act in a manner that will maintain and protect the quality and goodwill associated with the Marks.

9.4   Notwithstanding any other provision of this Agreement, DRDC will not at any time during or after the term of this Agreement, have any right, title or interest to the names "Diamond Aircraft", "Diamond Products", or to any trade-mark or trade name or any patented or copyright material of DIAMOND or the Manufacturer.

9.5   DRDC agrees not to use in the DRDC's corporate, firm or individual name, the word "DIAMOND", or any other name used or adopted by DIAMOND for the Products or service, or any words closely resembling any of them, without DIAMOND's prior written consent.

9.6   During the term of this Agreement, DIAMOND shall have the right to control the use by DRDC of the DIAMOND Marks and to specify the form in which such Marks may be used by DRDC.

9.7   Other than as specifically provided in this Section 9, no licensing rights or other exploitation rights to the DIAMOND Marks, or any copyrights or patents of DIAMOND are extended to DRDC by this Agreement and DRDC agrees that it will not remove or alter DIAMOND's Marks, company names, brand names, type designations or the series numbers applied to any of the Products.

9.8   The right of DRDC to use the DIAMOND Marks, as provided for in this Section 9, shall cease immediately upon the expiration or termination, for any reason of this Agreement and under no circumstances shall DRDC use such Marks for any purpose after the expiration or termination of this Agreement.

## 10.0   Advertising and Sales Promotion

10.1   DRDC shall advertise, on a regular and periodic basis, the Products offered for sale by it under this Agreement, in appropriate trade, business and general publications, including, at its option, a direct mail advertising campaign to registered aircraft owners and prospective aircraft owners. The contents of any advertising must have the prior approval of DIAMOND, and shall be in good taste and shall not, directly or indirectly, misrepresent the Products.

Initials _____
                                           Diamond    DRDC

DAI000082

**10.2**   DRDC acknowledges and agrees that such advertising is necessary and appropriate to discharge its duties hereunder, and shall be paid for solely by DRDC, shall be for its account, and does not constitute an indirect cost or fee to DIAMOND unless otherwise agreed to in writing by the parties.

## 11.0   Signage

**11.1**   DRDC's use of signage to associate itself with DIAMOND is governed by DIAMOND's written policies and standards as may be amended from time to time, the current versions of which have been provided to DRDC, and DRDC agrees to adhere to the conditions specified therein with respect to display, placement, ownership, and financial responsibilities respecting signage.

**11.2**   DRDC shall purchase and display signage as DIAMOND may reasonably require, identifying the DRDC as an authorized distributor of DIAMOND.

**11.3**   The placement of the signs at DRDC facilities will be mutually agreed in writing by DIAMOND and DRDC. The installation, maintenance or removal of the signs will be the responsibility of DRDC.

**11.4**   DIAMOND has negotiated preferred rates with a major international sign company to provide a selection of DIAMOND pre-approved signage from which the DRDC may choose to purchase signage. Alternatively, DRDC may choose to use its own supplier to provide the signage, however, the artwork will be designed using DIAMOND supplied Marks and the final proofs will be subject to the prior written approval of DIAMOND.

**11.5**   In the event of expiration or termination of this Agreement, DRDC agrees to promptly remove all signage and Marks relating to DIAMOND and the Products and in such event under no circumstances will DRDC use such signage or Marks for any purpose thereafter.

## 12.0   Literature and Forms

**12.1**   DIAMOND will make available to DRDC reasonable quantities of DIAMOND's advertising literature, and other advertising and promotional material. DRDC shall pay DIAMOND the reasonable costs of any such material supplied by DIAMOND, and DRDC agrees to use only such literature and materials and GT - specific promotional materials and advertisements that have been pre-approved in writing by DIAMOND.

**12.2**   DRDC agrees to use only DIAMOND supplied or approved forms for all transactions concerning sales and servicing of the Products.

## 13.0   No Conveyance of Patent or Right to Manufacture or Assemble

**13.1**   Except as otherwise specifically set forth in Section 9, neither this Agreement nor the sale of the Products shall be deemed to convey any

DAI000083

license or right (whether expressly, by implication, estoppel or otherwise) under any patent, copyright or trademark, claim or right of DIAMOND, the Manufacturer, or of any other person, firm, corporation, entity or government.  DRDC shall not, by virtue of this Agreement, nor by the purchase and delivery to it of Products, be entitled to manufacture, assemble, copy, reproduce or imitate such Products or components thereof or the designs thereof.

13.2    In the event that DRDC becomes aware that any copyright, trademark, patent or similar right of DIAMOND or the Manufacturer is or may be infringed upon during the term of this Agreement, DRDC shall immediately notify DIAMOND of such infringement and unless otherwise agreed in writing, DIAMOND shall have the right (but not the obligation) to take such action as it deems advisable with regard to such infringement.

**14.0    DRDC's Covenant to Protect Trade Secrets and Confidential Information**

14.1    All technology developed by DIAMOND and Manufacturer and related intellectual property shall remain the property of DIAMOND and/or Manufacturer. Any rights that are not expressly granted by this Agreement shall not be implied. DRDC agrees to take all reasonable steps to ensure that all technology developed by DIAMOND and/or the Manufacturer and related intellectual property maintains its confidential nature, not only for the term of this Agreement, but for a period of five (5) years after this Agreement is terminated for any reason.

14.2    DIAMOND may disclose technology, technical information, information and methods relating to the Products (collectively the "Confidential Information") to DRDC and, except as necessary for the performance of this Agreement, such Confidential Information shall be held in confidence by DRDC. By way of example, but without limitation, such Confidential Information may include patent applications, drawings, sketches, prints, specifications, materials of construction, product performance requirements, prototypes for experimental use, papers and other documents. The amount and nature of Confidential Information to be disclosed is completely within the discretion of DIAMOND.

14.3    DRDC shall use such Confidential Information only for the purposes detailed in this Agreement, and will not exploit or use the Confidential Information in any way for its own benefit or for the benefit of any third party.

14.4    DRDC shall return to DIAMOND all Confidential Information that is in any tangible medium upon the termination of this Agreement or immediately upon the written request of DIAMOND.

**14.5**   The obligation of confidentiality hereunder shall not apply to the following: (i) information which was known to DRDC prior to the disclosure thereof by DIAMOND to DRDC; (ii) information that is in the public domain at the time of disclosure to DRDC by DIAMOND or subsequently comes into the public domain through no act or fault of DRDC; and (iii) information that is disclosed to DRDC by a third party who has no obligation of confidentiality to DIAMOND.

**14.6**   All improvements, modifications, enhancements or adaptations to or in respect of the Products and any part of the technology developed by DIAMOND or Manufacturer, and related intellectual property, whether made solely by DIAMOND or Manufacturer, solely by DRDC or jointly by them shall be sole and exclusive property of DIAMOND.  DRDC agrees that it and its employees will sign any documents necessary to effectuate the intent of this provision at such time as it may become necessary.

## 15.0   Financial Condition and Accounting Data

**15.1**   DRDC acknowledges and agrees that its financial condition has a direct and consequential impact on its abilities to discharge its obligations hereunder.

**15.2**   DRDC has furnished to DIAMOND, and, at other reasonable times requested by DIAMOND, will furnish to DIAMOND complete, accurate and current financial statements, including a balance sheet, income statement and statement of cash flows with supporting data reflecting the true and actual financial condition of DRDC's business.

**15.3**   DIAMOND agrees not to disclose such financial information other than to financing institutions bound by confidentiality agreements with DIAMOND and the DRDC, or as required by law.

**15.4**   DRDC agrees to furnish, when requested, complete and accurate information on DRDC's stock of new DIAMOND aircraft, operational DIAMOND aircraft, demonstrator Aircraft and retail sales operations including retail sales prospects.

**15.5**   DIAMOND reserves the right to conduct, at its own expense, an audit of any of DRDC's records to verify the accuracy of the latter's financial and sales statements. DRDC agrees to make such business records available to DIAMOND upon request during normal business hours.

## 16.0   DRDC Product Orders

**16.1**   DRDC agrees to submit written orders (hereinafter referred to as "Orders"), for the Products to DIAMOND on forms specified and supplied by DIAMOND. All such orders shall be governed by DIAMOND's Standard Terms and Conditions of Sale in effect at the time of the Order.

the current form of which is attached as Exhibit E hereto. In the event of any conflict between this Agreement and DIAMOND's Standard Terms and Conditions of Sale, whether attached as an Exhibit to this Agreement or in any other form, then this Agreement, excluding any Exhibits attached to this Agreement, shall govern all such orders.

16.2   DIAMOND may, as deemed necessary by DIAMOND in its sole discretion, require non-refundable deposits, including, but not limited to, nonrefundable deposits up to the full purchase price of the Order.

16.3   All Orders are subject to approval and acceptance by DIAMOND at its office which approval and acceptance may be withheld by DIAMOND for any reason. No Order shall be binding upon DIAMOND unless and until such Order has been approved and accepted in writing by DIAMOND.

16.4   DIAMOND will not cause the manufacture of Aircraft nor ship Aircraft or other Products for or to DRDC except on DRDC'S written Order that has been accepted and confirmed in writing by DIAMOND.

16.5   DIAMOND expressly reserves the right to modify accepted Orders in details of equipment, trim and color if such modifications, in DIAMOND's opinion, are reasonably dictated by engineering or technical considerations or by the non-availability of materials or equipment.

16.6   DIAMOND may accept requested revisions after an Order is accepted and will attempt to accommodate such revisions, so long as such accommodation does not unduly interfere with DIAMOND's other operations or cause DIAMOND to incur additional costs, in the sole discretion of DIAMOND. DRDC acknowledges and agrees it will pay a reasonable modification charge for any changes in specifications, in such amount as designated by DIAMOND. DIAMOND agrees to notify the DRDC of the amount of any modification charge in advance and prior to acceptance of any revisions to the Order.

16.7   DIAMOND reserves the right to deviate from the Estimated Delivery Month of Products to be delivered by DIAMOND to DRDC, and under no circumstances shall DIAMOND or the Manufacturer be liable for any delay in the Delivery Date, however caused. If DIAMOND fails to make delivery within sixty (60) days after the last day of the Estimated Delivery Month, and such failure is not due to fire, flood, windstorm, an act-of-God, strike or other industrial disturbance, accident, war, riot, insurrection, delay in vendor deliveries, market conditions, governmental action or other causes beyond the control of DIAMOND, DRDC shall have the right to demand, in writing, the return of all deposits relating to any Aircraft that was not delivered within such sixty (60) day period from the last day of the Estimated Delivery Month , unless DRDC agrees to a later Estimated Delivery Month. DRDC agrees that its sole remedy for any failure of Seller

Initials _____

Diamond      DRDC

DAI000086

to perform under this Agreement is limited to the return of deposits as herein described.

**16.8**   DIAMOND agrees to give the DRDC the opportunity to inspect and accept the Aircraft before delivery, and DIAMOND will correct any deficiencies. DRDC agrees to pay the balance in full of the purchase price of the Products ordered coincident with or prior to acceptance.

## 17.0   Retail Order by Customer to DRDC

**17.1**   All sales of the Products by DRDC to customers shall be made only in writing on forms supplied or approved by DIAMOND.

**17.2**   The provisions of the Limited Warranty in effect as of the delivery of the Aircraft or other Products shall be incorporated in full in the order form used by DRDC and DRDC has no authority to change the Limited Warranty in any respect.

## 18.0   Prices and Changes

**18.1**   The purchase price for the Products, taking into account any discounts or other Compensation to DRDC, shall be quoted as of the date of the Order. The actual purchase price due at delivery may be subject to change in the sole discretion of DIAMOND, by written notice to DRDC prior to delivery of the Products.

**18.2**   DIAMOND will periodically furnish to DRDC DIAMOND's current price schedules. DRDC understands and acknowledges, however, that it is free to charge whatever price it chooses to its customers.

## 19.0   Model and Product Changes

DIAMOND reserves the right at any time to change the models of, specifications of, or to discontinue the manufacture and/or sale of, any or all of the Products. DRDC further agrees that DIAMOND shall have no liability to DRDC by reason of its discontinuance of the manufacture and/or sale of any Products or by reason of Product changes. Any deposits paid to DIAMOND by DRDC or DRDC's customer for Products that DIAMOND or its supplier is unable to deliver shall be returned in full to DRDC by DIAMOND.

## 20.0   Title

Title to the Products shall be and remain with DIAMOND until DIAMOND has received, in cash or cash equivalent, the full purchase price of the Products. Upon such full payment, title to such Products shall pass to DRDC.  DRDC agrees that upon and following acquiring title to such Products, it shall be fully responsible therefor, and shall assume all risk of loss or damage thereto.

                                                                              Diamond      DRDC

DAI000087

### 21.0   Delivery of Products

21.1   All Products ordered shall be delivered at DIAMOND's designated delivery center, unless DIAMOND and DRDC agree in writing to another delivery location.

21.2   If Products ordered by DRDC are accepted and not paid for, or if acceptance is not made in a timely manner, in addition to any other rights that DIAMOND may have under applicable law, DRDC agrees that DIAMOND may dispose of such Products, without notice to DRDC and on any terms reasonably acceptable to DIAMOND.  If the total of the net proceeds (after subtracting the costs of sale, including reasonable attorney's fees) from any such disposition, plus the amount of any deposit paid by DRDC are insufficient to pay DIAMOND's damages resulting from such default, DRDC shall pay, without setoff, any such difference to DIAMOND upon demand.  DRDC hereby releases DIAMOND from any and all liability to it respecting any such sale or disposition.

21.3   If DRDC has not removed any Products ordered from DIAMOND's property within seven (7) days after payment is made or is due, or after title has passed, whichever comes later, DRDC agrees to pay DIAMOND's normal storage fees.

### 22.0   Collection of Indebtedness

DRDC and DIAMOND agree that accounts held by each other will be paid when due and payable. DIAMOND shall have the right to apply upon and offset against any sums held by it (as deposits or otherwise) the payment of any amount due to it. This right is cumulative of any other rights described in the Agreement or otherwise available by law.  DIAMOND shall be entitled, in addition to any other damages, to recover its reasonable costs of collection, including reasonable attorneys' fees and costs.

### 23.0   Limited Warranty

With respect to Products sold or manufactured by DIAMOND or the Manufacturer, the sole warranty that shall apply to the Products shall be the standard written limited warranty ("Limited Warranty") in effect at the time of the delivery of the Products.  Provisions of the Limited Warranty may be amended from time to time by DIAMOND or the Manufacturer; provided, however that a Limited Warranty applicable to a particular Product cannot be amended after the delivery of such Product to DRDC.  The Limited Warranty currently in effect is attached hereto as Exhibit F. DRDC understands and agrees that the Limited Warranty shall not be varied, modified or altered by DRDC in any respect whatsoever and that such Limited Warranty shall be included in the terms of sale contained in each agreement with every purchaser of the Products.  With respect to Products or components thereof not sold or manufactured by DIAMOND or Manufacturer, the warranty, if any, of such other seller or manufacturer shall

apply thereto, without recourse against DIAMOND or Manufacturer.  Neither DIAMOND nor Manufacturer shall be deemed to make any warranty or representation whatsoever with respect to Products or components thereof sold or manufactured by other sellers or manufacturers.

**24.0   Duration of Agreement**

Subject to the termination provisions contained in Sections 25 and 26 hereof, the initial term of this Agreement shall commence on the Effective Date and shall continue in effect for a period of one (1) year from the Effective Date.  Unless DIAMOND has provided DRDC with a Notice of Default pursuant to Section 25 hereof, and such default has not been cured by DRDC, effective as of the end of the sixth month of the initial term and any successive term (each a "Renewal Date"), this Agreement shall  automatically be extended for successive periods of one (1) calendar year each from the next anniversary of the Effective Date immediately following a respective Renewal Date.

**25.0   Termination Upon Notice With Opportunity to Cure**

25.1   In the event that DIAMOND determines in good faith that DRDC has failed to comply with any term or provision of this Agreement or has failed to perform or fulfill any condition contained in this Agreement (such failure being hereinafter referred to as a "Default"), DIAMOND shall notify DRDC in writing specifying such Default ("Notice of Default").

25.2   Within ten (10) days of receipt of a Notice of Default from DIAMOND, DRDC shall either take the corrective action necessary to cure the Default, or communicate with DIAMOND to negotiate alternative corrective measures that may be acceptable to DIAMOND in its reasonable discretion. In the event that DRDC fails to take corrective action that cures the Default to DIAMOND's reasonable satisfaction within thirty (30) days of DIAMOND's written Notice of Default to DRDC, DIAMOND may terminate this Agreement without further notice to DRDC.

25.3   Without limiting its remedies hereunder, in the event that DIAMOND believes that the DRDC is acting in good faith to cure or correct a Default, DIAMOND may, in its sole discretion, provide assistance to DRDC in the form of an action plan to remedy the Default, and may in writing extend the time within which DRDC must cure such Default.

25.4   Notwithstanding the provisions of Section 25.1 above, DIAMOND shall not be required to provide DRDC with a Notice of Default in respect of a second or any subsequent Default in respect of acceptance of Products or payment for Products hereunder.

DAI000089

**26.0   Termination With Immediate Effect Upon Notice**

In addition to its rights with respect to termination upon notice with opportunity to cure as set forth in Section 25 hereof, DIAMOND may in its sole discretion, terminate this Agreement upon written notice to DRDC with immediate effect in the event of a Default occurring in the following manner:

26.1   An assignment of assets by DRDC for the benefit of creditors, or if DRDC is an individual or partnership, by that individual or any member of the partnership;

26.2   The institution of voluntary or involuntary bankruptcy proceedings by or against the DRDC, proceedings for the appointment of a trustee or receiver for the DRDC, or reorganization of the DRDC, arrangement, insolvency or liquidation proceedings, by or against DRDC or its assignee, or if an individual or partnership, by or against the individual or any member of such partnership;

26.3   Material change in ownership or management without prior written approval by DIAMOND;

26.4   Any assignment or attempted assignment of this Agreement or any right or obligation arising under this Agreement by DRDC without prior written approval of DIAMOND;

26.5   Falsification of any records or reports by DRDC, or the discovery by DIAMOND of the falsity of any representation by DRDC to DIAMOND, whether contained herein or elsewhere;

26.6   DRDC's failure to comply with the ethical business practices listed in Exhibit G hereto;

26.7   DRDC's failure to acquire or maintain any regulatory licensure or certification required to be held by DRDC in order for DRDC to perform its obligations under this Agreement or under a Service Center Agreement;

26.8   DRDC's failure to maintain the insurance required by Section 30 and Exhibit D;

26.9   Disparagement by DRDC, its agents or employees of DIAMOND, the Manufacturer or the Products;

26.10  A second or any subsequent Default by DRDC in respect of the acceptance of or payment for Product hereunder.

Initials _____   _____
        Diamond      DRDC

DAI000090

**27.0 Effect of Expiration or Termination**

27.1 Upon expiration or termination of this Agreement for any reason, each party will immediately pay all sums due to each other.

27.2 Upon expiration or termination of this Agreement for any reason by either party, DIAMOND, in its sole discretion, may cancel all unfilled orders for Products placed by DRDC with DIAMOND.

**28.0 Disclaimer**

28.1 DRDC acknowledges and agrees that, except as specifically provided in the Limited Warranty, neither DIAMOND nor Manufacturer nor any of their officers, affiliates, directors, managers, employees, agents or representatives has made or shall be deemed to have made any guaranty, representation or warranty, express or implied, as to the value, condition, design, description, operation, merchantability or fitness for use or for a particular purpose of a Product or any part thereof or as to the quality of the material or workmanship of a Product or any part thereof (including any modifications thereto), all of which are hereby expressly excluded and extinguished, and DRDC hereby waives all warranties, guarantees, rights and remedies, express or implied, including but not limited to, any obligation or liability of DIAMOND or Manufacturer with respect to any implied warranty of merchantability, any implied warranty arising from course of performance, course of dealing, usage of trade, any implied warranty of fitness and any direct, incidental or consequential damages of any kind or nature, whether or not arising from the negligence but excluding gross negligence and willful misconduct of DIAMOND or Manufacturer, and any risks with respect thereto are hereby assumed by DRDC. The warranties and representations set forth in this Section 28 are exclusive and in lieu of all other representations or warranties whatsoever, express or implied, except the Limited Warranty, and neither DIAMOND nor the Manufacturer shall be deemed to have made any other warranties.

28.2 To the fullest extent permitted under applicable law, none of the parties hereto shall be liable or accountable to any third party under any circumstances for any losses, costs, liabilities, claims, damages or expenses directly or indirectly arising out of, in connection with or related to, this Agreement. Nothing herein contained or occurring in connection with this Agreement shall create any duty or obligation on the part of any party hereto in favour of any person other than a party hereto, it being the intent of the parties that this Agreement does not create any duty to or rights of any third party beneficiary, whether express or implied. DRDC herby acknowledges and agrees that nothing in this Section 28.2 is intended to, and shall not be construed or interpreted to, limit or in any manner whatsoever affect DRDC's obligations pursuant to the provisions of Section 29, below.

28.3   Neither DIAMOND nor Manufacturer shall be liable for any incidental, consequential, or indirect damages suffered by DRDC or for any loss of present or prospective profits or any expenditures, investments or commitments made in connection therewith or in connection with the establishment, development or maintenance of the business or goodwill of DRDC or any other loss or damage resulting from or relating to the termination of this Agreement.

## 29.0   Indemnification

DRDC AGREES TO INDEMNIFY, DEFEND AND HOLD DIAMOND AND MANUFACTURER HARMLESS WITH RESPECT TO ANY CLAIM, DEMAND, CAUSE OF ACTION, LIABILITY, LOSS OR DAMAGE (INCLUDING REASONABLE ATTORNEYS' FEES AND COSTS OF INVESTIGATING AND LITIGATING CLAIMS) INCLUDING ANY CLAIMS RELATING TO OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, ITS ACTION OR FAILURE TO ACT, WHETHER NEGLIGENT OR WILLFUL IN NATURE, INCLUDING:

THE USE, SALE, OPERATION, LEASE, REPAIR, MAINTENANCE OR OFFER FOR SALE BY DRDC TO OWNERS, PURCHASERS, RENTERS OR USERS OF THE PRODUCTS; OR

THE ACTIVITIES OF DRDC'S SALES AGENT(S); OR

THE USE OR OPERATION OF ANY DEMONSTRATOR AIRCRAFT; OR

ANY ACT OR CONDUCT OF DRDC OR ANY FINDING OR DETERMINATION THAT DRDC IS, OR MAY BE, OR MAY HAVE BEEN, AN AGENT OF DIAMOND OR MANUFACTURER, WHICH FINDING OR DETERMINATION IS BASED WHOLLY OR IN PART UPON ACTS OF DRDC, ITS AGENTS OR EMPLOYEES; OR

AGREEMENTS OF OR BY DRDC, OR ITS AGENTS OR EMPLOYEES; OR

ANY ALLEGED OR ACTUAL MODIFICATION OF THE LIMITED WARRANTY BY DRDC, ITS AGENTS, OR ITS EMPLOYEES.

NOTWITHSTANDING ANY OTHER LANGUAGE CONTAINED IN THIS AGREEMENT, THE FOREGOING INDEMNITY PROVISIONS SHALL NOT APPLY TO CLAIMS RELATING TO OR ARISING FROM THE DESIGN, MANUFACTURE, SALE, MODIFICATION, MAINTENANCE, SERVICE, OR OPERATION OF THE PRODUCTS BY DIAMOND OR MANUFACTURER THAT MAY ARISE UNDER VARIOUS THEORIES OF PRODUCT LIABILITY, AND NOTHING CONTAINED HEREIN SHALL BE CONSTUED IN SUCH A WAY AS TO IMPUTE LIABILITY THEREFOR TO DRDC.

Initials _____     _____
                Diamond        DRDC

DAI000092

## 30.0   Insurance

**30.1**   DRDC shall at its expense secure and maintain at all times during the term of this Agreement insurance including minimum policy limits as outlined in Exhibit D hereto, to cover all of its activities including:

    (a)   Aircraft Liability Insurance for owned and non-owned aircraft;

    (b)   Airport, Premises, Property and Operations Liability;

    (c)   Products Legal Liability including Completed Operations covering at a minimum all activities envisaged by the scope of this Agreement; and

    (d)   Hangarkeepers Legal Liability to cover all aircraft in DRDC's care, custody and control.

**30.2**   All such required insurance will be obtained from reputable insurance companies acceptable to DIAMOND and will be endorsed to:

    (a)   include as additional insureds Diamond Aircraft Industries Inc, Diamond Aircraft Sales USA Inc, Diamond GmbH, their respective officers, directors, agents, representatives, servants and employees solely with respect to DRDC's activities under this Agreement (including the sales, operation and servicing of the Products by DRDC), but not with respect to any other liability relating to Diamond Aircraft Industries Inc, Diamond Aircraft Sales USA Inc, Diamond GmbH's design, manufacture, sale, modification, maintenance, service, or operation of the aircraft.

    (b)   include a severability of interest clause which provides that the insurance will operate to give each insured the same protection as if there was a separate policy issued to each insured.

    (c)   waive rights of subrogation against Diamond Aircraft Industries Inc, Diamond Aircraft Sales USA Inc, Diamond GmbH, and their respective officers, directors, agents, representatives, servants and employees, other than in their capacity as aircraft manufacturer; and

    (d)   provide for a thirty (30) days notice of cancellation to Diamond Aircraft Industries Inc, Diamond Aircraft Sales USA Inc, Diamond GmbH prior to any reduction, termination or any expiration of coverage to be maintained under this Section 30 and specified in Exhibit D.

## 31.0   Remedies

**31.1**   DRDC acknowledges that its sole remedy against DIAMOND in the event of termination of this Agreement by DIAMOND shall be DIAMOND's refund to DRDC of any amounts remaining for deposits on unfilled orders cancelled by DIAMOND in accordance with the provisions of this Agreement, after offsetting all amounts owed to DIAMOND by DRDC. DRDC further acknowledges and agrees that any such claims are compensated in money and DRDC represents and warrants that it shall neither seek nor obtain injunctive relief to enjoin termination of this Agreement. UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE FOR SPECIAL, CONSEQUENTIAL, INCIDENTAL, LOST PROFIT, PUNITIVE, OR EXEMPLARY DAMAGES, WHETHER FOR BREACH OF CONTRACT, BREACH OF WARRANTY, NEGLIGENCE, STRICT LIABILITY OR OTHERWISE.

**31.2**   The receipt by either party of any sum from the other with or without knowledge of any default hereunder shall not be deemed a waiver of any such default. No delay or omission in the exercise of any right or remedy accruing to either party upon any default by the other party under this Agreement shall impair such right or remedy or be construed as a waiver of any such default theretofore or thereafter occurring.  The waiver by either party of any default hereunder or condition herein contained shall not be deemed to be a waiver of any subsequent default thereunder.  Other than the limitations on DRDC's remedies set out herein above, all rights, powers, options or remedies of either party shall be cumulative and not alternative and the exercise of one right, power, option or remedy shall not bar other rights, powers, options or remedies allowed herein or by law.

## 32.0   General Matters

### 32.1   Notice:

Any written notice required or given under this Agreement shall be deemed to be given and received when delivered in person or by registered mail, return receipt requested, to the party's address specified herein, and, in the case of DRDC, Attention: General Counsel, even if delivery is not accepted by the other party, its agents, servants, or employees. Any party hereto may change the address to which notices are to be sent by giving by five (5) days written notice to the other party hereto.

### 32.2   Duties and Taxes:

DRDC represents and warrants that the Products to be purchased from DIAMOND under this Agreement are exempt from any requirement that DIAMOND collect any duties, taxes and/or charges from DRDC.  DRDC agrees to pay directly to the appropriate taxing authority any and all duties, taxes and/or charges applicable to said Products, agrees to execute all resale or exemption

DAI000094

certificates as to sales or similar taxes requested by DIAMOND, agrees to file any tax returns required in connection therewith and agrees to hold DIAMOND harmless, on an after tax basis, from any claims or demands by any such taxing authority with respect thereto.

### 32.3 Exhibits:

The schedules of prices and other exhibits referred to herein, are by this express reference made a part of this Agreement, except where specifically excluded by other language in this Agreement, as though set out herein

### 32.4 Force Majeure:

Neither DIAMOND nor DRDC will be liable for failure to perform their respective obligations under this Agreement when such failure is due to fire, flood, strikes, other industrial disturbances, inevitable accident, war, riot, insurrection, law, regulation or directive of any governmental authority.

### 32.5 Legal Interpretation:

It is agreed that this Agreement shall be construed and interpreted in accordance with the laws of the State of New York, USA.

### 32.6 Waiver of Jury Trial:

DIAMOND and DRDC hereby waive trial by jury in any judicial proceeding to which they are both parties involving, directly or indirectly, any matter (whether sounding in tort, contract or otherwise) in any way arising out of, related to, or connected with this Agreement, or the relationship established hereunder.

### 32.7 Severability:

If any provision of this Agreement is invalid or unenforceable, the Agreement shall be considered divisible as to such provision and the remainder of the Agreement shall remain valid and binding as though such invalid or unenforceable provision were not included herein.

### 32.8 No Waiver:

The failure of either party at any time to require performance by the other party of any provision of this Agreement shall in no way affect the full right to require such performance at any time thereafter, nor shall the waiver by either party of a breach of any provision of this Agreement constitute a waiver of any succeeding

breach of the same or any other such provision or constitute a waiver of the provision itself.

### 32.9 Integration:

The Agreement constitutes the sole and only agreement of the parties to this Agreement and supersedes any prior understandings or written or oral agreements between the parties respecting the subject matter of this Agreement. DRDC represents to DIAMOND, with the understanding that DIAMOND is relying thereon, that it has consulted its attorney, accountant, and/or financial advisor with reference to those matters contained herein that it deems pertinent; and it, by placing its signature hereon acknowledges that DIAMOND has made no statements, representations, warranties, or inducements upon which DRDC has relied as a basis for executing the Agreement other than those which are specifically contained in the Agreement, and DRDC has concluded, based upon such independent advice and investigation, that it is in its economic interests to request DIAMOND to appoint it as a DIAMOND Regional Distribution Center on the terms and conditions contained herein. No subsequent change in or addition to this Agreement shall be valid or binding on either party until the same is reduced to writing and signed by the parties hereto.

### 32.10 Construction:

The Agreement has been subject to revision and modification by both parties and has been accepted and approved as to its final form by both parties. Accordingly, any uncertainty or ambiguity existing in this Agreement shall not be interpreted against either party as a result of the manner of the preparation of this Agreement.

### 32.11 Headings:

Descriptive headings used herein are inserted for convenience only and do not constitute a part of the Agreement.

### 32.12 Execution:

The person executing this Agreement on behalf of a party is duly authorized by such party to make and enter into contracts that are binding thereon. Each page of this Agreement shall be initialed by the authorized signers of the Agreement.

### 32.13 Gender and Number:

As used in this Agreement, the masculine, feminine, neuter gender, and the singular or plural number, shall each include the others whenever the context so indicates.

DAI000096

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by each such party's duly authorized representative, in multiple counterparts, each of which shall be deemed to be an original, on the day and year first above written.

**DIAMOND AIRCRAFT SALES USA INC.**

By: _____
    (Signature of authorized Officer)

Name: Peter Maurer

Title: President

Witness:_____
        (signature)

Witness Print Name: _____

**Premier Aircraft Sales, Inc.**

By: _____
    (Signature of authorized Officer)

Name: Fred Ahles

Title: President

Witness:_____
        (signature)

Witness Print Name: _____

Revision 08032006                    Page 24 of 24          Initials _____ _____
                                                                     Diamond   DRDC

DAI000097