# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO: 11-61663-CIV-MORENO

AIRCRAFT GUARANTY CORPORATION,
TRUSTEE OF CONTINENT AIRCRAFT
TRUST 1087,

    Plaintiff,

v.

DIAMOND AIRCRAFT INDUSTRIES, INC.;
DIAMOND AIRCRAFT INDUSTRIES, GMBH;
and DIAMOND AIRCRAFT SALES U.S.A., INC.,

    Defendants.
_____/

### DEFENDANT DIAMOND AIRCRAFT INDUSTRIES, INC.'S
### MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION
### OR, IN THE ALTERNATIVE,
### FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
### AND INCORPORATED MEMORANDUM OF LAW

Carl R. Nelson, FBN 280186
cnelson@fowlerwhite.com
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@fowlerwhite.com
Scott A. Richards, FBN 0072657
scott.richards@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Tel: (813) 228-7411
Fax: (813) 229-8313
Attorneys for Defendant Diamond Aircraft
Industries, Inc.

Defendant Diamond Aircraft Industries, Inc. ("Diamond Canada"), through its undersigned counsel and pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves the Court to dismiss the Second Amended Complaint (Doc. 62) for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.[1]

**I.      Background.**

Previously, this case was pending solely against Diamond Canada and was set for trial on December 30, 2013. (*See* Scheduling Order, dated July 31, 2013, Doc. 43.) At the proverbial eleventh hour, Plaintiff decided to add Diamond Aircraft Sales U.S.A., Inc. ("Diamond U.S.A.") and Diamond Aircraft Industries, GmbH ("Diamond Austria") as party Defendants. Leave to amend the operative complaint was granted on September 30, 2013 (Doc. 61.)[2]

First, this case should be dismissed because there is no subject matter jurisdiction. Discovery has revealed that the parties are not diverse under 28 U.S.C. § 1332; in fact, diversity has been lacking from the outset of the case. (Section II.)

---

[1] Upon preparing its motion to dismiss and answer on behalf of Diamond U.S.A., pursuant to the Court's Order (Doc. 82, dated Feb. 5, 2014), Diamond Canada's counsel observed that no response to the Second Amended Complaint had been filed by Diamond Canada. The reason no response was filed by Diamond Canada was the same rationale explained in Diamond U.S.A.'s filings (Docs. 75, 77, and 80)—that is, Diamond Canada and Diamond U.S.A.'s counsel believed the stay of the case obviated any need to respond. Given the Court's Order directing Diamond U.S.A. to file its motion to dismiss and answer, counsel in good faith files Diamond Canada's responses contemporaneously with Diamond U.S.A.'s. Counsel for Plaintiff does not object to Diamond Canada's responding to the Second Amended Complaint pursuant to the February 5 order.

[2] As additional background, this case is an offshoot of a case filed in this Court in April 2010. *Mascaro Aviation, LLC v. Diamond Aircraft Industries, Inc.*, Case No. 0:10-cv-60556 (S.D. Fla.) (Moreno, J.). *See also DSM Leasing, Inc. v. Diamond Aircraft Industries, Inc.*, Case No. 3:10-cv-229 (W.D. Ky.) (Simpson, J.), and *Morris Aviation, LLC v. Diamond Aircraft Industries, Inc.*, Case No. 3:09-cv-644 (W.D. Ky.) (Simpson, J.).

Second, the Second Amended Complaint fails to state a claim against Diamond Canada upon which relief can be granted because Plaintiff has improperly "lumped" Diamond Canada together with the other defendants in violation of Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure. There are no allegations of wrongful conduct as against Diamond Canada individually. (Section III.)

Each of these grounds is discussed in turn herein. For these independent reasons, the Second Amended Complaint should be dismissed.

## II.     Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Central to determining subject matter jurisdiction are two entities and one individual that relate to the "Plaintiff" in this action:

(1) Continent Aircraft Trust 1087 (the "**Trust**"), a Wyoming statutory trust (it was a Cayman Islands trust until two days before this case was filed), which was the original Plaintiff in this lawsuit;

(2) Aircraft Guaranty Corporation (the "**Trustee**" of the Trust), a Wyoming corporation, which is the current Plaintiff in this lawsuit; and

(3) Karsten Damgaard-Iversen ("**Iversen**"), a citizen of Denmark, who is the sole beneficiary and sole certificate holder of the Trust, but who is not named as a party to this lawsuit.

Iversen is the real party to this controversy. On September 19, 2013, the undersigned counsel deposed Iversen on behalf of Diamond Canada. (*See* **Exhibit A**, deposition transcript.) Iversen's testimony revealed that **Iversen** is the man behind the curtain who controls the Trust, the Trust's assets, and this litigation. **Iversen** (not the Trust or the Trustee) signed the relevant aircraft purchase agreement; **Iversen** (not the Trust or the Trustee) expended his own funds to purchase the subject aircraft; **Iversen** (not the Trust or the Trustee) is responsible for maintenance of the subject aircraft; **Iversen** (not the Trust or the Trustee) has the authority to sell the subject aircraft; **Iversen** (not the Trust or the Trustee) controls the instant lawsuit; and **Iversen** (not the Trust or the Trustee) is the sole party who would benefit from any relief granted

3

to Plaintiff. Therefore, **Iversen** individually is the real party in interest for purposes of determining whether the Court has subject matter jurisdiction based on diversity.

Iversen is a citizen of Denmark, and two of the three defendants (Diamond Canada and Diamond Austria) are citizens of foreign countries. There are no grounds under 28 U.S.C. § 1332 that give a United States District Court original subject matter jurisdiction over an action involving a plaintiff who is a foreign citizen and two defendants who are foreign citizens, even if another defendant (Diamond U.S.A.) happens to be a United States citizen. Therefore, diversity does not exist, and the action should be dismissed accordingly under Rule 12(b)(1).

A.   **Pertinent Facts.**

At all times pertinent, Iversen has been a citizen of **Denmark**. (Am. Compl. (Doc. 40) ¶ 39 (alleging Iversen is "a citizen of Denmark"); Iversen Dep. 7:23-24 ("Q: What is your citizenship? A: Danish.").)

In February 2007, Iversen contracted with Premier Aircraft Sales, Inc. ("Premier"), a non-party, for the purchase of a DA42 aircraft (the "Aircraft"). (*See* 2d Am. Compl. (Doc. 62) ¶ 74; *see also* **Exhibit B**, Aircraft Sales Agreement (reflecting Iversen's name, signatures, and initials).) Iversen purchased the Aircraft from Premier solely in his individual capacity, using his personal funds, as evidenced by the following testimony:

> *A: The initial down payment sort of earnest money in the amount of about $5,000 or $6,000 was paid via American Express, my UK American Express.*
>
> Q: And that was paid to Premier?
>
> *A: To Premier. All of the monies were paid to Premier. And the rest of the funds in different tranches came as wire transfers from my personal bank accounts in U.S. dollars. . . .*
>
> Q: In any event, the first title of which you were aware was a direct transfer of title from Premier to you personally? A: That's correct.

(Iversen Dep. 32:19-33:25; *see also* Ex. B; 2d Am. Compl. ¶ 74.)

4

After Iversen purchased his Aircraft, he found that he needed an "N registration" with the Federal Aviation Administration (the "**FAA**") so that he could fly the Aircraft in the United States. (Iversen Dep. 56:21-57:3.) Because Iversen was a Danish citizen, he could not register the Aircraft with the FAA in his own name. (*Id*. 56:14-57:3; 61:4-8.) Thus, Iversen enlisted the help of the Trustee's predecessor to create the Trust and to transfer the title of the Aircraft from Iversen, individually, to the Trust. (*Id*. 55:17-20.)

A copy of the pertinent trust documents produced by Plaintiff are attached hereto as **Composite Exhibit C**. The Trust is a Wyoming statutory trust, and the Plaintiff-Trustee is a Wyoming corporation (*See* Ex. C.)

The creation of the Trust and the transfer of the Aircraft from Iversen, individually, to the Trust was for the **sole purpose** of registering Iversen's Aircraft with the FAA. (*Id*. 56:14-57:1; 61:4-8; 76:21-77:4.) The Trust has been used for no other purpose since then. (*Id*.) Iversen is the sole beneficiary and sole certificate holder of the Trust. (2d Am. Compl. ¶ 1; Am. Compl. (¶ 39 ("Mr. Karsten Damgaard-Iversen, a citizen of Denmark, is the sole beneficiary of [the Trust]."); Iversen Dep. 61:13-14 ("I'm 100 percent beneficiary owner.").)

The Trustee does not have any independent control over the Trust's only asset—the subject Aircraft. (Iversen Dep. 61:4-62:9.) Rather, Iversen, the 100% beneficial owner of the Trust, controls the Aircraft and the Trust in every way, is the ultimate decision-maker regarding the disposition of the aircraft, and would receive the sales proceeds if the Aircraft were ever sold, as evidenced by the following testimony:

> A:   *. . . The sole purpose of this was to have the aircraft registered in the trust rather than me at the time because of what we already discussed. The trust has no other purpose.*
>
> Q:   If you sell the airplane, that's your decision, right?
>
> A:   *Yes.*

5

> Q: And then you just tell the trust?
>
> A: *Right. I'm 100 percent beneficiary owner.*
>
> Q: You control it in every way?
>
> A: *Yes.*
>
> Q: You pay for maintenance?
>
> A: *Everything.*
>
> Q: If the aircraft is sold, you get the money?
>
> A: *Yes.*
>
> Q: Does Aircraft Guaranty have any control over the aircraft at all?
>
> A: *None. . . .*
>
> Q: And so far every expense that has come up for maintenance and operation and whatever, that's all been your personal expense?
>
> A: *That's correct.*

(Iversen Dep. 61:4-62:16.) Conversely, the Trustee has **no control** over the Aircraft's disposition and is retained only to maintain the FAA registration of the Aircraft. (*Id*. 61:4-62:9). And it is Mr. Iversen, **not** the Trustee, who personally controls this litigation. (*Id*. 61:25-62:6.)

**B.    Legal Standard**

Plaintiff bears the burden to establish subject matter jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). "It is presumed that a federal court lacks jurisdiction in a particular case until the plaintiff demonstrates the court has jurisdiction over the subject matter." *JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips South Beach, LLC*, 2010 U.S. Dist. LEXIS 112607, *4 (S.D. Fla. Oct. 22, 2010) (dismissing for lack of subject matter jurisdiction).[3]

---

[3] Under Rule 12(b)(1), a party may challenge subject matter jurisdiction either facially or factually. While a facial attack is based solely on the allegations of a complaint, a factual attack contests subject matter jurisdiction based upon "matters outside of the pleadings." *JPMCC*, 2010 U.S. Dist. LEXIS 112607 at *5. Unlike a facial challenge, when there is a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of
(footnote cont'd)

Federal courts have original subject matter jurisdiction over, *inter alia*, controversies between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a). Federal diversity jurisdiction does **not** encompass controversies between citizens of foreign states or resident aliens. *See Vantage Drilling Co. v. Su*, 2014 U.S. App. LEXIS 282, 282 (5th Cir. Jan. 7, 2014) (reversing district court's denial of motion to remand where complete diversity was lacking; where there were aliens on both sides of he litigation); *Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir. 2000) (vacating judgment and remanding with instructions to dismiss claims for lack of subject matter jurisdiction; "[d]iversity jurisdiction under 28 U.S.C. § 1332 is defeated by the presence of aliens both as plaintiffs and as defendants"). *Accord Banci v. Wright*, 44 F. Supp. 2d 1272, 1275 n.3 (S.D. Fla. 1999) (finding no diversity jurisdiction existed where plaintiff was a citizen of Ecuador but a resident of Florida, and where the defendant was a citizen of Ecuador but a resident of California); *see also Antonier v. Miller*, 2012 U.S. Dist. LEXIS 22578, *5-*6 (M.D. Fla. Feb. 23, 2012) (finding no diversity jurisdiction existed between Canadian citizens, even if plaintiff was a permanent resident of Florida).

### C. Argument: <u>No Diversity</u> Exists Where Plaintiff is Effectively a Citizen of Denmark and Where Two of Three Defendants Are Foreign Citizens.

Iversen is the real party to the controversy for purposes of determining diversity jurisdiction (Section II.C.1). There is no (and has never been) diversity of citizenship in this case because Iversen is a citizen of **Denmark**, and Diamond Canada, is a foreign corporation (Section II.C.2). The presence of Diamond U.S.A. does not cure this jurisdictional defect (Section II.C.3). If the presence of Diamond U.S.A. did somehow "create" subject matter jurisdiction (which it does not), jurisdiction is precluded by fraudulent joinder. (Section II.C.4.)

---

jurisdictional claims." *Id*. at *5-*6. Here, Diamond U.S.A. factually challenges the Court's federal subject matter jurisdiction based on the undisputed facts.

7

### 1. Iversen Is the Real Party to this Controversy for Purposes of Determining Jurisdiction.

Plaintiff purports to bring this action based on diversity of citizenship under 28 U.S.C. § 1332 because "Plaintiff" (that is, the Trustee) "is domiciled in Wyoming, Diamond Canada is a Canadian corporation with its principal place of business in Canada, Diamond Austria is an Austrian corporation with its principal place of business in Austria and Diamond USA is a Delaware corporation with its principal place of business in Florida." (2d Am. Compl. ¶ 5.)[4]

Plaintiff's assertion of diversity is wrong. Diversity should be determined by looking at **Iversen's** citizenship instead of the Trustee's. "[C]itizens upon whose diversity a plaintiff grounds jurisdiction must be ***real and substantial*** parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980) (citations omitted; emphasis added). "Thus, a federal court must ***disregard nominal or formal parties*** and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* at 461 (emphasis added). *See also U.S. Bank N.A. v. Coop. Dist. of Spanish Fort*, 2011 U.S. Dist. LEXIS 112026, *20 (S.D. Ala. Sept. 29, 2011) (explaining that, in light of *Navarro*, "the law is that a trustee's rights and authority are the touchstone of the real-party-in interest inquiry") (emphasis in original). Here, the Trustee has virtually no rights or authority. Plaintiff cannot establish that the Trustee is the real party to this controversy.

If the Trustee merely "serves as the mouthpiece of the certificate holders and acts only at their affirmative direction," the Trustee's purported powers over the trust assets and litigation are illusory and **do not satisfy** the *Navarro* standard. *See id.* at *23, *26. Factors to consider are (a) the degree of control over the litigation; (b) intervention in the trust's affairs; (c) legal title to the trust's assets; (d) control or input in investment decisions; and (e) generally, the responsibilities

---

[4] Diamond U.S.A. denies that its principal place of business is in Fort Lauderdale, Florida, as alleged in the Second Amended Complaint.

8

and duties of the trustee versus the beneficiary. *See Navarro*, 446 U.S. at 464-65; *U.S. Bank N.A.*, 2011 U.S. Dist. LEXIS 112026 at *20. *See also Bell v. HSBC Bank USA*, 2013 U.S. Dist. LEXIS 83094, *2-*3 (M.D. Ga. June 13, 2013) ("It is true that, in some cases, a federal court may base diversity jurisdiction on a trustee's citizenship.  For that principle to apply, however, the trustee must be the 'real party to the controversy,' which is the case when it 'possesses certain customer powers to hold, manage, and dispose of assets for the benefit of others.") (citing *Navarro* and *U.S. Bank*).

Here, the Trustee is merely a formality, and Iversen runs the show. (*See* Section II.A., above, citing Iversen's own deposition testimony.)  Iversen bought the Aircraft with his own funds, not with funds from the Trust. (Iversen Dep. 32:19-33:25.)  Iversen pays the Trustee an annual service fee for the FAA registration and maintenance of the Trust. (*Id*. 60:8-15.)  Beyond that, the Trust and Trustee have no other purpose. (*Id*. 61:4-24; 76:21-77:4.)  The Trustee acts only at the direction of Iversen and with his consent. (*See id*. 61:4-24.)  Iversen is **personally** financially responsible for the Aircraft, including all maintenance and repairs, the costs of which are central to Plaintiff's damages claim in this case. (*Id*. 61:17-18; 62:13-16; *see also* 2d Am. Compl. ¶¶ 72, 84, 88, 94.)  Indeed, as part of its damages, Plaintiff seeks the cost of repairs and maintenance allegedly resulting from the loss of warranty. (2d Am. Compl. ¶¶ 42, 84, 88, 94.)

Plaintiff seeks damages resulting from Iversen's purported reliance on alleged representations when he purchased the Aircraft regarding the warranty. (2d Am. Compl. ¶¶ 72, 84, 88, 94.)  Any alleged diminution of value of the Aircraft or increased out-of-pocket maintenance costs would affect only Iversen, personally, because he—**not** the Trust—stands to receive the sales proceeds if the Aircraft is ever sold and incur any expenses. (*See id*. ¶¶ 84, 88, 94; Iversen Dep. 61:19-21.)  Iversen, who is the Trust's sole beneficiary and certificate holder,

controls this litigation and all affairs relating to the Aircraft.  (Iversen Dep. 61:4-65:6; 76:21-77:4.)  Given the breadth of Iversen's authority and control over the Trust's asset and affairs, and the Trustee's lack thereof, Plaintiff has not and cannot establish that the Trustee is a real party to the controversy.  The Trustee is no more than a nominal party whose citizenship must be disregarded in determining whether diversity jurisdiction exists.  *See Navarro*, 446 U.S. at 461.  At its core, the real party-plaintiff to this controversy is Iversen, not the Trustee.[5]

> 2. **There is No Diversity of Citizenship Because Iversen is a Danish Citizen and Diamond Canada (the Original Defendant to this Action is a Canadian Corporation.**

Federal courts have jurisdiction over actions between "citizens of a State and citizens or subjects of a foreign state," but **not** between citizens of foreign states.  *See* 28 U.S.C. § 1332(a)*; Banci*, 44 F. Supp. 2d at 1275, n.3; *Antonier*, 2012 U.S. Dist. LEXIS 22578 at *5-*6.  Likewise, federal courts do **not** have diversity jurisdiction over disputes between resident aliens and foreign citizens.  *See Banci*, 44 F. Supp. 2d at 1275 n.3; *Antonier*, 2012 U.S. Dist. LEXIS 22578 at *5-*6; *see also Gall v. Topcall Int'l, A.G.*, 2005 U.S. Dist. LEXIS 4421, *17-*24 (E.D. Pa. 2005) (finding no subject matter jurisdiction where plaintiff was a citizen of the Netherlands residing in Pennsylvania an where defendants were citizens of Austria); *Chavez-Organista v. Vanos*, 208 F. Supp. 2d 174, 176-77 (Dist. Puerto Rico 2002) (finding no subject matter

---

[5] The Court previously found that the Trustee was authorized to sue under Rule 17 of the Federal Rules of Civil Procedure.  (*See* Doc. 39, at 13.)  However, this ruling did not constitute a finding that the Trustee was, as a matter of law, the real party to this action for jurisdictional purposes.  While there is a "rough symmetry" between "the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy" and Rule 17 (a)'s "real party in interest" standard, the two rules are not the same.  *Navarro*, 446 U.S. at 462, n. 9.  *See also Emerald Inv. Trust v. Gaunt Parsippany Partners,* 492 F.3d 192, 199 n. 10 (3d Cir. N.J. 2007) ("A determination that the trust itself is the real party in interest with the capacity to sue or be sued *can exist side by side* with a rule requiring that the citizenship of the trustee or beneficiary or both determines the trust's citizenship *for diversity of citizenship purposes*.") (emphasis added).  Because Iversen **is** the real party to this action, his Danish citizenship underpins the diversity analysis.

jurisdiction where plaintiff was non-resident alien and defendants were allegedly permanent resident aliens domiciled in Puerto Rico); *A.T.X Export v. Mendler*, 849 F. Supp. 283 (S.D. N.Y. 1994) (finding no subject matter jurisdiction where plaintiff and defendant were citizens of Israel even though defendant was permanent resident of New York).

Iversen is, unquestionably, a citizen of Denmark. (Am. Compl. (Doc. 40) ¶ 39 (alleging Iversen is "a citizen of Denmark"); Iversen Dep. 7:23-24 ("Q: What is your citizenship? A: Danish.").) Diamond Canada is, unquestionably, a Canadian corporation. The analysis stops there because this case was originally filed solely against Diamond Canada. Therefore, there has *never* been diversity of citizenship in this case. A lack of subject matter jurisdiction deprives the court of the power to act. *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888 (5th Cir. 2000); *see also Woods v. Wal-Mart*, 1997 U.S. App. LEXIS 22738, *9 (10th Cir. Aug. 27, 1997) ("Even after entry of a final judgment, the constitutional balance of policies that underlies the Article III grant of judicial power impels the vacation of that judgment and remand to the state court having jurisdiction when it is determined that the federal court was without power to act because of a lack of subject matter jurisdiction over a removed case.") (citing *In re Carter*, 618 F.2d 1093, 1098 (5th Cir. 1980)).

The presence of aliens on both sides of a case destroys diversity. *Impuls I.D. Int'l, S.L. v. Psion-Teklogix, Inc.*, 234 F. Supp. 2d 1267, 1273 (S.D. Fla. 2002) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580, 119 S. Ct. 1563 (1999)). There is no diversity of citizenship and, thus, no subject matter jurisdiction.

### 3. The Inclusion of Diamond U.S.A. Does Not Create Diversity.

"[T]he presence of at least one alien on both sides of an action destroys diversity. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989). Here, from the outset of the action, there have been aliens on both sides of the litigation: Iversen and Diamond Canada.

11

Therefore, no amendment should have been granted because there was no subject matter jurisdiction; the Court was "without power to act." *See Woods*, 1997 U.S. App. LEXIS 22738 at *9. But even taking into account the two new Defendants, Diamond Austria is an Austrian corporation, and Diamond U.S.A. is a Delaware corporation. (2d Am. Compl. ¶¶ 2-5.) Aliens thus remain on both sides of the action, precluding federal subject matter jurisdiction.

The inclusion of Diamond U.S.A. does not somehow "create" diversity jurisdiction where none exists. Aliens remain on both sides of this action, precluding complete diversity. *See Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757, 757-58 (5th Cir. 1975) (finding no diversity of citizenship exists when "an alien [sues] a citizen of a state and another alien" because complete diversity is lacking; "the established judicial construction of the general diversity statute requires complete diversity"); *Impuls I.D.*, 234 F. Supp. 2d at 1273 (finding that diversity jurisdiction was lacking because the "the presence of an alien on both sides of an action renders diversity incomplete"); *Tovar*, 2011 U.S. Dist. LEXIS 130093 at *7 ("[W]here Plaintiff is an alien and one defendant is a permanent resident alien living in New York, complete diversity is lacking.").[6]

---

[6] It is irrelevant that Section 1332(a) once included the "deeming clause": "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." *See* 28 U.S.C. 1332(a) (2010). This clause was repealed as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, and it does not apply to Diamond U.S.A. Even if it did, the clause would not create jurisdiction. *See H.K. Huilin Int'l Trade Co., LTD v. Kevin Multiline Polymer Inc.*, 907 F. Supp. 2d 284, 287-288 (E.D.N.Y. Nov. 1, 2012) (no jurisdiction over suits between a nonresident alien on one side and resident aliens and United States citizens on the other); *Tovar v. Indiana*, 2011 U.S. Dist. LEXIS 130093, *7 (S.D.N.Y. Nov. 8, 2011) (noting that the deeming clause "does not create diversity jurisdiction where a permanent resident alien appears opposite another alien"); *Saadeh v. Farouki*, 107 F.3d 52, 61 (D.C. Cir. 1997) (no diversity jurisdiction over a lawsuit involving an alien on one side and an alien and a citizen on the other side, "***regardless of the residence status of the aliens***") (emphasis added). *But see Singh v. Daimler-Benz AG*, 9 F.3d 303, 312 (3d Cir. 1993) (finding diversity jurisdiction where a "deemed citizen of Virginia" sued an alien and a citizen of
(footnote cont'd)

Accordingly, because this is an action between an alien on one side and two aliens and a Delaware corporation on the other, diversity jurisdiction is lacking. Therefore, this action should be dismissed for lack of federal subject matter jurisdiction.

### 4. If the Inclusion of Diamond U.S.A. Somehow "Creates" Diversity (Which It Does Not), Jurisdiction Fails Due to Fraudulent Joinder.

The above sections establish that there is no diversity jurisdiction here, where there are aliens on both sides of the case. The inclusion of Diamond U.S.A. does not somehow create diversity between the parties. Even if, purely for the sake of argument, diversity jurisdiction does exist, it would be based on fraudulent joinder. As established in the 12(b)(6) motion, below, Plaintiff fails to state a claim against Diamond U.S.A. Therefore, Diamond U.S.A. should be dismissed on the ground of fraudulent joinder, and the case should be dismissed due to lack of subject matter jurisdiction.

"The test for determining whether or not a defendant has been fraudulently joined is twofold: (1) look to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court." *Cabalceta*, 883 F.2d at 1561. To be sure, the bulk (if not all) of the fraudulent joinder cases appear to involve plaintiffs who attempt to keep the case in state, as opposed to federal, court.

Applied here, the *Cabalceta* test seems to require the Court to (1) look to see whether there is no possibility the Plaintiff can establish any cause of action against Diamond U.S.A.; and (2) look to see whether Plaintiff has fraudulently pled jurisdictional facts in order to keep its case

---

Delaware and New Jersey; expressly disagreed with in *Saadeh*). Under the present version of Section 1332(a), there is no basis for asserting diversity. Under the previous version, the greater weight of authority supports a finding that diversity is lacking.

in federal court. In a removal case, the relevant allegations are those made "at the time of removal"; here, it appears that the relevant allegations would be those in Plaintiff's Second Amended Complaint.

Section III, below, establishes the first prong of this test. Plaintiff wholly fails to state any claim against Diamond U.S.A., either independently or via an "alter ego" theory. The facts simply are not there. *See also Hill Dermaceuticals, Inc. v. RX Solutions*, 306 Fed. App'x 450, 454 (11th Cir. 2008) ("[The] complaint failed to establish that [one defendant] was an alter ego that dominated [another defendant] to such an extent that [their] independent existence[] was in fact non-existent * * * Under Florida law, the ownership by one corporation of all the stock of another corporation does not destroy the identity of the latter as a distinct legal entity; nor does the fact that the stockholders or officers in two corporations are the same persons operate to destroy the legal identity of either corporation. * * * Because the complaint did not contain facts to establish an alter ego or agency relationship, the district court was entitled to conclude that [the plaintiff] fraudulently joined [one of the defendants].").

The second prong is met because Plaintiff's Second Amended Complaint conspicuously avoids mentioning Iversen's Danish citizenship. (*Compare* Am. Compl. (Doc. 40) ¶ 39 ("Mr. Karsten Damgaard-Iversen, a citizen of Denmark . . .") *with* 2d Am. Compl. ¶ 63 ("Mr. Karsten Damgaard-Iversen, a resident of Reno, Nevada . . .").) The deposition testimony seals the fact that Iversen is a Danish citizen. (Iversen Dep. 7:23-24 ("Q: What is your citizenship? A: Danish.").) The addition of Diamond U.S.A. coupled with the omission of Iversen's Danish citizenship results in fraudulently pleading jurisdictional facts in an attempt to keep Plaintiff's case in federal court (even though adding Diamond U.S.A. is not sufficient to create diversity). The case thus should be dismissed for lack of subject matter jurisdiction.

### III.  Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.

Rule 9(b) governs Plaintiff's fraud claims and requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  (*See also* Order Granting in Part Motion to Dismiss, Doc. 39, at 5-6, 10-11 (applying Rule 9(b) to Plaintiff's claims).)  Plaintiff's claims against Diamond Canada fail because Plaintiff fails to state with particularity the circumstances constituting any alleged fraud on the part on Diamond Canada.

Plaintiff has not alleged wrongdoing by Diamond Canada individually.  Virtually all the allegations against Diamond Canada are contained within the "Jurisdiction and Venue" section of the Second Amended Complaint.  (2d Am. Compl. ¶¶ 5-9, 15, 21, 22; *see also id*. ¶¶ 28, 34.)  The specific counts do not reference Diamond Canada (or any individual Defendant, for that matter).  (*See id*. ¶¶ 81-84 (negligent misrepresentation); 85-88 (fraudulent misrepresentation); 89-94 (fraudulent concealment).)

The allegations are unclear as to whether and, if so, how Diamond Canada played any role in the alleged fraud.  Plaintiff sets forth conclusory assertions regarding agency and alter-ego as between the Defendants, with no explanation as to what acts were performed by which Defendant or how any purported principal-agent relationship between the Defendants could result in liability as to Diamond Canada. (*See, e.g.*, 2d Am. Compl. ¶ 6 (alleging that the three Defendants "are, as both a legal and practical matter, the same entity, with all strategic, operational, and governing authority for Diamond residing in the entity's worldwide nerve center, Diamond Austria").)

One of the allegations impliedly acknowledges that **<u>neither</u>** Diamond Canada nor Diamond U.S.A. "perpetrated a fraud." (*See* 2d Am. Compl. ¶ 9 ("Diamond Austria perpetuated

15

a fraud on its customers by attempting to use both Diamond USA and Diamond Canada as a shield from liability arising from aircraft purchases.").)

While Plaintiff's allegations conjure the notions of piercing the corporate veil and agency law, there are no allegations that make clear that Diamond Canada committed <u>any</u> fraudulent act(s) or omission(s).  The allegations imply that **<u>only</u>** Diamond Austria committed any such act(s) or omission(s).  This point distinguishes the First Amended Complaint (Doc. 40) from the Second Amended Complaint (Doc. 62).  Whereas the former targeted Diamond Canada as the actor, the latter seems to suggest Diamond Canada was a mere alter-ego and cites no wrongful act performed by Diamond Canada.

Plaintiff's fundamental failure to allege any purported wrongdoing by Diamond Canada is fatal to Plaintiff's claims against Diamond Canada.  Federal courts sitting in Florida routinely dismiss fraud claims when a plaintiff fails to specify which defendant made the alleged representation(s) or omission(s).  *See Begualg Investment Mgmt. Inc. v. Four Seasons Hotel Ltd.*, 2011 U.S. Dist. LEXIS 108720, *14-*15 (S.D. Fla. Sept. 23, 2011) (dismissing claim for fraudulent inducement asserted against all defendants; under Rule 9(b), "Plaintiffs have not detailed the required who, what, where, when, and how of the allegedly false statements and again fail to specify *each Defendant's participation in the alleged fraud*") (emphasis added) (citing *Barrett v. Scutieri*, 281 Fed. App'x 952, 953 (11th Cir. 2008)); *Behrman v. Allstate Life Ins. Co.*, 2005 U.S. Dist. LEXIS 7262, *9-*10 (S.D. Fla. March 23, 2005) (dismissing fraud claims for failure to meet the particularity requirement of Rule 9(b) where plaintiff "simply lumped together all of the Defendants, and has not alleged how any particular . . . [d]efendant defrauded him through any identifiable misstatement or omission made directly or indirectly to him"); *Fellner v. Cameron*, 2011 U.S. Dist. LEXIS 106622, *16-*18 (M.D. Fla. Sept. 20, 2011)

16

(dismissing claims for fraud in the inducement and fraudulent concealment where plaintiff improperly lumped defendants together in allegations); *see also Scott v. Yellon*, 2013 U.S. Dist. LEXIS 105228, *4-*5 (M.D. Fla. July 11, 2013) ("By lumping 'defendants' together, Plaintiff has failed to comply with Fed. R. Civ. P. 8(a) which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief.'").

Plaintiff's vague theory of "alter-ego" or "agency" liability, as between the Defendants, fails to meet the heightened pleading standard under Rule 9(b) and fails to give each Defendant, including Diamond Canada, notice of the allegations being brought against it. The claims against Diamond Canada thus should be dismissed.

**IV.   Conclusion**

WHEREFORE, for the reasons herein stated, Diamond Canada respectfully requests that the Court dismiss this case for lack of subject matter jurisdiction or, alternatively, for failure to state a claim, and award Diamond Canada such further relief as the Court deems just and proper.

Respectfully submitted,

s/ Carl R. Nelson
Carl R. Nelson, FBN 280186
cnelson@fowlerwhite.com
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@fowlerwhite.com
Scott A. Richards, FBN 0072657
scott.richards@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Tel: (813) 228-7411
Fax: (813) 229-8313
Attorneys for Defendant Diamond Aircraft Industries, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served by CM/ECF on February 14, 2014, on all counsel of record on the Service List below:

        s/ Carl R. Nelson
Carl R. Nelson, FBN 280186
cnelson@fowlerwhite.com
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@fowlerwhite.com
Scott A. Richards, FBN 0072657
scott.richards@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Tel: (813) 228-7411
Fax: (813) 229-8313
Attorneys for Defendant Diamond Aircraft Industries, Inc.

## SERVICE LIST

Juan Martinez (FBN 9024)
juan.martinez@gray-robinson.com
GRAY ROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, FL 33131-0014
Tel: (305) 416-6880
Fax: (305) 416-6887

Michael A. Grim
mgrim@bgdlegal.com
BINGHAM GREENEBAUM DOLL, LLP
3500 National City Tower
101 South Fifth Street
Louisville, KY 40202
Tel: (502) 589-4200
Fax: (502) 587-3695
*Admitted pro hac vice*

V. Brandon McGrath
bmcgrath@bgdlegal.com
BINGHAM GREENEBAUM DOLL LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202
Tel: (513) 455-7643
Fax: (513) 455-8500
*Admitted pro hac vice*

Attorneys for Plaintiff Aircraft Guaranty Corporation,
Trustee of Continent Aircraft Trust 1087