**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:11-61663-CIV MORENO**
**ELECTRONICALLY FILED**

**AIRCRAFT GUARANTY CORPORATION,**
**TRUSTEE OF CONTINENT AIRCRAFT TRUST 1087**

 **Plaintiff,**

**v.**

**DIAMOND AIRCRAFT INDUSTRIES, INC., ET AL.**

 **Defendants.**
_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DIAMOND**
**AIRCRAFT INDUSTRIES, GMBH'S MOTION TO DISMISS**

Juan Martinez (FBN 9024)
GRAYROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131-0014
Telephone: 305-416-6880
Facsimile: 305-416-6887
E-mail: juan.martinez@gray-robinson.com
COUNSEL FOR PLAINTIFF

Michael A. Grim (*admitted pro hac vice*)  V. Brandon McGrath (*admitted pro hac vice*)
BINGHAM GREENEBAUM DOLL LLP  BINGHAM GREENEBAUM DOLL LLP
3500 National City Tower      255 East Fifth Street, Suite 2350
101 S. Fifth Street        First Financial Center
Louisville, Kentucky 40202     Cincinnati, Ohio 45202
Telephone: 502.587.3696     Telephone: 513.455.7641
Facsimile:  502.587.2235      Facsimile: 513.762.7941
E-mail: mgrim@bgdlegal.com     E-mail: bmcgrath@bgdlegal.com

1

## I.   <u>INTRODUCTION</u>

<u>First</u>, Defendant Diamond Aircraft Industries, GmbH ("Defendant" or "Diamond Austria") is subject to both general and specific personal jurisdiction in Florida because Diamond Austria has purposefully availed itself of the benefit of Florida law for years. <u>Second</u>, there is subject matter jurisdiction in this case because Plaintiff Aircraft Guaranty Corporation ("AGC"), the Trustee of Continent Aircraft Trust 1087, is the proper plaintiff in this case and the parties are thus diverse. <u>Third</u>, AGC's claims are timely and relate back to the original complaint filed in 2010 because the Defendant was on notice of this lawsuit and should have known it was a proper party. <u>Fourth</u>, AGC's Second Amended Complaint with Jury Demand (Doc. 62, "Complaint") properly states claims for fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment because the Complaint identifies the who, what, when, where, and how of the Defendant's fraudulent and negligent activities and puts the Defendant on notice of its tortious conduct.  Therefore, Diamond Austria's Motion to Dismiss for Lack of Subject Matter Jurisdiction, for Lack of Personal Jurisdiction, or, in the Alternative, for Failure to State a Claim (Doc. 97, "Defendant's Motion") should be denied.

## II.   <u>ARGUMENT</u>

### A.    **Diamond Austria is Subject to Personal Jurisdiction in Florida**

Diamond Austria is subject to both general and specific personal jurisdiction in Florida under Florida's long arm statute, Fla. Stat. § 48.193. Notwithstanding Christian Dries' self-serving Declaration (Doc. 99-1), Diamond Austria, along with Mr. Dries, have engaged in substantial and continuous activity in Florida for more than 16 years.

To determine whether personal jurisdiction over Diamond Austria is proper, the Court must apply a two-step process:

First, the Court must determine whether the defendant's activities satisfy the Florida long-arm statute. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citations omitted). The reach of the Florida long-arm statute is a matter of Florida law, thus the Court must construe the statute as the Florida Supreme Court would. *See Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 627 (11th Cir. 1996). "The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: specific and general jurisdiction." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). "Specific jurisdiction refers to 'jurisdiction over causes of action arising from or related to a defendant's actions within the forum.'" *Id.* (citations omitted). General jurisdiction refers to the exercise of jurisdiction over a defendant based on the defendant's contacts with the forum state that are unrelated to the cause of action. *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

Second, the Court must determine if the exercise of jurisdiction over Diamond Austria comports with the due process requirements of the Fourteenth Amendment. *Id.* Due process is satisfied when the defendant, here Diamond Austria, has the appropriate "minimum contacts" with Florida such that the exercise of jurisdiction will not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310 (U.S. 1945). This ensures Diamond Austria has "fair warning" that it may be subject to suit in the state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). "Minimum contacts" are met where "the defendant's contacts with the forum proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990) (quoting *Burger King*, 471 U.S. at 475). Or, jurisdiction is proper where a defendant "purposefully avails itself of the privilege of conducting activities within the forum

3

State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*,

131 S. Ct. 2780, 2785 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

      In sum, the "question is whether a defendant has followed a course of conduct directed at

the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign

has the power to subject the defendant to judgment concerning that conduct." *J. McIntyre*

*Mach., Ltd*., 131 S. Ct. at 2789. The Supreme Court recently held that a Court can exercise

general jurisdiction where a defendant's "affiliations with the State are so 'continuous and

systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134

S. Ct. 746 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846,

2851 (2011)).

      Where the defendant has the requisite "minimum contacts," the Court should then

determine whether the exercise of jurisdiction comports with "traditional notions of fair play and

substantial justice." *Madara*, 916 F.2d at 1516.  The Court must consider the defendant's

contacts with the forum in light of the following factors: i) the burden on the defendant in

defending the lawsuit; ii) the forum state's interest in adjudicating the dispute; iii) the plaintiff's

interest in obtaining convenient and effective relief; iv) the interstate judicial system's interest in

obtaining the efficient resolution of controversies; and v) the shared interest of the states in

furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

      In this case, the Court may exercise either general or specific personal jurisdiction over

Diamond Austria.

          **1.**     **There is General Personal Jurisdiction Over Diamond Austria in**
                    **Florida.**

      General jurisdiction under the Florida long-arm statute is proper because Diamond

Austria is "engaged in *substantial and not isolated activity* within this state." Fla. Stat. §

48.193(2) (emphasis added).  Florida construes "*substantial and not isolated activity*" to be analogous to the "continuous and systematic" contacts standard.  *Woods v. Nova Cos. Belize Ltd.,* 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999).  Florida courts hold, "the substantial connection between a defendant and the forum state must come about by an action of the defendant purposefully directed toward the forum state."  *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1229 (M.D. Fla. 2000) (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 108-09 (1987)).  Moreover, if the Court is satisfied that Diamond Austria's contacts satisfy Fla. Stat. § 48.193(2), then the "minimum contacts" test is satisfied, and the Court may exercise personal jurisdiction over Diamond Austria without engaging in a due process analysis.  *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citing *Woods*, 739 So. 2d at 620).

Diamond Austria's contacts with Florida "render [it] essentially at home" in Florida such that the exercise general personal jurisdiction is proper. *Goodyear*, 131 S. Ct. at 2851. For nearly two decades, Diamond Austria has maintained pervasive and purposeful contact with Florida to market and sell its planes there:

### Diamond Austria's Relationship with Florida

1. Diamond Austria has manufactured the DA42 in Austria since its inception. (Compl. ¶ 27).[1] The DA42s then were distributed directly to consumers through a related holding company, *e.g.*, Diamond USA, or through a third party distributor such as Premier.  (*Id.*).

2. As early as 1998, Christian Dries, Diamond Austria's CEO, established a place of business in Florida for Diamond USA to facilitate a market for Diamond Austria's products (*See* Business Filings of Diamond USA, attached at **Exhibit A**).[2]

---

[1] For a very short period of time, Diamond Austria sent the DA42 to Canada in a kit for final assembly.

3. Dries and Peter Maurer, President of Diamond Canada and Diamond USA, came to Florida for various trade shows throughout the last decade, including Sun 'n Fun in Lakeland, Florida.  The Diamond defendants have sponsored Sun'n Fun for more than a decade.  While attending these events, Christian Dries and Peter Maurer stood side by side with other Diamond representatives, dressed in identical clothing, all holding themselves out as "Diamond" representatives.  (Compl. ¶ 14).  Further, Diamond Austria and its representatives set-up static displays, conducted demonstrations and took orders for new products.  (*Id.* ¶ 13; *see also* Maurer Article, attached at **Exhibit B**).

4. From 2002-2014, Diamond Austria's products have been on display in Lakeland, Florida to build a market in Florida.

5. In 2001, Christian Dries attended the Sun 'n Fun trade show in Florida and accepted the type certificate from the Federal Aviation Administration ("FAA") for Diamond Austria's DA40 aircraft.[3]  (*Id.* ¶ 15; *see Sun 'N Fun 2001: Hot Fun in the Sunshine* AVweb, dated April 9, 2001, at p. 5, attached as **Exhibit C**).

6. Diamond Austria owns the type certificate issued by the FAA for the manufacture of the DA42 in the United States.  (*Id.* ¶ 26; *see also* Type Certificate of Diamond Austria, attached as **Exhibit D**).

7. In the two Distributor Agreements between Diamond USA and Premier, Diamond USA represents in the Preamble that it is the exclusive distributor in the United States of Diamond Austria's products (Compl. ¶ 21). The contract also mandates that Premier must

---

[2] Although this business filing was for Diamond USA, the clear purpose of establishing the entity's presence in Florida was to facilitate the sale of Diamond Austria's products to Florida consumers.

[3] The single engine variant of the DA42.

provide office space to Diamond Austria personnel, making Christian Dries' assertion that Diamond Austria has no contact with or control over Premier misplaced (*Id.*).

8. In order to expand its presence in Florida, Diamond Austria designated the first ever Diamond Brilliance Flight Center in Naples, Florida in 2006.  (*Id.* ¶ 16; *see also Diamond Sets New Standard: 1st 'Diamond Brilliance' Fit Center Opens*, Aero News Network, June 24, 2006, attached as **Exhibit E**).

9. Christian Dries, as CEO and owner of Diamond Austria, signed an agreement in 2013 with Embry-Riddle Aeronautical University, whereby Diamond Austria plans to expand its presence at Daytona Beach.  (*Id.* ¶ 17; *see also* Press Release, *Embry-Riddle Inks Deal to Bring Internationally Renowned Aircraft Manufacturer to Daytona Beach* (June 18, 2013), attached as **Exhibit F**; 2013 Embry-Riddle Presidential Report ("Presidential Report,"  attached as **Exhibit G**). Although Diamond's Motion and Christian Dries' Declaration attempt to paint the relationship between Diamond Austria and Embry-Riddle as nothing more than a "Memorandum of Understanding" with vague plans for the future, the President's Report and Press Release show otherwise. The President's Report shows that Diamond Austria characterizes the agreement as a "partnership" and states that "[a]s part of the agreement, Diamond will expand its current international research and development program and other initiatives working with Embry-Riddle students, staff and faculty from the university's engineering and aviation colleges as well as its Eagle Flight Research Center." These activities are to take place at Embry-Riddle's Daytona Beach campus, and a photo next to the text depicts Diamond's logo, indicating its position as a tenant on the campus (*See* Presidential Report, p. 24).

10. In order to develop a maintenance and support network for Diamond aircraft, Diamond Austria, along with Diamond Canada, designated several service centers in Florida.

(Compl. ¶ 22).  To date, there are four authorized service centers, located throughout the state in Naples, Daytona Beach, Fort Lauderdale, and St. Augustine.  (*Id.*).

11. As further evidence of its Florida activities, Diamond Austria sells aircraft direct to Florida consumers through Diamond USA, which is simply a conduit for Diamond Austria (*See* various aircraft bills of sale, attached at **Exhibit H**).

Clearly, Diamond Austria has systematically conducted business in Florida, as required for a finding of general jurisdiction.  Diamond Austria's contacts with Florida reach far beyond "mere purchases" or "isolated business contacts."  Since 1998, Diamond Austria has targeted the Florida market for the purpose of selling its products in Florida.  Diamond's substantial connections to Florida have arisen from its own purposeful actions taken to infiltrate the Florida market and appeal to Florida consumers.

Diamond Austria representatives, such as Christian Dries, have been conducting business and operating out of Florida since 1998.  (*Id.*  ¶¶ 12, 14; *see also* Exhibit A).  The foundations of due process lie in considerations of fairness, and there can be no doubt that exercising personal jurisdiction over Diamond Austria is fair.  Diamond Austria has reaped the benefits and protections of Florida law by selling and distributing its products in the state.  Diamond Austria's contacts with Florida meet the jurisdictional requirements of the long-arm statute, and jurisdiction over Diamond Austria similarly complies with the due process requirements of the Fourteenth Amendment.  *Id.*

> ## 2.    Diamond Austria's Relationship with Diamond USA Allows for the Exercise of Personal Jurisdiction in Florida Over Diamond Austria.

Where a corporate entity acts as a mere alter-ego of an affiliated corporation, jurisdiction over the affiliated corporation under the Florida long-arm statute based on the contacts the alter-ego has with the forum state is proper. *Verizon Trademark Servs., LLC v. The Producers, Inc.*,

810 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011).  The Florida long-arm statute also confers

jurisdiction based on the activities of an agent or affiliated corporation.  *Meier,* 288 F.3d at 1273.

Under Florida law, Courts will pierce the corporate veil if the corporation "is a mere

device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of

another corporation or individual owning all or most of its stock, or where the purpose is to

evade some statute or to accomplish some fraud or illegal purpose."  *Aztec Motel, Inc. v.*

*Faircloth*, 251 So. 2d 849, 852 (Fla. 1971).  Further, "[i]f the subsidiary is merely an agent

through which the parent company conducts business in a particular jurisdiction or its separate

corporate status is formal only and without any semblance of individual identity, then the

subsidiary's business will be viewed as that of the parent and the latter will be said to be doing

business in the jurisdiction through the subsidiary for purposes of asserting personal

jurisdiction."  *Meier*, 288 F.3d at 1272.

Where the subsidiary is created to serve the defendant parent, the subsidiary will be

deemed an agent of the foreign parent corporation and jurisdiction over the parent will be proper.

*See id*.  The Eleventh Circuit has made clear that the agency theory for jurisdiction was not

limited to the parent-subsidiary relationship.  *See id*.  "Personal jurisdiction over affiliated

parties, whether a parent or another related subsidiary, is warranted when the resident

corporation acts on behalf of those foreign affiliates."  *Id*. at 1273.

For example, a sufficient agency relationship existed where a domestic subsidiary acted

as an exclusive "booking agent" for the foreign corporation.  *Universal Caribbean Establishment*

*v. Bard*, 543 So. 2d 447, 448 (Fla. Dist. Ct. App. 1989).  Diamond USA is the functional

equivalent of a booking agent for Diamond Austria.  Diamond USA operates solely for the

benefit of Diamond Austria and Diamond Canada, and exists only to facilitate the sale of

Diamond Austria's and Diamond Canada's products.  (Compl.¶ 8).  Diamond USA has no independence; it has no business purpose apart from selling Diamond Austria's and Diamond Canada's products.  Diamond USA was directed by Christian Dries, and all of Diamond USA's directives came from Diamond Austria.  In fact, at all relevant times, Christian Dries operated as the CEO for all three Diamond entities and directed and controlled the actions of Diamond Canada and Diamond USA.  (*Id*. ¶¶ 6-7). Now, Mr. Dries wants to engage in arbitrary line-drawing amongst the corporate instrumentalities he uses to exploit the Florida market.

Moreover, Diamond Austria uses Diamond USA as a shield to protect Diamond Austria from any liability arising from its products sold to American purchasers.  Diamond USA is a shell company with no assets and no employees and would be unable to satisfy any judgment against it—which is by design  (*Id*. ¶ 8).  Without a doubt, Diamond USA "is a mere device or sham to accomplish some ulterior purpose," and it existed to "accomplish some fraud or illegal purpose" by purporting to limit purchasers' ability to bring legal claims against Diamond Austria.

At all relevant times, Diamond USA was the alter-ego and/or agent of Diamond Austria. Diamond USA's contacts with Florida therefore should be imputed to Diamond Austria, making the exercise of personal jurisdiction undoubtedly proper.

### 3.    There is Specific Personal Jurisdiction Over Diamond Austria In Florida

Under the Florida long-arm statute, a court may exercise specific personal jurisdiction over a nonresident if the defendant, personally or through an agent: i) operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agency in this state; ii) commits a tortious act within Florida; or ii) causes injury to persons or property within Florida arising out of an act or omission by the defendant outside this state, if, at the time

of injury, either – a) the defendant was engaged in solicitation activities in Florida; or b) products, materials or things processed, serviced or manufactured by the defendant were used or consumed within the state in the ordinary course of commerce, trade or use.  *See* Fla. Stat. Ann. § 48.193(1)(b), (f).  Diamond Austria's actions meet all the prongs of this statute.

Diamond Austria was "operating, conducting, engaging in or carrying on a business," because its activities "collectively [ ] show a general course of business activity in the State for pecuniary benefit."  *Sculptchair*, 94 F.3d at 628.   Also, Diamond Austria need not have a physical presence in Florida "to commit a tortious act within Florida" so long as the tort produces an injury in Florida.  *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).  For instance, allegations arising from communications made by the tortfeasor, even if made outside the jurisdiction, will be sufficient if the cause of action arises from those communications.  *Id.* Diamond Austria's contacts with Florida satisfy the Florida long-arm statute in several ways.

First, Diamond Austria, through its agent Diamond USA, operated and conducted business in Florida.  As described above, Diamond USA engaged in the business of selling Diamond Austria's products in Florida for more than a decade, and the sales generated from the efforts created significant financial benefit to Diamond Austria.

Second, Diamond Austria committed a tortious act in Florida.  The acts and omissions arising in Austria and communicated to Diamond Canada, Diamond USA, and its agents in Florida, proximately caused harm to AGC.

Finally, Diamond Austria caused injury to AGC within Florida by its acts or omissions related to the DA42 it manufactured and ultimately sold in Florida.  *See* Fla. Stat. Ann. § 48.193(f).

Asserting personal jurisdiction over Diamond Austria does not offend due process

because Diamond Austria had significant contacts with Florida over the last decade, and those contacts with Florida directly related to the claims asserted by Plaintiff.  Diamond Austria's contacts with Florida gave rise to the cause of action.  Diamond Austria negotiated the warranties at issue and manufactured the DA42.  Diamond Austria controlled every major decision made by Diamond Canada and/or Diamond USA and its acts and omissions caused AGC harm. Diamond Austria also purposefully availed itself of the benefits of the forum by selling its products to Florida consumers.  Diamond Austria, through its agents, transacted with numerous Florida citizens, contracting not only for the sale of its products but to warrant them as well.  Diamond Austria cannot avoid the laws of this state by hiding behind its agents. Diamond Austria should have reasonably anticipated defending itself against lawsuits in Florida Courts.

As for the balance of these contacts with the traditional notions of fair play and substantial justice, the exercise of jurisdiction over Diamond Austria is eminently fair.  The burden on Diamond Austria is minimal because the same officers and directors defending the litigation on behalf of Diamond Canada will defend Diamond Austria in this action.  During all relevant times, the decisions for Diamond Austria, Diamond Canada, and Diamond USA were made by Christian Dries, including his decision to remove himself as an officer of both Diamond Canada and Diamond USA after the commencement of the DA42 litigation.

Finally, Florida has a significant interest in adjudicating this case because the tort occurred in Florida and injured a Florida consumer.  Moreover, as described above, Florida is the most convenient, efficient and fair forum for this litigation.  If this Court does not exercise jurisdiction over Diamond Austria, there is no other forum in which AGC can seek a remedy.  AGC will be left without redress while Diamond Austria reaps the benefits of a corporate structure designed to shield it from all liability.

For these reasons, this Court may exercise specific jurisdiction over Diamond Austria without offending the requirements of due process.

**B.     AGC is the Proper Plaintiff and Diversity Jurisdiction Remains Intact**

According to federal and Florida law and to this Court, AGC is the proper plaintiff. In its Order Granting in Part Motion to Dismiss, dated May 23, 2013 (Doc. 39, "Order"), this Court held AGC, as trustee of the involved trust, was the proper plaintiff in this case and granted leave to amend the complaint. Diamond Aircraft Industries, Inc. ("Diamond Canada") also previously argued that the trustee was the appropriate plaintiff. (Defendant's Reply in Support of Its Motion to Dismiss for Failure to State a Claim and Incorporated Memorandum of Law (Doc. 32)). Plaintiff has fully fleshed out the reasons why AGC is the proper plaintiff in Plaintiff's Memorandum in Opposition to Defendant Diamond Aircraft Sales U.S.A. Inc.'s Motion to Dismiss (Doc. 88), and incorporates the positions stated therein.

Furthermore, and as Diamond Canada argued and this Court previously held, both Federal Rule of Civil Procedure 17 and Florida Statute § 736.0816(23) give a trustee the right to sue on behalf of a trust and a trust's beneficiary. According to the Supreme Court, "trustees of an express trust are entitled to bring diversity actions in their own names and *upon the basis of their own citizenship*." *Navarro Savings Assn. v. Lee*, 446 U.S. 458, 462 (1980) (emphasis added). The Court reiterated that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464 (citation omitted). AGC has these customary powers both under the controlling Trust Agreement and under Florida law, making it the real party in interest for purposes of diversity jurisdiction under *Navarro*. AGC is a citizen of Wyoming, and as Diamond Austria and Diamond Canada are foreign entities and Diamond USA is a Delaware citizen, diversity jurisdiction remains intact.

**C.     Plaintiff's Second Amended Complaint Is Timely And Relates Back to the Original 2010 Complaint**

Defendant does not dispute that Plaintiff filed its original action within the applicable statute of limitations, Fla. Stat. § 95.11.[4] (Defendant's Motion at p. 14).   Plaintiff's claims against Diamond Austria relate back to the original complaint because Diamond Austria knew or should have known it was a proper party to this litigation. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

Civil Rule 15(c)(1)(C) applies to AGC's claims.  In this case, Civil Rule 15(c)(1)(C) is satisfied because (1) the claims asserted against Diamond Austria concern the claims arising out of its actions related to purchase of the DA42; (2) Diamond Austria will not be prejudiced in defending these claims on the merits; and (3) Diamond Austria knew or should have known it was  proper party to this lawsuit.

The Supreme Court has held that the proper inquiry for whether a plaintiff has satisfied Rule 15(c)(1)(C) is what the *defendant knew or should have known* during the time limit for service of the complaint and summons. 560 U.S. 538, 547 (2010). The Court explained that the focus on a defendant's knowledge goes to the heart of the purpose of allowing relation back: to balance justice for plaintiffs with the interests of a defendant who is rightfully entitled to repose. *Id*. at 550. The Court notes that there is a preference in the Federal Rules of Civil Procedure and specifically in Rule 15 for "*resolving disputes on their merits*." *Id*. (emphasis added). Therefore, although "a defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose," such repose would be a "windfall" to a

---

[4] Under Florida law, the four-year statute of limitations period began to run when Plaintiff discovered the fraud or negligence. *Ambrose v. Catholic Soc. Servs.*, 736 So. 2d 146, 149, 150 (Fla. Dist. Ct. App. 1999).  In this case, Plaintiff discovered the engine warranties were void on or about May 26, 2008. Plaintiff filed its original complaint against Diamond Canada on April 9, 2010.

defendant who knew or should have known of a case against him and only escaped suit because of a good-faith mistake on the part of the plaintiff regarding the defendant's true identity. *Id*. Moreover, the Court clearly stated that even if "a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity." *Id*. at 548. The Court explained that a plaintiff may know about a particular party at the outset of litigation, but may misunderstand the party's role in the events that led to the litigation. *Id*. at 550.

Applying *Krupski*, it is clear Diamond Austria knew or should have known it was a proper party to this case when AGC brought its original lawsuit.  Despite Defendant's assertions that AGC knew the corporate structure of the three Diamond defendants because of 2011 deposition testimony given by Peter Maurer, President and C.E.O. of Diamond U.S.A. and Diamond Canada, (Defendant's Motion at p. 15-17), AGC only recently discovered *exactly* how the various Diamond entities are related.  To date, none of the Diamond defendants have ever produced any information outlining the companies' corporate structure. While AGC knew of Diamond Austria's existence in 2011, it did not truly understand what Diamond Austria's potential role in this litigation might be until Peter Maurer's September 27, 2013 deposition. Even then, Mr. Maurer was unable to provide specific information about the corporate structure of the three entities, explaining that much of the companies' corporate structure was beyond the scope of his knowledge (*See generally* Maurer Depo. pp. 16-25).  As soon as it was evident that Diamond Austria was likely a culpable party, AGC sought to add it as a defendant in this case.

The cases cited by Diamond Austria are distinguishable on their facts.  In *Bloom v. Alvereze*, the court held that the plaintiff did not identify how the newly-added defendants were on notice and how they would not be prejudiced, and that "[k]nowledge of the underlying events that establish a claim is not the equivalent to knowledge of the action." 498 Fed. Appx. 867, 873-

74 (11th Cir. 20102).  In this case, Peter Maurer conferred in "daily practical matters" with Diamond Austria's president, Christian Dries (Maurer Depo, p. 17, ¶¶ 14-15 ), making it highly unlikely that this litigation was never discussed between the two. Christian Dries was also the CEO of all three Diamond defendants during the relevant time period.  Thus, Diamond Austria knew of this case and knew or should have known that it was a proper party based on the allegations in the original complaint.

In *Powers v. Graff*, the plaintiff knew the initially-named defendant was under the control of another party, but made a "deliberate choice" not to add the party in control until late in the litigation. 148 F.3d 1223, 1226 (11th Cir. 1998).  The plaintiff had also alleged facts in its original complaint that would have supported a claim against the newly-added defendants. *Id*. Diamond alleges in its Motion that Plaintiff knew of the existence of Diamond USA and Diamond Austria since 2011, but Plaintiff did not know the role the two companies played in this case until Peter Maurer's deposition on September 27, 2013. Plaintiff did not make a "deliberate choice" not to sue Diamond Austria. Contrary to the plaintiff in *Powers*, AGC sued Diamond Austria once it gained information Diamond Austria was involved in the negligent and fraudulent actions.

*Krupski* stands for the proposition that the defendant's knowledge controls whether an amended pleading properly relates back.  If a potential defendant had knowledge of a suit that was not brought against it but for a mistake on the part of the plaintiff, that plaintiff may add that party and those amended pleadings will relate back to the original. Courts in this jurisdiction have noted similar concerns, holding that when a plaintiff seeks to amend a pleading to add a party, "considerations of both prejudice and notice" are introduced. *Cliff v. Payco Gen. Am. Credits, Inc*., 363 F.3d 1113, 1131 (11th Cir. 2004); *see also Steinberg v. Alpha Fifth Group,*

2008 U.S. Dist. LEXIS 255527, *24 (S.D. Fla. 2008). When a defendant is not prejudiced and had notice of the potential case against him, the court will allow relation back and will allow the plaintiff to amend the pleading to add a defendant.

Based on these undisputed facts, Diamond Austria clearly knew or should have known it was a proper party to this lawsuit. Plaintiff had no way to know about Diamond's corporate structure until after discovery got underway. As soon as Plaintiff discovered the roles played by the other corporate entities involved in this case, Plaintiff sought to add them as defendants. As such, Plaintiff's claims against Diamond Austria fall within the statute of limitations.

### D.    Plaintiff's Complaint Meets the Particularity Requirements of Rule 9(b)

The Complaint specifically identifies the factual information required to meet the Fed. R. Civ. P. 9(b) standard to state claims for fraud and misrepresentation.  In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the heightened pleading requirements under Fed. R. Civ. P. 9(b) "must be read in harmony" with Fed. R. Civ. P. 8, which only requires a complaint to "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S 662, 663 (2009).

One of the issues in this case, as explained in the Complaint, is that Diamond USA, Diamond Canada, and Diamond Austria perpetrated a fraud by concealing information about the viability of the TAE life extension warranty.  No one would have purchased a DA-42 with TAE engines without the warranty (Compl. ¶ 62). Plaintiff alleges Christian Dries acted on behalf of all three defendants and, during the relevant time period, was CEO of all three defendants (*Id.* ¶ 7).  Plaintiff also alleges that at all relevant times, all corporate decision-making came from Diamond Austria (*Id.* ¶ 10). Peter Maurer, another key actor in perpetrating the fraud, was President of both Diamond USA and Diamond Canada  (*Id.* ¶ 21). All three defendants committed fraudulent action through Mr. Dries and Mr. Maurer (and others). Indeed, Diamond

Austria used Diamond USA and Diamond Canada to perpetrate fraudulent activities related to the warranty when it used them to market and sell DA-42s in the United States (*Id.* ¶ 9).

Specifically, Mr. Maurer knew TAE was unable to honor the engine warranty and he communicated that to Michael Goldschmidt, the president of Diamond Austria (*Id.* ¶¶ 34-35). Thus, all three Diamond defendants knew the life extension program was a sham. AGC also alleges all three Diamond defendants participated in marketing efforts intended to induce the purchase of a DA-42 (*Id.* ¶¶ 12-14; 20; 27).  Finally, AGC details the specific representations made by the Diamond defendants through their agent, Premier Aircraft Sales, Inc. (*Id.* ¶¶ 67-73). Had all three Diamond defendants not worked in concert to conceal material facts about the TAE life extension warranty, the DA-42 would not have been purchased (*Id.* ¶ 80).

Based on these detailed allegations, Diamond Austria is on notice of the who (Maurer, Dries, Premier), what (representations about TAE and the life extension warranty), when (during the sales process in 2007), where (Florida and over the telephone), and how (concealing Diamond Austria's specific knowledge that TAE was unable to honor the warranty). Consequently, Diamond Austria has sufficient factual information to respond to the Complaint and defend itself in this case.

"[W]hile mere conclusory allegations of fraud will not satisfy Rule 9(b), allegations which provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud are sufficient." *In re Sahlen & Assocs.*, Inc. 773 F. Supp. 342, 352 (S.D. Fla. 1991).  "[T]he degree of specificity required by Rule 9(b) may vary according to the background of the parties and the information available to them at the time of pleading." *Id.*  Mr. Maurer's 2007 e-mail to the president of Diamond Austria shows that Diamond Austria knew or should have known TAE's life extension pro-rated warranty was worthless. (Compl. ¶ 34).

Moreover, Diamond Austria did not disclose this information about TAE's inability to support the warranty before the purchase of the DA-42. (*Id.* ¶ 36).  Plaintiff gained access to this information only after it was allowed to conduct discovery.  Accordingly, it would be substantially unfair to require Plaintiff to provide more detail than it already has since it is evident Diamond Austria possesses information about its fraudulent acts that Plaintiff could not reasonably access.

Importantly, Rule 9(b) does not require Plaintiff to plead every element of the fraud claim with particularity.  *See Brightstar Corp. v. WSA Distrib.*, 2010 U.S. Dist. LEXIS 25759 (S.D. Fla. Mar. 17, 2010).  The particularity requirement applies only to the circumstances constituting fraud. *Id.* citing Fed. R. Civ. P. 9(b). Cases cited by Defendant support this notion. In *Behrman v. Allstate Life Ins. Co*., the plaintiff never identified "the particular statements or omissions that are alleged to be fraudulent, nor has he specified the documents or oral representations in which such statements or omissions were allegedly made." 2005 U.S. Dist. LEXIS 7262 (S.D. Fla. Mar. 23, 2005).  In *Begualg Investment Mgmt. Inc. v. Four Seasons Hotel Ltd*., 2011 U.S. Dist. LEXIS 108720, (S.D. Fla. Sept. 23, 2011), the court held that plaintiff had not properly alleged the "who, what, where, when, and how of the allegedly false statements and…fail[ed] to specify each Defendant's participation in the alleged fraud" when the plaintiff made "vague and conclusory" allegations against *unrelated* defendants. *Id.* at *14-*15. Similarly, in *Fellner v. Cameron*, 2011 U.S. Dist. LEXIS 106622 (M.D. Fla. Sept 20, 2011), the plaintiff was unspecific with regard to unrelated defendants, and failed to allege that any of the defendants were acting in concert or as agents of one another.

Contrary to the complaints in *Begualg*, *Behrman*, and *Fellner*, Plaintiff alleged the specific "who, what, where, where, and how" of the negligent and fraudulent acts and omissions

by Diamond Austria; Plaintiff alleges in detail that all representations made to it were done by and through Diamond Austria's officers, agents, and/or employees. AGC also alleged all three Diamond defendants were under the control of Diamond Austria and there was identity of ownership and management by Mr. Dries. Plaintiff specifically identified the TAE warranty and the failure by Mr. Maurer and Premier employees to disclose TAE's inability to honor the warranty.  These allegations give Diamond Austria specific notice of the fraudulent acts and omissions it committed.  Therefore, AGC's Complaint properly states its fraud and misrepresentation claims as required under Fed. R. Civ. P. 9(b).

## III.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Diamond Austria's Motion to Dismiss.

Respectfully submitted,

/s/ Juan Martinez
Juan Martinez (FBN 9024)
GRAYROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131-0014
Telephone: 305-416-6880
Facsimile: 305-416-6887
E-mail: juan.martinez@gray-robinson.com
COUNSEL FOR PLAINTIFF

Michael A. Grim (*admitted pro hac vice*)
BINGHAM GREENEBAUM DOLL LLP
3500 National City Tower
101 S. Fifth Street
Louisville, Kentucky 40202
Telephone: 502.587.3696
Facsimile:  502.587.2235
E-mail: mgrim@bgdlegal.com

V. Brandon McGrath (*admitted pro hac vice*)
BINGHAM GREENEBAUM DOLL LLP
255 East Fifth Street, Suite 2350
First Financial Center
Cincinnati, Ohio 45202
Telephone: 513.455.7641
Facsimile: 513.762.7941
E-mail: bmcgrath@bgdlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified.

Respectfully submitted,

/s/Juan Martinez
Juan Martinez (FBN 9024)
GRAYROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131-0014
Telephone: 305-416-6880
Facsimile: 305-416-6887
E-mail: juan.martinez@gray-robinson.com
COUNSEL FOR PLAINTIFF

<u>**SERVICE LIST**</u>

**Aircraft Guaranty Corporation, Trustee of Continent Aircraft Trust 1087**
**vs.**
**Diamond Aircraft Industries, Inc. et al.**
**Case No. 0:11-cv-61663 (MORENO)**
**United States District Court, Southern District of Florida**

Benjamine Reid
breid@cfjblaw.com
Carlton Fields Jorden Burt
Miami Tower
100 S.E. Second Street
Miami, Florida 33131-2113
Counsel for Defendant Diamond Aircraft Industries, GmbH

Carl R. Nelson
Cnelson@bipc.com
Ashley Bruce Trehan
atrehan@bipc.com
Buchanan Ingersoll & Rooney/Fowler White Boggs
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Phone: 813-228-7411
Fax:    813-229-8313

Attorneys for Defendants Diamond Aircraft Industries, Inc. & Diamond Aircraft Sales USA, Inc.

[Service by Notice of Electronic Filing generated by CM/ECF]

15271810_2.docx