# Exhibit I



# NON-DISCLOSURE AGREEMENT

This Agreement ("Agreement"), effective upon the final signature date below, is by and between Embry-Riddle Aeronautical University, 600 S. Clyde Morris Blvd., Daytona Beach, Florida 32114 ("ERAU"), and Diamond Aircraft Industries GmbH, N.A. Otto-Straße 5, 2700 Wiener Neustadt, Austria ("Diamond") as providers and recipients of certain non-public information (collectively "the parties").

WHEREAS, the parties wish to exchange certain non-public information for a certain designated purpose; and

WHEREAS, the parties are willing to permit each other to review certain non-public information and documents on the terms and conditions stated herein;

NOW THEREFORE, the parties agree as follows:

1. **Purpose.** The parties will provide each other with non-public documents and information which each, in its sole discretion, believes would assist the other to accomplish the following objectives and purposes (the "Purpose"): **Level C Simulator – Control loading, Flight and Ground Reaction Modeling.** Embry-Riddle and Diamond have entered into a contract with Grenzebach to provide a flight simulator. Embry-Riddle is responsible for a model that matches the aerodynamics, control load and ground reaction to flight test data. The flight test data being provided is proprietary to Grenzebach. In addition, Diamond has provided technical models of the engines, propeller and weight and balance of the DA42-IV which is proprietary to Diamond.

2. **Confidential Information.** For purposes of this Agreement, "Confidential Information" means: a) this Agreement; b) the fact that any information is exchanged pursuant to this Agreement; and c) all non-public information (whether in writing or retained as mental impressions) which one party discloses to the other, directly or indirectly, in writing, orally, or by the recipient's visual inspection or mental impression. Confidential Information shall include, but not be limited to, information regarding: the Purpose; research and development; operational costs and processes; pricing, cost or profit factors; quality programs; annual and long-range business plans; marketing plans and methods; customers or suppliers; contracts and bids; personnel; products; services; software source code or object code; or financial data. Confidential Information shall not include disclosure, internally or externally, of the fact a research agreement or other contractual relationship exists between the parties, or essential facts related to that relationship, such as names of the parties, title of the project, funding or payment amounts, and a brief description of the work.

3. **Limitations on Use.** The parties hereby acknowledge and agree that all Confidential Information which each receives (as a "Recipient" hereunder) is the exclusive property of the party which provides it, and is proprietary and confidential data of the party which provides it. The Confidential Information shall be kept confidential and shall be used by Recipient only for the Purpose set forth above, and Recipient may not use such Confidential



Information for any other purposes or objectives. Further, Recipient: (a) may not disseminate said Confidential Information except to those directors, officers, employees, representatives and attorneys of Recipient who need to review such information and documents for the objectives and purposes set forth above and shall advise such directors, officers, employees, representatives and attorneys of the confidential nature of such information; (b) may not disclose said documents or information to any persons not employed by Recipient without the prior written consent of the party which provides it; and (c) will return to the party which provides it or destroy (and confirm such destruction by certification) all copies of such Confidential Information upon termination of this Agreement, or upon request by the party which provides it at any time. Recipient shall be responsible for any breach of this Agreement by its directors, officers, employees, representatives and attorneys (whether or not such breach is pursuant to the authority of any such directors, officers, employees, representatives or attorneys) and Recipient agrees, at its sole expense, to take all reasonable measures (including but not limited to court proceedings) to restrain its directors, officers, employees, representatives and attorneys from prohibited or unauthorized disclosure or use of the Confidential Information.

4. <u>Exclusions</u>. Recipient shall have no obligation under this Agreement as to Confidential Information which: (a) is known to Recipient at the time of disclosure; (b) is independently developed by Recipient without reference to or use of the Confidential Information; (c) becomes known to Recipient, through no wrongful act of Recipient, from another source without confidentiality restriction on subsequent disclosure or use; (d) is or becomes part of the public domain through no wrongful act of Recipient; or (e) is disclosed pursuant to any judicial or governmental request or order; provided that Recipient takes reasonable steps to give the party which provided the Confidential Information sufficient prior written notice so that it may seek (with the reasonable cooperation of Recipient) a protective order to contest or limit the scope of such request or order as much as possible (however, the obligation to otherwise keep the Confidential Information confidential from other parties shall not be abrogated by such request or order). In the case of any disclosure permitted by clause (a), (b) or (c) of this Section 4, Recipient shall promptly, prior to disclosure of Confidential Information, furnish the party which provided it with a certificate stating the facts necessary to determine compliance with this Section.

5. <u>Period of Disclosure</u>. This Agreement is effective on the last date written below and will continue in full force and effect for a period of two (2) years thereafter; provided, it may be terminated by either party on not less than 30 days advance written notice. The confidentiality obligation with respect to Confidential Information received by Recipient shall remain in effect until the later of five (5) years from the date of this Agreement or five (5) years from the date of receipt of the information; provided, however, that the confidentiality obligation with respect to Confidential Information constituting trade secrets, as defined by applicable law, received by Recipient, shall remain in effect for so long as applicable law allows. Upon written request of a party, Recipient will cease all use of and return or destroy all Confidential Information.

6. <u>No Warranties</u>. The parties agree and acknowledge that each makes no warranties, representations, or claims with respect to the Confidential Information they provide.



7. <u>Notices</u>. Unless otherwise specified, all notices or other communications required hereunder must be in writing and will be deemed to have been duly served if hand delivered, or if sent by first class registered mail, postage prepaid. Notices shall be deemed received upon actual receipt, in the case of hand delivery, or five business days after dispatch, in the case of registered-mail delivery. Notices to the parties shall be sent to their respective addresses listed on the signature page of this Agreement. Addresses may be modified by either party upon ten (10) days advance written notice.

8. <u>Governing Law</u>. The laws of the State of Florida will govern this Agreement and the validity, construction, interpretation, and effect of this Agreement, without regard to Florida's principles of conflicts of laws.

9. <u>Binding Effect.</u> This Agreement shall be binding upon the parties and their successors and permitted assigns.

10. <u>Assignment</u>. Neither party may assign or transfer or attempt to assign or transfer this Agreement to any person or entity without the prior written consent of the other party. Any attempted assignment without such consent shall be null and void.

11. <u>Remedies</u>. The parties agree that money damages would not be a sufficient remedy for any breach of this Agreement by Recipient or any of its directors, officers, employees, representatives and attorneys, and that the parties shall be entitled to equitable relief, including injunction and specific performance, as a remedy for such breach. Such equitable remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement by the Recipient and its directors, officers, employees, representatives and attorneys, but shall be in addition to all other remedies available at law or at equity. No failure or delay by either party in exercising any right hereunder will operate as a waiver of such right nor will any single or partial exercise of such right preclude any other or further exercise of any right hereunder. No waiver of any right hereunder shall be effective unless evidenced by a writing signed by the party waiving such right.

12. <u>Captions.</u> The captions and titles herein are for convenience only and are not intended to define or aid interpretation of the subject matter of the text.

13. <u>Counterparts.</u> This Agreement may be executed in reciprocal counterparts and if so executed in counterparts will be enforceable and effective upon the exchange of executed counterparts.

14. <u>Export Regulations Compliance.</u> Products, services, and/or technical data which may be provided or disclosed in performance of this Agreement may be subject to U.S. Government approvals, clearance, regulations, and export/import and re-export requirements, including the US Department of State International Traffic In Arms Regulations ( Title 22, CFR Parts 120-130), the U.S. Department of Commerce Export Administration Regulations (Title 15, CFR 730-774), and any other U.S. Government regulation applicable to the export/import, re-export, or disclosure of such controlled technical data (or the products thereof) to Foreign Nationals. The parties acknowledge and agree that they will comply with all such U.S.

regulations regarding export/import, re-export, or disclosure and will obtain any and all such registrations, licenses, agreements, approvals and/or certifications, as may be required by regulations for the export of the products, services, and/or technical data connected with this Agreement. The parties agree to cooperate fully with one another and any government agency having proper jurisdiction over the relevant subject-matter by providing information, documents, or other reasonable assistance in accordance with the requirements of the ITAR, the export laws and regulations, or any applicable statute, regulation, or rule of any government entity, including but not limited to executing any document required by law or required to give effect to any term of this Agreement. Furthermore, the parties agree that if they receive technical information subject to U.S. Export controls, they will provide written assurances that such information will not be re-exported to those restricted countries listed in Section 379.4 of the Export Administration Regulations or retransferred to other parties who are not authorized to receive the technical information without prior proper authority. Any such re-export or retransfer of controlled technical data may be subject to further U.S. Government approvals.

15.  **No Conflict with US Law.** ERAU is an entity organized under and subject to the laws of the United States of America. If at any time during the performance of this Agreement it shall become apparent that a provision hereof requires ERAU to violate United States law, that provision shall, without remedy, be null and void and of no effect whatsoever, and the remainder of the Agreement shall continue in full force and effect. Alternatively, this Agreement may be terminated by either party immediately without cost, penalty, or expense. The parties expressly agree that this **"No Conflict with US Law"** clause shall supersede any other agreement or covenant in this Agreement, including but not limited to any choice of law provisions.

16.  **Scanned or Imaged Signatures.** The parties agree that either or both may store copies of this Agreement using scanned, imaged, or other digital media, and that original signatures captured thereby shall be acceptable and admissible in the same manner as the original signatures.

17.  **Entire Agreement.** The terms and conditions set forth in this Agreement constitute the entire understanding between the parties, superseding any communications or previous agreements with respect to the subject matter hereof.

Remainder of Page to remain Blank
Signatures Page 5



WHEREFORE, the parties have caused this Agreement to be executed by their undersigned, duly authorized representatives.

Embry-Riddle Aeronautical University

BY: _____

NAME: Richard P. Anderson

TITLE: Director of EFRC, ERAU

DATE: 5/29/2013

BY: _____

NAME: Alison M. Sylvester

TITLE: Executive Director of Grants and Contracts Administration

DATE: 5/29/13

Diamond Aircraft Industries GmbH

BY: _____

NAME: [ CHRISTIAN DRIES ]

TITLE: [ CEO ]

DATE: MAY 17, 2013