

FILED by _____ D.C.

APR 3 0 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO:  11-61663-CIV-MORENO

AIRCRAFT GUARANTY CORPORATION,
TRUSTEE OF CONTINENT AIRCRAFT
TRUST 1087,

      Plaintiff,

v.

DIAMOND AIRCRAFT INDUSTRIES, INC.;
DIAMOND AIRCRAFT INDUSTRIES, GMBH;
and DIAMOND AIRCRAFT SALES U.S.A., INC.,

      Defendants.

_____/

## EMERGENCY MOTION

## DEFENDANT DIAMOND AIRCRAFT INDUSTRIES, GMBH'S EMERGENCY MOTION FOR PROTECTIVE ORDER AS TO 30(b)(6) DEPOSITION AND UNTIMELY WRITTEN DISCOVERY AND INCORPORATED MEMORANDUM OF LAW

29822146.1

Pursuant to Rule 26(c) and through its undersigned counsel, Defendant Diamond Aircraft Industries, GmbH ("Diamond Austria") respectfully moves the Court for a protective order regarding Plaintiff's Notice to Take Deposition Under Fed. R. Civ. P. 30(b)(6) and Plaintiff's untimely written discovery.  Pursuant to Local Rule 26.1(h), this Emergency Motion is being filed within thirty (30) days of the occurrence of grounds for this motion.

This Motion is brought on an Emergency basis because Plaintiff has **unilaterally** noticed Diamond Austria's 30(b)(6) deposition to take place on **Thursday, May 8, 2014**, a date on which Diamond Austria's corporate representative and Diamond Austria's undersigned counsel are both unavailable.  The undersigned counsel provided Plaintiff with alternative dates to depose Diamond Austria's corporate representative in Austria, but Plaintiff refused to accept any of these alternative dates.

Proceeding with this discovery will overly burden and prejudice Diamond Austria insofar as it extends beyond jurisdictional issues.  Further, the Notice to Take Deposition improperly seeks to force Diamond Austria's representative to travel from Austria to Miami, Florida. Finally, the written discovery is untimely because the deadline to respond falls after the May 22, 2014, discovery cutoff in this case.

## INTRODUCTION

Diamond Austria timely filed its Motion to Dismiss on April 3, 2014, asserting *inter alia* lack of subject matter jurisdiction and lack of personal jurisdiction.  (Doc. 97 at 2-13.)  In connection with its Motion to Dismiss, Diamond Austria contemporaneously filed a Motion to Stay as to non-jurisdictional discovery. (*See* Doc. 98.)  The Motion to Stay does not assert that there is a *per se* requirement to stay discovery during the pendency of any motion to dismiss. Instead, the Motion to Stay emphasizes the two unique, significant, threshold issues presented in its Motion to Dismiss: subject matter and personal jurisdiction.

Plaintiff filed its response to Diamond Austria's motions on April 21, 2014, and thus, under the deadlines set by the Local Rules, Diamond Austria's motions will be fully briefed on May 1, 2014. Disregarding the threshold jurisdictional issues currently pending before the Court, Plaintiff recently served Diamond Austria with a notice to take the deposition of Diamond Austria's 30(b)(6) representative (Exhibit A) as well as a request for production, a request for admission, and interrogatories (Exhibit B).

**ARGUMENT**

**I.     Jurisdictional Issues Are Threshold Issues.**

Diamond Austria should not be forced to engage in non-jurisdictional discovery prior to a determination of subject matter jurisdiction over this case and personal jurisdiction over Diamond Austria. Both of these jurisdictional questions are threshold issues that should be decided before Diamond Austria participates in any non-jurisdictional discovery.

Subject Matter Jurisdiction: "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Guzman-Munoz v. United States AG*, 733 F.3d 1311, 1313 (11th Cir. 2013) (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)); *see also Preston v. Capital One Auto Fin., Inc.*, 2010 U.S. Dist. LEXIS 50874, *1, *11 (D. Colo. May 19, 2010) (recommending that the case be remanded to state court for lack of federal subject matter jurisdiction, and granting motion to stay; "[a]lthough stays are generally disfavored, neither the Court's nor the parties' time would be served by engaging in discovery during the pendency of [the] Recommendation to remand the case to state court"). The real party to this controversy on behalf of the Plaintiff is Mr. Karsten Damgaard-Iversen, a Danish citizen. Therefore, the instant suit is between a Danish citizen on the one hand and Canadian and Austrian corporations on the other. Thus, diversity jurisdiction is lacking.

Personal Jurisdiction:  "A court without personal jurisdiction is powerless to take further action." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("[P]ersonal jurisdiction is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.") (citations and internal quotation marks omitted). Diamond Austria is not "essentially at home" in Florida and is in no way "comparable to a domestic enterprise" in this state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 (2014). Thus, general jurisdiction is lacking.  Further, this case does not arise out of any purported contacts between Diamond Austria and Florida, thus precluding specific jurisdiction.

To be sure, Diamond Austria has not argued that this Court must, *per se*, stay all discovery pending a ruling on Diamond Austria's (or any) motion to dismiss.  *See, e.g.*, *Bocciolone v. Solowsky*, 2008 U.S. Dist. LEXIS 59170, *4 (S.D. Fla. July 24, 2008) (observing the district court's "broad discretion in deciding how best to manage the cases before them" and noting the Eleventh Circuit's rejection of "any *per se* requirement to stay discovery pending resolution of a dispositive motion").[1]  In *Bocciolone* the district court denied the defendants' motion to stay where the defendants' motion to dismiss attacked only the sufficiency of the allegations, not jurisdiction, and where the motion to dismiss "could not possibly resolve the entire case . . . ." *Id.* at *6.

Here, in contrast, Diamond Austria has raised significant, threshold questions regarding (1) whether this case may proceed in this court and (2) whether there is personal jurisdiction over Diamond Austria in the State of Florida.  Until these questions are answered, the Court is "powerless" to proceed.  *See Guzman-Munoz*, 733 F.3d at 1313; *Posner*, 178 F.3d at 1214 n.6.

_____

[1] It should be noted that Plaintiff cites *Bocciolone* in its opposition to Diamond Austria's Motion to Stay.  (*See* Doc. 109 at 3-4.)

For this reason, Diamond Austria should not be forced to have its 30(b)(6) representative deposed or to respond to the untimely served written discovery.  Therefore, a protective order should be entered as to this discovery.

## II.      Diamond Austria Will Be Prejudiced If It Is Forced to be Deposed and/or Respond to Written Discovery.

Plaintiff's claims arise out of events that occurred as early as September 2006—that is, **more than seven years ago**.  (*See* 2d Am. Compl., Doc. 62, ¶ 64.)  Plaintiff's claims have been pending for **more than four years**, and this particular case has been pending for almost three.  (*See* Doc. 1, Compl., dated July 27, 2011; *see also Mascaro Aviation, L.L.C., et al. v. Diamond Aircraft Indus., Inc.*, Case No. 0:10-cv-60556-FAM, Doc. 1, Compl., dated Apr. 9, 2010.)  However, Diamond Austria was not added to this case until much later and was not served with process until March 13, 2014.  (*See, e.g.*, Doc. 95.)

Under the current case management deadlines, Diamond Austria has a mere **70 days** from the date of service of process—and a mere **49 days** from the date of filing its motion to dismiss—to complete any necessary discovery in this case.  (*See* Scheduling Order, Doc. 87.)  After waiting until virtually the last minute to add Diamond Austria, Plaintiff now seeks to cram extensive discovery from Diamond Austria into a period of weeks extending beyond the discovery cutoff date.  In contrast, Plaintiff and Diamond Aircraft Industries, Inc. ("Diamond Canada"), the original defendant to this litigation, have had more than four years to prepare their cases.  These facts alone highlight the need for a stay as to non-jurisdictional discovery, and likewise a protective order as to the noticed deposition and written discovery. A & B).

In *Ray v. Spirit Airlines, Inc.*,[2] the district court rejected the defendant's request for a "wholesale stay of all discovery[] until the Court rules upon its [12(b)(6)] motion to dismiss." 2012 U.S. Dist. LEXIS 160948, *4 (S.D. Fla. Nov. 9, 2012). The instant case is distinguishable from *Ray* for at least four independent reasons.

First, as stated above, Diamond Austria's motion to dismiss asserts not only a 12(b)(6) defense but also 12(b)(1) and 12(b)(2) defenses of lack of subject matter and personal jurisdiction, respectively. These are threshold issues that should be decided before proceeding with any further depositions or written discovery as to Diamond Austria. Neither party should have to incur the expense of a deposition (wherever it occurs) as long as jurisdiction is questionable. However, Plaintiff seeks discovery far beyond the jurisdictional issues.

Second, Diamond Austria has not sought a "wholesale stay of all discovery"; rather, it has sought a stay as to non-jurisdictional discovery. And by this instant motion, Diamond Austria seeks a protective order solely as to its 30(b)(6) deposition and written discovery, at least insofar as this discovery is unrelated to jurisdictional issues.

Third, far from "bland generalizations" of burdensomeness and prejudice, Diamond Austria will necessarily experience prejudice in light of (1) the current discovery time frame; (2) the fact that key depositions have already occurred without Diamond Austria's opportunity to participate; and, (3) in particular, the international nature of this case. For Diamond Austria's 30(b)(6) deposition, for example, Diamond Austria will be forced to pay not only for its counsel to prepare for and defend the deposition but, significantly, for its counsel's travel expenses to Austria.

---

[2] Plaintiff cites *Ray* in its opposition to Diamond Austria's Motion to Stay. (Doc. 102 at 2-3).

Fourth, Diamond Austria again emphasizes the impossibly short time frame within which it must conduct discovery.  Unlike the other parties, Diamond Austria has had barely six weeks to even investigate and respond to Plaintiff's claims, let alone consider what information and internal documents it might need.[3]  To produce its corporate representative without having had a chance to meaningfully vet the allegations will significantly and tangibly prejudice Diamond Austria in its defense of this action.

### III.   Diamond Austria Should Not Be Forced to Appear for Deposition in Florida.

The Notice of Deposition (Ex. A) attempts to force Diamond Austria's corporate representative to appear in Miami, Florida.  This is improper.  "[A] **presumption** exists that a non-resident corporate defendant should be deposed in its principal place of business." *Barrocos of Fla., Inc. v. Elmassian*, Case No. 11-cv-22393, 2012 U.S. Dist. LEXIS 65523, *2 (S.D. Fla. May 10, 2012) (emphasis added).  Here, therefore, the presumption is that Diamond Austria's 30(b)(6) deposition should take place in or near Wiener Neustadt, Austria, where Diamond Austria's principal place of business is located.  *See id.*  The *Barrocos* case provides guidance as to the standard for deciding this motion.

As an initial matter, the outcome of *Barrocos* was that the foreign corporate representative should appear in Florida.  *Barrocos* is, however, distinguishable in several important respects.  Prior to entering the May 10, 2012, opinion in *Barrocos*, the court had already ruled that it could exercise personal jurisdiction over the foreign corporate defendant. *See Barrocos*, Case No. 11-cv-22393, Docket No. 81, Order Denying Motion to Dismiss Third-

---

[3] This same point supports the need to stay the entire case.  Under the current case management deadlines, the last day for the parties to timely serve written discovery was Friday, April 18, 2014.  Diamond Austria was not served until March 13, 2014, and timely filed its Motion to Dismiss on April 3, 2014.  Thus, Diamond Austria effectively had fifteen (15) days between the time it filed its Motion to Dismiss through the last day to serve written discovery—certainly not nearly enough time to meaningfully develop areas of inquiry.

Party Complaint for Lack of Personal Jurisdiction (S.D. Fla. May 9, 2012) (finding that there was no personal jurisdiction under the Florida long-arm statute but that personal jurisdiction existed under the federal long-arm statute given the copyright claims asserted by the plaintiff). Here, on the other hand, there is still uncertainty about whether <u>subject matter</u> jurisdiction exists regarding this entire case, let alone whether there is <u>personal</u> jurisdiction over Diamond Austria in Florida.

Further, In *Barrocos*, the court ultimately decided in favor of conducting the Hong Kong corporate representative's deposition within the district; however, the deposing party had <u>offered to pay</u> the travel expenses for the corporate representative to travel from Hong Kong to South Florida. *See id.* at *4. Here, Plaintiff has not tendered such an offer and thus would force Diamond Austria's corporate representative to incur significant expense (not to mention the burden and inconvenience) of traveling from Austria to Miami. Further, the days necessary to travel to and from Florida (ignoring the time to prepare and to attend the deposition) unnecessarily take the deponent away from his place of business and the activity in which he would otherwise be engaged on behalf of his employer.

The location of the deposition is ultimately in the Court's discretion. *See id.* at *3. Factors to be considered include the location of counsel for the parties, the number of corporate representatives to be deposed, and the expense involved in holding the deposition in one place or another. *Id.* The first factor alone weighs against forcing an Austrian citizen to travel to Miami, Florida, to accommodate the Plaintiff (particularly where jurisdiction has not even been determined). Plaintiff's lead attorneys Michael Grim and Brandon McGrath live in Kentucky and Ohio, respectively—not Miami. In fact, Plaintiff does not even reside in or near Miami; Plaintiff is a Danish citizen residing in Nevada. Diamond Austria understands that Mr. Grim,

Mr. McGrath, and/or occasionally one of their firm's associates from its Kentucky office have attended all of the depositions in this case.[4]  The undersigned counsel has been contacted solely by Mr. Grim and Mr. McGrath on the Plaintiff's side regarding this case and, in particular, regarding the deposition of Diamond Austria's corporate representative.

In contrast, Plaintiff's local counsel in Miami, Juan Martinez, has neither attended a single deposition nor communicated with the undersigned counsel about this case.[5]  Diamond Austria has received no indication whatsoever that Mr. Martinez, as opposed to Mr. Grim and/or Mr. McGrath, would be conducting the deposition of Diamond Austria's 30(b)(6) representative. Therefore, the location of Plaintiff's counsel fails to tip the balance in favor of conducting the deposition in Miami.

Given the presumption in favor of Diamond Austria, given the pending jurisdictional issues, and given the significant burden and expense that traveling to Miami for a deposition would impose on Diamond Austria's corporate representative and the company itself, a protective order should be entered preventing Plaintiff from forcing the deposition to occur in Miami, Florida.

**IV.   Plaintiff's Written Discovery to Diamond Austria Was Not Timely Served.**

Diamond Austria further seeks an order protecting it from having to respond to Plaintiff's written discovery (Ex. B), which was served on April 22, 2014.  Under the Federal Rules of Civil

---

[4] The depositions to date in this case have occurred in; Fort Lauderdale, Florida; Tampa, Florida; and London, Ontario, Canada.  In the two open, related cases brought by Plaintiff's counsel (*Twinstar Partners, LLC*, No. 11-cv-61684, and *World Traveling Fools, LLC*, No. 11-cv-61670), depositions have been in additional locations including Phoenix, Arizona and Aurora, Colorado.

[5]  Ironically, the only Miami attorney who would be participating in Diamond Austria's deposition would be the undersigned counsel for Diamond Austria.  However, Diamond Austria would prefer to incur the expense of its own attorney fees for a deposition in Austria as opposed to incurring the expense of its own travel as well as the lost time from work during that travel as noted above.

Procedure, Diamond Austria's responses would be due on May 27, 2014,[6] which falls <u>after</u> the discovery cutoff in this case. Because Plaintiff's written discovery to Diamond Austria was not served "in sufficient time that the response is due on or before the discovery cutoff date," under Local Rule 26.1(f), Diamond Austria seeks an order shielding it from having to respond to Plaintiff's written discovery.[7]

## V.     Conclusion.

WHEREFORE, Diamond Austria respectfully requests that this Court enter a protective order as to the deposition of Diamond Austria's 30(b)(6) representative (*see* Ex. A). Diamond Austria requests this relief on an emergency basis in light of the May 8, 2014, date on which Plaintiff has unilaterally scheduled the deposition to take place. Diamond Austria also, out of an abundance of caution, respectfully requests a protective order as to the untimely written discovery requests served by Plaintiff (*see* Ex. B).

---

[6] *See* Fed. R. Civ. P. 33(b)(2) (30 days to answer interrogatories); 34(b)(2)(A) (30 days to respond to a request to produce documents); 36(a)(3) (30 days to respond to a written request to admit); *see also* Fed. R. Civ. P. 6(d) (adding three (3) days after the period would otherwise expire when service is made via mail and/or by sending through electronic means under Rule 5(b)(2) subsections (C) and (E), respectively); 6(a)(1)(C) (stating that the period of time runs until the "end of the next day that is not a Saturday, Sunday, or legal holiday"); 6(a)(6)(A) (designating Memorial Day as a "legal holiday" as the term is used in the Federal Rules).

[7] The local rules appear to obviate the need for the instant motion as it pertains to the untimeliness of Plaintiff's written discovery. *See, e.g., White v. De La Osa*, 2012 U.S. Dist. LEXIS 10047, *7 (S.D. Fla. Jan. 27, 2012) ("Southern District of Florida Local Rule 26.1(f) provides that: 'Discovery must be completed in accordance with the court-ordered discovery cutoff date. Written discovery requests and subpoenas seeking the production of documents must be served in sufficient time that the response is due on or before the discovery cutoff date. Depositions, including any non-party depositions, must be scheduled to occur on or before the discovery cutoff date. ***Failure by the party seeking discovery to comply with this paragraph obviates the need to*** respond or object to the discovery, appear at the deposition, or ***move for a protective order***.'") (emphasis added). However, out of an abundance of caution and particularly in light of the request for admission, Diamond Austria seeks a protective order from the Court.

Alternatively, at a minimum, Diamond Austria respectfully requests that this Court enter a protective order as to the deposition and written discovery insofar as they pertain to *non-jurisdictional* issues. Should the Court require Diamond Austria's 30(b)(6) representative to be deposed as to *jurisdictional* issues, Diamond Austria further requests that such deposition be permitted to be conducted either in Austria or telephonically or by other remote means.

### <u>Local Rule 7.1(a)(3) and Fed. R. Civ. P. 26(c) Certification</u>

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues. Diamond Austria has been unable to resolve these issues with the Plaintiff.

Respectfully submitted,

Benjamine Reid, FBN 183522
BReid@cfjblaw.com
CARLTON FIELDS JORDEN BURT
Miami Tower
100 S.E. Second St., Ste. 4200
Miami, Florida 33131-2113
Phone: 305.539.7222
Fax: 305.530.0055
*Attorneys for Defendant Diamond Aircraft Industries, GmbH*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served by E-mail on April 30, 2014, on all counsel of record on the Service List below:

Benjamine Reid, FBN 183522
BReid@cfjblaw.com
CARLTON FIELDS JORDEN BURT
Miami Tower
100 S.E. Second St., Ste. 4200
Miami, Florida 33131-2113
Phone: 305.539.7222
Fax: 305.530.0055
*Attorneys for Defendant Diamond Aircraft*
*Industries, GmbH*

29822146.1

# SERVICE LIST

Michael A. Grim
*Admitted pro hac vice*
mgrim@bgdlegal.com
BINGHAM GREENEBAUM DOLL, LLP
3500 National City Tower
101 South Fifth Street
Louisville, KY 40202
Tel: (502) 589-4200
Fax: (502) 587-3695

V. Brandon McGrath
*Admitted pro hac vice*
bmcgrath@bgdlegal.com
BINGHAM GREENEBAUM DOLL, LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202
Tel: (513) 455-7643
Fax: (513) 455-8500

Juan Martinez, FBN 9024
juan.martinez@gray-robinson.com
GRAY ROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, FL 33131-0014
Tel: (305) 416-6880
Fax: (305) 416-6887

*Attorneys for Plaintiff*

Carl R. Nelson, FBN 280186
carl.nelson@bipc.com
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@bipc.com
Scott A. Richards, FBN 0072657
scott.richards@bipc.com
BUCHANAN INGERSOLL & ROONEY / FOWLER
WHITE BOGGS
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Tel: (813) 228-7411
Fax: (813) 229-8313

*Attorneys for Defendants Diamond Aircraft
Industries, Inc. and Diamond Aircraft Sales
U.S.A., Inc.*

29822146.1

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

### CASE NO: 11-61663-CIV-MORENO

AIRCRAFT GUARANTY CORPORATION, TRUSTEE
OF CONTINENT AIRCRAFT TRUST 1087,

       Plaintiff,

v.

DIAMOND AIRCRAFT INDUSTRIES, INC., et al.

       Defendants.

_____/

### <ins>NOTICE TO TAKE DEPOSITION UNDER FED. R. CIV. P. 30(B)(6)</ins>

PLEASE TAKE NOTICE that Plaintiff, Aircraft Guaranty Corporation, Trustee of Continent Aircraft Trust 1087, will take the deposition of Diamond Aircraft Industries, GmbH under Fed. R. Civ. P. 30(b)(6) on May 8, 2014 beginning at 9:00 a.m. at the office of Benjamine Reid, 100 S.E. Second Street, Suite 4200, Miami, Florida 33131-2113.

The deposition will continue from day to day before a person duly authorized to administer oaths until concluded and shall be recorded by any means authorized under Rule 30 of the Federal Rules of Civil Procedure, including but not limited to stenographically, sound and/or videotape and may be used for all purposes under the rules, including trial.  The topics to be addressed are described in **Exhibit A**, attached.

Respectfully submitted,

/s/ *V. Brandon McGrath*
V. Brandon McGrath
Bingham Greenebaum Doll LLP
2350 Chemed Center
255 E. Fifth Street
Cincinnati, OH  45202
(513) 455-7643

Michael A. Grim
Bingham Greenebaum Doll LLP
3500 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202
(502) 5894200
mgrim@bgdlegal.com


- AND -

Juan Martinez
Gray-Robinson, P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131-0014
(305) 416-6880

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Notice has been served via e-mail and regular mail upon the following counsel of record on April 23rd, 2014.

Carl R. Nelson
Ashley Bruce Trehan
Fowler White Boggs P.A.
501 E. Kennedy Blvd., Suite 1700
Tampa, Florida 33602

COUNSEL FOR DEFENDANT
DIAMOND AIRCRAFT INDUSTRIES, INC.
DIAMOND AIRCRAFT SALES U.S.A., INC.

Benjamine Reid, Esq.
Carlton Fields Jorden Burt
100 S.E. Second Street, Suite 4200
Miami, Florida 33131-2113
Email: breid@cfjblaw.com

COUNSEL FOR DEFENDANT
DIAMOND AIRCRAFT INDUSTRIES, GMBH

/s/ *V. Brandon McGrath*
V. Brandon McGrath
Bingham Greenebaum Doll LLP
2350 Chemed Center
255 E. Fifth Street
Cincinnati, OH 45202
(513) 455-7643

COUNSEL FOR PLAINTIFF

3

## EXHIBIT A

### Definitions

The following definitions apply to this Notice of Deposition and are deemed to be incorporated into each subject listed below:

1.      As used herein, the terms "person" or "persons" shall include any natural person, corporation, partnership, proprietorship, association, joint venture, governmental or other public entity, or any other form of organization or entity, and all their officials, directors, officers, employees, representatives and agents.

2.      The terms "related to," "relating to," and/or "regarding" as used herein include reflecting, concerning, pertaining to, relating to, evidencing, referencing, connected with, or in any manner having as its subject matter, directly or indirectly, expressly or impliedly.

3.      The terms "you," "your," and/or "Diamond Austria" mean the Defendant Diamond Aircraft Industries GmbH and any directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of Diamond Austria.

4.      The term "Diamond Canada" means Diamond Aircraft Industries, Inc.

5.      The term "Diamond USA" means Diamond Aircraft Sales U.S.A., Inc.

6.      The term "Plaintiff" means the Aircraft Guaranty Corporation, Trustee of Continent Aircraft Trust 1087 and any representatives, employees, agents, accountants, or any other persons or entities acting on its behalf or in concert with it, specifically including Karsten Damgaard-Iversen.

4

7.       The term "DA42" refers to the Diamond DA42 Twin Star aircraft, and includes such

aircraft whether powered by twin 1.7 liter turbo diesel engines, twin 2.0 liter turbo diesel

engines, or any other aircraft engine.

8.       The term "TAE" means Thielert Aircraft Engines GmbH, Thielert AG, and any

representatives, employees, agents, accountants, or any other persons or entities acting on their

behalf or in concert with them.

9.       The singular shall include the plural and vice versa; the terms "and" or "or" shall be both

conjunctive and disjunctive; and the term "including" mean "including without limitation."

10.     The word "document" shall mean any writing, recording, electronically stored

information or photograph in your actual or constructive possession, custody, care or control,

which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below

or to any other matter relevant to the issues in this action, or which are themselves listed below

as specific documents, including, but not limited to: correspondence, memoranda, notes,

messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts,

microfilms, video tapes or tape recordings.

11.     "Person" shall mean any individual, corporation, proprietorship, partnership, trust,

association or any other entity.

12.     The words "pertain to" or "pertaining to" mean relates to, refers to, contains, concerns,

describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates,

proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

13.     The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

14.     "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of ESI, including without limitation mainframe computers, computer servers, desktop computers, laptop computers, notebook computers, tablet computers, PDAs, and smartphones.

15.     "Computer systems," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including operating system, private- and custom-developed applications, commercial applications, and/or shareware.

16.     "Electronically stored information" or "ESI" includes, without limitation, the following: a. information that is generated, received, processed, and recorded by computers and other electronic devices; b. internal or external web sites; c. output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messages, or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; d. activity listings of electronic mail receipts and/or transmittals; and e. any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, flash drive, or in any other vehicle for digital data storage or transmittal, such as, but not limited to, a smartphone or personal digital assistant, including, but not limited to, Palm Pilot, Blackberry, iPhone, Android, or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

6

17.     "Electronic media" means any magnetic or other storage media device used to record ESL

Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM,

removable media such as flash drives, magnetic tapes of all types, microfiche, punched cards,

punched tape, computer chips, including, but not limited to EPROM, PROM, RAM, and ROM,

or on or in any other vehicle for digital data storage and/or transmittal.

18.     "Network" means any hardware and/or software combination that connects two or more

computers together and which allows the computers to share and/or transfer data between them.

For purposes of this definition, the connection between or among the computer need not be either

physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routes

utilizing modems and phone company facilities. In addition, there need not be a central file or

data server nor a central network operating system in place, i.e., peer-to-peer networks and

networks utilizing a mainframe host to facilitate data transfer.


## Deposition Topics

1.     The business and/or corporate relationship between Diamond Austria and
Diamond Canada.

2.     The business and/or corporate relationship between Diamond USA and
Diamond Austria.

3.     The business and/or corporate relationship between Diamond Austria and
TAE.

4.     The business and/or corporate relationship between Diamond Austria and
any authorized dealers such as Premier and USAERO.

5.     The corporate structure of Diamond Austria.

7

6.      The identities of the corporate officers, directors, and employees of Diamond Austria from 2004 to 2009.

7.      Diamond Austria's revenue and profit or loss from 2004 to 2009.

8.      Development of the Austro engine from inception to first sale.

9.      The reasons why Diamond Austria developed the Austro engine.

10.     The investigation conducted by German authorities regarding TAE that occurred at least in part between 2005 and 2008, including any communications between Diamond Austria and anyone associated with the investigation.

11.     The insolvency of TAE.

12.     Diamond Austria's involvement in the sale of DA42 aircraft between 2004 and 2009.

13.     Plaintiff's purchase of a DA42.

14.     The TAE life extension program and engine warranty.

15.     The operating cost of the TAE engine, including both the 1.7L and 2.0L versions.

16.     The types and locations of electronically stored information maintained by Diamond Austria, including e-mail systems, computer systems, shared file systems, document management systems, and back-up systems.

17.     The identity and function of every information technology or management information systems department, division, or equivalent functional group within Diamond Austria or provided to Diamond Austria through any outsource service provider, and the identity of the persons responsible for the retention of any ESI or documents, as well as all information regarding document and ESI retention policies.

8

18.     All persons, individuals, organizations, departments, third party vendors, and/or entities coordinating the e-discovery process for relevant ESI.

19.     The litigation hold implemented by Diamond Austria in this case.

15261010_1.docx

9

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 11-61663-CIV-MORENO

AIRCRAFT GUARANTY CORPORATION, TRUSTEE OF
CONTINENT AIRCRAFT TRUST 1087,

       Plaintiff.

v.

DIAMOND AIRCRAFT INDUSTRIES, GMBH

       Defendant.

\* \* \* \* \* \* \*

## PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

The following Requests for Admission, Interrogatories, and Requests for Production of Documents are submitted to Defendant Diamond Aircraft Industries, GmbH ("Diamond") by Plaintiff Aircraft Guaranty Corporation, Trustee ("Plaintiff") to be answered, under oath, within thirty days after the date of service.

### DEFINITIONS

1.     As used herein, the terms "person" or "persons" shall include any natural person, corporation, partnership, proprietorship, association, joint venture, governmental or other public entity, or any other form of organization or entity, and all their officials, directors, officers, employees, representatives and agents.

2.     The terms "related to," "relating to," and/or "regarding" as used herein include reflecting, concerning, pertaining to, relating to, evidencing, referencing, connected with, or in any manner having as its subject matter, directly or indirectly, expressly or impliedly, the subject matter of a specific Request for Admission, Interrogatory or Request for Production.

3.      The terms "you," "your," "Defendant," and/or "Diamond" mean the Defendant Diamond Aircraft Industries, GmbH. and any directors, officers, employees, agents, representatives or other persons acting, or purporting to act, on behalf of Diamond.

4.      The term "Plaintiff" means the Aircraft Guaranty Corporation, Trustee of Continent Aircraft Trust 1087 and any representatives, employees, agents, accountants, or any other persons or entities acting on its behalf or in concert with it, specifically including Karsten Damgaard-Iversen.

5.      The term "official," "director," "officer," "employee," "representative," or "agent" shall include any natural or corporate person, including any attorney, serving, acting or being in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves, acts or is in such capacity.

6.      The term "DA42" refers to the Diamond DA42 Twin Star aircraft, and includes such aircraft whether powered by twin 1.7 liter turbo diesel engines, twin 2.0 liter turbo diesel engines, or any other aircraft engine.

7.      The term "TAE" means Thielert Aircraft Engines GmbH, Thielert AG, and any representatives, employees, agents, accountants, or any other persons or entities acting on their behalf or in concert with them.

8.      The term "TAE Warranty" means the warranty offered by TAE that covered TAE engines on DA42s for 2 years parts and labor, prorated over 2,400 hours or 12 years, as alleged and described in Plaintiff's Amended Complaint.

9.      The term "Austro diesel engine" means the Austro (AE300) aircraft diesel engine which Diamond developed for use on DA42s.

10.     The term "Premier" means Premier Aircraft Sales, Inc. and any representatives, employees, agents, accountants, or any other persons or entities acting on its behalf or in concert with it.

11.     The terms "authorized dealer" mean the network of authorized aircraft distributors through which Diamond markets and sells its aircraft in the U.S. market, as detailed in Plaintiff's Amended Complaint, and also includes any representatives, employees, agents, accountants, or any other persons or entities acting on such authorized dealers' behalf or in concert with such authorized dealers.

12.     The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" mean "including without limitation."

13.     "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

14.     The word "identify," when used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other.

15.     The word "document" shall mean any writing, recording, electronically stored information or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to: correspondence, memoranda, notes, messages, diaries, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings.

16.     "Agent" shall mean any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

17.     "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

18.     The words "pertain to" or "pertaining to" mean relates to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

19.     The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

20.     As used herein, the term "communication" (singular and plural) is defined to include all oral, written, electronic or other communicative actions designed to apprise a party other than the speaker of certain facts, thoughts, or any other content.  The term includes, but is not limited to, phone conversations or messages, letters, e-mails, text messages, instant messages, picture text messages, faxes, and any posts, comments, or messages made or sent on social networking sites such as Facebook, Twitter, Myspace, LinkedIn, or any other social networking site.

4

## INSTRUCTIONS

21.     If you object to fully identifying a document, electronically stored information or oral communication because of a privilege, you must nevertheless provide the following information pursuant to Local Rule 26.1(g)(3)(B)(ii), unless divulging the information would disclose the privileged information:

      a.  the nature of the privilege claimed (including work product);

      b.  if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

      c.  the date of the document, electronically stored information or oral communication;

      d.  if a document: its type (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet), and the custodian, location, and such other information sufficient to identify the material for a subpoena duces tecum or a production request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

      e.  if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

      f.  the general subject matter of the document, electronically stored information or oral communication.

22.     You are under a continuous obligation to supplement your answers to these Interrogatories under the circumstances specified in Federal Rule of Civil Procedure 26(e).

## REQUESTS FOR ADMISSION

1.      Admit that at the time of TAE's insolvency in April 2008, Diamond was TAE's largest general aviation original equipment manufacturer ("OEM") customer.

**Answer:**

2.      Admit that you had knowledge of criminal and/or civil allegations against TAE or its founders, employees, or agents relating to fraudulent business activities prior to your decision to develop the Austro diesel engine for use on either the DA40s or DA42s.

**Answer:**

3.      Admit that you had knowledge of criminal and/or civil allegations against TAE or its founders, employees, or agents relating to fraudulent business activities prior to Plaintiff's purchase of its DA42.

**Answer:**

4.      Admit that prior to Plaintiff's purchase of its DA42, neither you nor your authorized dealers informed Plaintiff you were developing the Austro diesel engine.

**Answer:**

5.      Admit that prior to Plaintiff's purchase of its DA42, neither you nor your authorized dealers informed Plaintiff of the criminal or civil allegations against TAE or its founders, employees, or agents.

**Answer:**

6

6.　　　Admit that you provided German authorities with information, support, and/or evidence to assist in their investigations of TAE.

**Answer:**

7.　　　Admit that you communicated with Premier Aircraft Sales, Inc. regarding investigations by German authorities of TAE prior to Plaintiff's purchase of its DA42.

**Answer:**

8.　　　Admit that you knew that if TAE declared insolvency, bankruptcy, or the German legal equivalent of insolvency or bankruptcy, TAE would be unable to honor the TAE Warranty.

**Answer:**

9.　　　Admit that attached Exhibit A is a fair and accurate copy of the DA42 aircraft warranty used by Diamond between 2006 and 2008.

**Answer:**

10.　　　Admit that all DA42 sales by Diamond's authorized dealers require consent from Diamond before the sale becomes official.

**Answer:**

11.　　　Admit that Diamond's corporate governance is directed and controlled from Diamond Group's headquarters located in Wiener Neustadt, Austria.

**Answer:**

12.     Admit that Diamond views its authorized distributors as an extension of Diamond and an integral part of servicing customers before, during, and after a sale.

**Answer:**

13.     Admit that Diamond's employees and its authorized dealers' employees have appeared alongside each other at airshows (e.g., SUN 'n FUN) dressed in clothing with Diamond logos on it.

**Answer:**

14.     Admit that DA42 aircraft equipped with TAE engines lost value when TAE became insolvent and voided its warranties.

**Answer:**

15.     Admit that Diamond and Diamond Aircraft Sales USA, Inc. shared the same Chief Executive Officer during the period of 2005 to 2008.

**Answer:**

16.     Admit that Christian Dries attended the SUN 'n FUN airshow held in Lakeland, Florida at least once between 2000 and 2009.

**Answer:**

17.     Admit that Diamond sold aircraft to Florida purchasers between 2000 and 2009.

**Answer:**

8

## INTERROGATORIES

1.      Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Federal Rule of Civil Procedure 7(a)) filed in this action, or any fact underlying the subject matter of this action.

**Answer:**

2.      Please state the specific nature and substance of the knowledge that you believe the person(s) identified in your response to Interrogatory no. 1 may have.

**Answer:**

3.      Identify each person whom you may use as an expert witness at trial.

**Answer:**

4.      Identify each person who answered or assisted in answering these Interrogatories.

**Answer:**

5.      Identify the date Diamond began developing the Austro diesel engine for use on DA42s.

**Answer:**

6.      Identify the names and job titles for all individuals that were present, involved in, participated in, or were fully or partially responsible for the consideration and making of the decision to develop the Austro diesel engine.

**Answer:**


7.      Describe in detail Diamond's reason or reasons for developing the Austro diesel engine for use on the DA40s or DA42s.

**Answer:**

8.      Identify the cumulative cost Diamond incurred in developing the Austro diesel engine.

**Answer:**

9.      Identify all communications between Diamond and Premier regarding development of the Austro diesel engine.

**Answer:**

10.      Identify all advertisements or other public communications made by Diamond regarding the Austro diesel engine for use on DA42s.

**Answer:**

11.      Identify all actual or proposed criminal, civil, or other investigations by governmental authorities of TAE or its founders, employees or agents that you have ever been aware of.  For purposes of this Interrogatory only, the terms "governmental authorities" are not restricted to any individual nation.  For purposes of this Interrogatory only, the relevant period of time includes any knowledge of criminal, civil, or other investigations by governmental authorities of TAE or its founders, employees or agents from 2004 to the

present, whether such investigations were related to alleged business improprieties or not. For purposes of this Interrogatory only, the relevant period of time also includes any knowledge of criminal, civil, or other investigations by governmental authorities of TAE or its founders, employees or agents from TAE's founding to the present, which were related to alleged business improprieties. For purposes of this Interrogatory only, the term "identify" means to list each such investigation and describe in detail how you became aware of it, provide the date that you became aware of the investigation, and list the name and job title of your employees or agents that were aware of such investigations.

**Answer:**

12.     Identify all Diamond representatives, employees, agents, accountants, or any other persons or entities acting on Diamond's behalf or in concert with Diamond who have communicated with governmental authorities regarding alleged improprieties by TAE or related to TAE's insolvency. Please include the name and job title of each indicated person or entity, the name of the governmental authority contacted by each indicated person or entity, the dates for every such contact each individual or entity had with governmental authorities, and a detailed summary of the content of the communication. For purposes of this Interrogatory only, the terms "governmental authorities" are not restricted to any individual nation.

**Answer:**

13.     Identify the dates, the form, the names of all individuals or entities that were present for, and a detailed summary of the substance of all communications between you and

TAE regarding TAE's insolvency or any criminal or civil investigations of TAE. For purposes of this Interrogatory only, the term "identify" means to provide.

**Answer:**

14.     Identify all documents and communications in your possession or known to you prior to TAE's insolvency related to or discussing in any way criminal, civil, or other investigations of TAE or its founders, employees, or agents.

**Answer:**

15.     Identify all of your authorized dealers or other third parties that you communicated with regarding existing, proposed, or possible criminal investigations of TAE by German authorities.

**Answer:**

16.     Describe the corporate structure of Diamond.

**Answer:**

17.     Describe the relationship among and between Diamond and each of the following entities: Diamond Aircraft Industries, Inc., APC Aviation Production Company GmbH, Diamond Technology Center GmbH, Diamond Verwaltungs GmbH, Austro Engine GmbH, and Diamond Aircraft Sales U.S.A., Inc.

**Answer:**

18.     Identify all communications between you and Plaintiff.

**Answer:**

19.     Identify the factual bases for your denial of any Requests for Admission above.

**Answer:**

20.     Describe the relationship between Diamond Deutschland and Diamond Austria.

**Answer:**

21.     Between 2002 and 2014, how many direct or fleet sales of DA20, DA40, and DA42 Diamond aircraft were there from Diamond Austria or Diamond Deutschland?

**Answer:**

22.     Which Diamond entity funded the Embry-Riddle Aeronautical University Diamond Scholarship?

**Answer:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     Produce all documents and communications identified in your Answers to Plaintiff's First Set of Interrogatories.

**Response:**

2.      Produce all non-privileged documents you relied on to respond to any Requests for Admission or Interrogatories above.

**Response:**

3.      Produce all documents provided by you to any expert witness who will provide testimony in this case.

**Response:**

4.      Produce all communications between you and any expert witness who will testify in this case.

**Response:**

5.      Produce any written statements made by Plaintiff concerning any claim or defense at issue in this case.

**Response:**

6.      Produce all communications between you and Plaintiff.

**Response:**

7.      Produce any audio or other recordings of any statements allegedly made by Plaintiff.

**Response:**

14

8.      Produce all communications and documents regarding the sale or potential sale of any Diamond aircraft to Plaintiff.

**Response:**

9.      Produce all documents and communications regarding the reason or reasons for Diamond's decision to develop the Austro diesel engine for use on DA42s.

**Response:**

10.     Produce all documents relating to the Austro diesel engine as a real or potential replacement for TAE engines on the DA42.

**Response:**

11.     Produce all documents related to computing or determining the cost of developing the Austro diesel engine.

**Response:**

12.     Produce all communications between you and Premier regarding the development or availability of the Austro diesel engine for use on DA42s.

**Response:**

13.     Produce all communications and documents regarding criminal or civil allegations against TAE or its founders, employees, or agents.

**Response:**

14.     Produce all information, evidence, communications, or documents which you have provided to governmental authorities that pertain to criminal or civil allegations against TAE or its founders, employees, or agents.

**Response:**

15.     Produce all information, evidence, communications, or documents which governmental authorities have provided to you that pertain to criminal or civil allegations against TAE or its founders, employees, or agents.

**Response:**

16.     Produce all communications and documents regarding TAE's financial well-being or TAE's insolvency.

**Response:**

17.     Produce all communications and documents regarding TAE voiding its engine warranties or the possibility of TAE voiding its engine warranties.

**Response:**

18.     Produce all communications and documents regarding incorrect TAE invoices.

**Response:**

19.     Produce all communications between you and any of your authorized dealers, including Premier Aircraft Sales, Inc., regarding the need for authorized dealers to receive final approval from Diamond before a sale can be finalized.

**Response:**

20.     Produce all documents regarding your imposition of conditions on any of your authorized dealers, including Premier Aircraft Sales, Inc.

**Response:**

21.     Produce all documents and communications regarding the decreased value of DA42s equipped with TAE engines after TAE voided its warranties, including any documents and communications provided to governmental agencies, such as the Federal Aviation Administration ("FAA") or the European Aviation Safety Agency ("EASA").

**Response:**

22.     Produce all compiled or audited financial statements, including balance sheets, asset and liability records, income statements, profit and loss records, statements of cash flows, and statements of owners' equity, and any internal and independent audits for Diamond.

**Response:**

23.     Produce copies of bank statements reflecting deposits, payments, and transfers for bank accounts for which Diamond has signatory authority, access, or control.

**Response:**

24.     Produce all Diamond organization charts or other documents reflecting or showing Diamond's corporate officers, employees, directors, affiliates, contractors and other affiliated persons or entities.

**Response:**

25.     Produce all Articles of Organization or Incorporation, Operating Agreements, Bylaws, records of director, member, or manager meetings (including schedules, attendance, agendas, minutes, and notes), annual reports, and management or organizational structure charts for Diamond.

**Response:**

26.     Produce all agreements relating to the purchase, sale, or transfer of assets, units, stock, or other securities and any agreements relating to the allocation of assets and liabilities of those purchases, sales, or transfers.  This includes purchases, sales, or transfers related to company mergers or acquisitions.

**Response:**

27.     Produce job descriptions for Diamond's corporate officers, employees, directors, affiliates, contractors and other affiliated persons or entities, during the time period 2005 to 2008.

**Response:**

28.     Produce all investor lists, stockholder lists and shareholder lists for Diamond during the time period 2005 to 2008.

**Response:**

29.     Produce all documents regarding the involvement of Diamond in the development, production, marketing, sales, or delivery of the Austro diesel engine for use on DA42s.

**Response:**

30.     Produce all documents describing the job title(s) and responsibilities and dates of employment of Christian Dries at Diamond during the time period 2005 to 2008.

**Response:**

31.     Produce all documents regarding communications between Diamond and Diamond Aircraft Sales USA, Inc. regarding TAE.

**Response:**

32.     Produce all documents regarding marketing or sales activities conducted by Diamond Aircraft Sales USA, Inc. on behalf of Diamond or Diamond Aircraft Industries, Inc.. in the United States.

**Response:**

33.     Produce all documents regarding the marketing, promotion or sale of any Diamond aircraft at the SUN 'n FUN airshow for the period 2000 to 2008.

**Response:**

34.    Produce all documents regarding all visits by Christian Dries to Florida for any business purpose for the period 2000 to 2008.

**Response:**

35.    Produce all trademarks used by Diamond, including its affiliates, agents, predecessors, successors or assigns.

**Response:**

36.    Produce a copy of all agreements between Diamond and Diamond Aircraft Industries, Inc. or Diamond Aircraft Sales USA, Inc. for the purchase, sale or distribution of DA42s (or other Diamond aircraft) in the United States.

**Response:**

37.    Produce a copy of all agreements between Diamond and the following certified repair stations:

**Response:**

38.    Produce a copy of the Diamond Brilliance Center Agreement between Diamond and European-American Aviation for the Diamond Brilliance Center in Naples, Florida.

**Response:**

39.     Produce a copy of any agreements between Diamond and Embry-Riddle

Aeronautical University.

**Response:**

40.     Produce a copy of any Diamond Service Center Agreements for any authorized

Diamond service centers located in Florida between 2005-2014.

**Response:**

Respectfully submitted,

_____

Juan Martinez (FBN 9024)
GRAYROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131-0014
Telephone:  305-416-6880
Facsimile:  305-416-6887
E-mail:  juan.martinez@gray-robinson.com

　　　　-and-

V. Brandon McGrath
Michael A. Grim
BINGHAM GREENBAUM DOLL LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, Ohio 45202
Telephone: 513-455-7643
Facsimile: 513-455-8500
E-mail: Bmcgrath@bgdlegal.com
E-mail: mgrim@bgdlegal.com
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing was served via e-mail this 22nd day of April 2014, upon the following:

Benjamine Reid (breid@cfjblaw.com)
Carlton Fields Jorden Burt
Miami Tower
100 S.E. Second Street
Miami, Florida 33131-2113
**Counsel For Diamond Aircraft Industries GmbH**

Carl Richard Nelson (cnelson@fowlerwhite.com)
Ashley Bruce Trehan (ashley.trehan@bipc.com)
Scott A. Richards (scott.richards@bipc.com)
Fowler White Boggs P.A.
501 E Kennedy Boulevard
Suite 1700
Tampa, FL 33602
**Counsel for Diamond Aircraft Industries, Inc. and
Diamond Aircraft Sales U.S.A., Inc.**

 

 

_____
Counsel for Plaintiff

15223925_1.doc