**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO:  11-61663-CIV-MORENO**

AIRCRAFT GUARANTY CORPORATION,
TRUSTEE OF CONTINENT AIRCRAFT
TRUST 1087,

      Plaintiff,

v.

DIAMOND AIRCRAFT INDUSTRIES, INC.;
DIAMOND AIRCRAFT INDUSTRIES, GMBH;
and DIAMOND AIRCRAFT SALES U.S.A., INC.,

      Defendants.

_____/

**DEFENDANT DIAMOND AIRCRAFT INDUSTRIES, GMBH'S**
**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (DOC. 97)**

Diamond Austria hereby files this Reply in Support of its Motion to Dismiss (Doc. 97) and addresses matters raised in Plaintiff's Opposition (Doc. 101) to Diamond Austria's Motion.

## I.      No Subject Matter Jurisdiction.

Plaintiff asserts that Aircraft Guaranty is the "proper" plaintiff, citing this Court's order granting leave for Plaintiff to amend its complaint.   (*See* Opp. at 13; *see also* Doc. 39.) However, that a trustee may have a right to sue does not mean the trustee is the party whose citizenship matters for diversity purpose.  A "real party in interest" under Rule 17 need not be the same as the "real party to the controversy" for diversity purposes.  *See Airlines Reporting Corp. v. S&S Travel, Inc.*, 58 F.3d 857, 862 n.4 (2d Cir. 1995) (noting the distinction in terminology between Rule 17's "real party in interest" standard and a "real and substantial party to the controversy" for diversity purposes) (citing *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460 (1980)).  In *Airlines*, the Second Circuit found that the named plaintiff <u>was</u> the "real party in interest" under Rule 17(a) but <u>was not</u> the "real party to this controversy" for the diversity purposes and affirmed dismissal for lack of subject matter jurisdiction.  58 F.3d at 862-65.[1]

Plaintiff makes numerous assertions about Aircraft Guaranty's statutory rights.  However, the trust documents themselves wholly undermine Plaintiff's assertions.  (*See* <u>Exhibit A</u>, the operative Declaration of Trust produced by Plaintiff, which states at Section 6.4(b) that "the Trustee agrees that it will not, without the prior written consent of the Beneficiary, (i) sell, mortgage, pledge or otherwise dispose of the Aircraft . . . or (ii) amend any Lease or other

---

[1] Diamond Austria adopts and incorporates by references the arguments and case citations set forth in co-Defendant's filings.  (*See* Doc. 83 at 11 n. 4 & Doc. 85 at 10 n. 5 (citing, *inter alia*, *Emerald Inv. Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 199 n. 10 (3d Cir. 2007)); *see also* Doc. 93 at 2-5, Doc. 93 at 3 n.3,  Doc. 94 at 2-5, & Doc. 94 at 3 n.2 (citing, *inter alia*, *Lincoln Property Co. v. Rochi*, 546 U.S. 81, 91); *Assoc. Ins. Mgmt. Corp. v. Arkansas Gen. Agency*, 149 F.3d 794, 796-97 (8th Cir. 1998); *Fong v. Elder Life Mgmt, Inc.*, Case No. 11-cv-5904, 2012 U.S. Dist. LEXIS 7220, *8 n.2 (E.D.N.Y. Jan. 23, 2012)).

Operating Agreement or give any consents."). This language and Mr. Iversen's testimony show that Aircraft Guaranty is virtually powerless with respect to the subject aircraft and the litigation. Thus, here, as in *Airlines*, the Court can and should find that Mr. Iversen's Danish citizenship controls, resulting in a lack of diversity, and, therefore, a lack of subject matter jurisdiction.

## II.     No Personal Jurisdiction.

### A.     No General Jurisdiction.

#### 1.     Plaintiff Applies the Wrong Legal Standard.

Within the last seventy years, "general jurisdiction has come to occupy a less dominant place in the contemporary scheme." *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 (2014) (using *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), as the starting point in the Court's jurisdictional analysis). Plaintiff gives short shrift to the Court's latest pronouncement on general jurisdiction over foreign corporations. The discussion in *Daimler* makes clear the Supreme Court's overall reluctance in exercising general jurisdiction.[2] The Court even cites papers entitled "The Myth of General Jurisdiction" and "The Problem With General Jurisdiction" in support of its assertion that "we have declined to stretch general jurisdiction beyond limits

---

[2] *Daimler* provides a detailed background regarding general jurisdiction. In *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), the forum state "was the [foreign] corporation's principal, if temporary, place of business," and thus an exercise of general personal jurisdiction was appropriate. *Daimler*, 134 S. Ct. at 756 (citation omitted). On the other hand, in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), the foreign corporation's contacts with the forum state "did not resemble the continuous and systematic general business contacts . . . found to exist in *Perkins*." *Daimler*, 134 S. Ct. at 756-57 (internal quotation marks omitted). Likewise, in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011), the Court found that no general jurisdiction existed over foreign subsidiaries of a domestic corporation, where the foreign subsidiaries "lacked any affiliation with" the forum state, even though a small percentage of tires manufactured by the foreign subsidiaries were distributed in the forum state. *See Daimler*, 134 S. Ct. at 757 (discussing *Goodyear*, 131 S. Ct. at 2850). Finally, distinguishing prior cases, the Court noted that "the placement of a product into the stream of commerce may bolster an affiliation germane to *specific* jurisdiction," but "such contacts do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Daimler*, 134 S. Ct. at 757 (emphasis in original).

traditionally recognized." *Daimler*, 134 S. Ct. at 757-58, 758 n. 9.  "[O]nly a **limited set of affiliations with a forum** will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760 (emphasis added).

"[G]eneral jurisdiction requires affiliations so continuous and systematic as to render [the foreign corporation] essentially at home in the forum state, *i.e.*, **comparable to a domestic enterprise in that State**." *Daimler*, 134 S. Ct. at 758 n. 11 (emphasis added) (citing *Goodyear*, 131 S. Ct. at 2851) (emphasis added).  *Daimler* and *Goodyear* together make clear that a corporation's <u>state of incorporation</u> and <u>principal place of business</u> are "paradigm all-purpose forums." *Daimler*, 134 S. Ct. at 760.  The Supreme Court found that "approv[ing] the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business" would be "unacceptably grasping," and the Court declined to do so. *Id.* at 761.  The *Daimler* Court emphasized the fact that neither the foreign parent nor its domestic subsidiary was incorporated in the forum state, nor did they have their principal place of business there. *Id.* at 761-62.

---

**"Continuous and Systematic":  *Daimler*'s Distinction**

[T]he inquiry under *Goodyear* is not whether a foreign corporation's **in-forum contacts** can be said to be in some sense "continuous and systematic," it is whether that corporation's "**affiliations with the State** are so 'continuous and systematic' as to render [it] **essentially at home** in the forum State.

*Daimler*, 134 S. Ct. at 761 (emphasis added) (citing *Goodyear*, 131 S. Ct. at 2851).

---

Plaintiff's discussion of general jurisdiction disregards *Daimler*'s distinction.  Plaintiff asserts that general jurisdiction is measured by "the defendant's contacts with the forum state that are unrelated to the cause of action" (Opp. at 3), "substantial connections," (at 8), or mere "minimum contacts" (at 5).  (*See also* Opp. at 5 (misstating the standard as follows: "if the Court is satisfied that Diamond Austria's contacts satisfy Fla. Stat. s 48.193(2), then the 'minimum

contacts' test is satisfied, and the Court may exercise personal jurisdiction over Diamond Austria without engaging in a due process analysis.").)   However, Mere "minimum contacts" or even "continuous and systematic" contacts are not sufficient to establish general jurisdiction.  Plaintiff must prove that Diamond Austria is "essentially at home" in Florida, comparable to a "domestic enterprise" in Florida.  *See Daimler*, 134 S. Ct. at 761, 758 n. 11.  This distinction is fatal to general jurisdiction here, where Diamond Austria is not "essentially at home" in Florida comparable to a "domestic enterprise" in Florida.

### 2. Plaintiff Has Not Met—And Cannot Meet—Its Burden To Establish That Diamond Austria Is Comparable To A "Domestic Enterprise."

Plaintiff lists eleven points that purportedly establish Diamond Austria's "relationship with Florida."  (*See* Opp. at 5-8.)  These points fail to support general jurisdiction.  First, they are red herrings to the extent they raise a "stream of commerce" theory, which has no place in the general jurisdiction analysis.  *See Daimler*, 134 S. Ct. at 757 ("[T]he placement of a product into the stream of commerce may bolster an affiliation germane to *specific* jurisdiction," but "such contacts do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.") (emphasis in original).[3]

Points (1), (2), (4), (6), (7), and (11) are examples of such improper, "stream-of-commerce" allegations.  Several points, including point number (3) regarding Diamond Canada's attendance at trade shows, obfuscate the relevant issue, which is whether Diamond Austria's affiliations with the State of Florida render it to be essentially at home in Florida.  Still others, such as point number (2), attempt to rely on agency to establish general jurisdiction, which is

---

[3] Indeed, a "stream of commerce" theory applies not only when a defendant has placed a product into a stream of commerce, but also when the defendant, e.g., advertised, entered into distributor agreements, or directly and continuously sold products into a state.  *See Daimler*, 134 S. Ct. at 755 n. 7.  Here, the Dries Declaration establishes that Diamond Austria has not so advertised, continuously sold, or contracted with distributors, retailers, or service centers in Florida.

wholly inappropriate.  Plaintiff's agency theory cannot establish general jurisdiction.  (*See* Mot. at 3-4 (citing *Rogers v. Omni Solution, Inc.*, 2011 U.S. Dist. LEXIS 24178, *14 (S.D. Fla. Mar. 9, 2011)).)

A few points warrant individual treatment, as follows:

> 7.   In the two Distributor Agreements between Diamond USA and Premier, Diamond USA represents in the Preamble that it is the exclusive distributor in the United States of Diamond Austria's products.  (Compl. ¶ 21).  The contract also mandates that Premier must provide office space to Diamond Austria personnel, making Christian Dries' assertion that Diamond Austria has no contact with or control over Premier misplaced.

The first half of point (7) is irrelevant because it is predicated on a "stream of commerce" theory, which is precluded under *Daimler*.  *See Daimler*, 134 S. Ct. at 757.  The second allegation of point (7) is wrong.  The relevant provision set forth in one of the referenced agreements provides that "DRDC [Premier] agrees to provide without cost, upon reasonable request, office facilities for occasional use by Diamond [defined as Diamond Aircraft Sales, U.S.A., Inc.] representatives who visit DRDC [Premier]."  (*See, e.g.*, Doc. 53-2, Page 6 of 24, Section 6.2.)  Nothing in the contract mandates that Premier must provide anything, let alone office space, to Diamond Austria.  The Distributor Agreement provisions are consistent with Mr. Dries's Declaration, and they fail to establish general jurisdiction over Diamond Austria.

> 8.   In order to expand its presence in Florida, Diamond Austria designated the first ever Diamond Brilliance Flight Center in Naples, Florida in 2006. . . .
>
> - and -
>
> 10.   In order to develop a maintenance and support network for Diamond aircraft, Diamond Austria, along with Diamond Canada, designated several service centers in Florida.  (Compl. ¶ 22).  To date, there are four authorized service centers, located throughout the state in Naples, Daytona Beach, Fort Lauderdale, and St. Augustine. (Id.)

Points (8) and (10) both involve vague "designations" purportedly made by Diamond Austria.  First, Plaintiff provides no authority that a "designation" of any kind has any legal

significance whatsoever, particularly given the Supreme Court's reluctance to employ general jurisdiction over foreign manufacturers.  Second, to the extent Plaintiff is implying that Diamond Austria has contracted with any purported service centers in Florida, the allegation has been squarely refuted by Mr. Dries in his Declaration.  (*See* Dries Decl., Doc. 99-1 ¶ 13 ("Diamond Austria has no contracts with service centers in the State of Florida.").)[4]  Plaintiff's allegations are supported solely by imprecise wording in a magazine article.  A news article does not amount to competent evidence sufficient to rebut Mr. Dries's declaration.  In any event, these allegations fail to establish Diamond Austria is "at home" in Florida.

> 9.  *Christian Dries, as CEO and owner of Diamond Austria, signed an agreement in 2013 with Embry-Riddle Aeronautical University, whereby Diamond Austria plans to expend its presence at Daytona Beach. . . .*

Plaintiff's ninth point (Opp. at 7) is a lengthy discussion of the Memorandum of Understanding discussed in Mr. Dries's Declaration.  However, Plaintiff has not and cannot rebut Mr. Dries's Declaration in this regard.  (*See* Dries Decl. ¶¶ 18-19.)  The <u>facts</u> set forth in the Declaration cement Diamond Austria's lack of affiliation with Florida; Diamond Austria cannot be considered "essentially at home" in this state.

> 11.  *As further evidence of its Florida activities, Diamond Austria sells aircraft direct to Florida consumers through Diamond USA, which is simply a conduit for Diamond Austria . . . .*

The exhibits show that a mere <u>two</u> (2) aircraft that have been sold into Florida were sold from Diamond Austria to Diamond U.S.A., and then by Diamond U.S.A. to a retail consumer.  "Diamond Austria has no contracts with individual retail purchasers in the State of Florida."

---

[4]  As a factual matter, Diamond Austria made no such designation regarding the "Diamond Brilliance Flight Center."  However, because Plaintiff has failed provide competent evidence as to this point, the burden to produce evidence has not shifted back to Diamond Austria.

(Dries Decl. ¶ 13.)   These are hardly "direct" and cannot establish that Diamond Austria is "essentially at home" in the State of Florida.

Companies that are incorporated in a state or have a principal place of business in the state are "essentially at home" in the state.  In contrast, companies such as Diamond Austria that have sporadic contacts with a state are hardly "at home" in the state.  Given *Daimler*'s clarified standards for establishing general jurisdiction, and also its caution against a broad exercise of general jurisdiction over foreign corporations, general jurisdiction should not be exercised over Diamond Austria in the State of Florida.

### B.   No Specific Jurisdiction.

The test for specific jurisdiction is whether Diamond Austria's acts in the State of Florida gave rise to Plaintiff's cause of action.  The evidence shows Diamond Austria's very limited contacts with Florida had nothing to do with Plaintiff's purchase or the Thielert warranty. Diamond Austria did not sell any aircraft to Plaintiff.  (Dries Decl. ¶¶ 22-26.)  Plaintiff's Response fails to adequately rebut the plain fact that Diamond Austria had nothing to do with Plaintiff's purchase.  Therefore, as a matter of law, specific jurisdiction cannot be exercised.

### C.   No Alter-Ego Jurisdiction

Plaintiff has not produced a single case supporting the notion that "alter-ego jurisdiction" may be asserted over a foreign corporation in federal court based on the activities of an entity that is not a subsidiary of the foreign corporation, where the two entities have different owners and officers.  As stated above, and as a matter of law, the Florida long-arm statute does not permit general jurisdiction on an agency theory.  (*See* Mot. at 3-4 (citing *Rogers v. Omni Solution, Inc.*, 2011 U.S. Dist. LEXIS 24178, *14 (S.D. Fla. Mar. 9, 2011).)  As to specific jurisdiction, even assuming that an alter-ego theory was viable (which it is not), the aircraft at

issue was sold by Diamond Canada (not Diamond Austria) to Diamond U.S.A.  There is no legal or factual basis for permitting "alter-ego jurisdiction" over Diamond Austria.

## III.    Time-Barred Claims.

To determine whether Plaintiff's claims relate back to the original complaint, the salient issues are whether Diamond Austria "received such notice of the action that it will not be prejudiced in defending on the merits," **and** whether Diamond Austria "knew or should have known that the action would have been brought against it, but for a mistake concerning [Diamond Austria's] identity."  *See* Fed. R. Civ. P. 15(c)(1)(C)(i) & (ii).  Plaintiff has failed to address the heart of the "relation back" inquiry applied to this case.  Instead, Plaintiff highlights one half of the relation-back inquiry while turning a blind eye to the other.

Under prong (i), Diamond Austria will undoubtedly be prejudiced.  Plaintiff's Second Amended Complaint not only added two new parties, but it completely revised Plaintiff's theory of its case.  Rather than asserting three fraud claims against Diamond Canada Plaintiff asserts a host of conspiratorial-like allegations of "alter-ego" and "agency" among the three Defendants, with Diamond Austria purportedly at the helm.  Thus, whether or not Diamond Austria previously knew that litigation was pending against Diamond Canada fails to meet the first factor because the case, as it stands, is a completely different case from the one filed at the outset of this litigation.

Under prong (ii), Plaintiff is grasping at straws when it asserts it did not know enough details about the Defendants' respective corporate structures.  Plaintiff's discussion of *Krupski v. Costa Crociere S.p.A*, 130 S.Ct. 2485 (2010), seems to imply that *Krupski* has all but done away with to the "but for a mistake" language in the second half of prong (ii).  But this is not the case. *See, e.g.*, *Arrow Air, Inc. v. American Express Co.*, Case No. 10-cv-28831, 2012 Bankr. LEXIS 5312, *12-*13 (S.D. Fla. Bankr. Nov. 13, 2012) (finding the facts before the court to be

distinguishable from *Krupski* where the newly added defendant was a "separate and distinct entity" and "had no reason to know that the Trustee intended to assert claims against it"; "[a]lthough [the Trustee] had received notice generally that the Complaint had been filed, it was not served with the Complaint and would have no reason to have reviewed the Complaint"); *Lelieve v. Orosa*, Case No. 10-cv-23677, 2011 U.S. Dist. LEXIS 124585, *12 (S.D. Fla. Oct. 27, 2011) ("Where Plaintiff's argument fails is that he still has not shown that he made a mistake. . . . Without a mistake, the proposed Defendants' knowledge is irrelevant."). The *Lelieve* court deemed the plaintiff's reliance on *Krupski* as "misplaced in part because the Court in *Krupski* **assumed a mistake** and then asked whether it was covered under Rule 15." *Lelieve*, 2011 U.S. Dist. LEXIS 124585, *15 (emphasis added).

Here, the Court should not make the same assumption as in *Krupski* because Plaintiff has failed to meet its burden of proving a "mistake." Simply put, "***[a] lack of knowledge does not constitute a mistake.***" *Arrow Air*, 2012 Bankr. LEXIS 5312, *13 (emphasis added) (quoting *Lelieve*, 2011 U.S. Dist. LEXIS 124585 at *4). "There are plenty of cases stating a lack of knowledge (even post-*Krupski*) is not a 'mistake' under Rule 15(c)(1)(C)." *Lelieve*, 2011 U.S. Dist. LEXIS 124585, *16 (finding plaintiff failed to meet "his burden of demonstrating that he made a 'mistake'"). Plaintiff fails to show anything beyond a purported lack of knowledge, which under post-*Krupski* case law, is insufficient to establish a "mistake" under Rule 15. Plaintiff has failed to meet its burden of showing that Diamond Austria "received such notice of the action that it will not be prejudiced in defending on the merits," and that Diamond Austria "knew or should have known that the action would have been brought against it, but for a mistake concerning [Diamond Austria's] identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(i) & (ii). As

such, Plaintiff's claims against Diamond Austria do not relate back, are thus time-barred, and should be dismissed accordingly.

## IV.   Failure to State a Claim.

Diamond Austria adopts and incorporates by reference the arguments made by the other Defendants with regard to Plaintiff's failure to state a claim.  Plaintiff is attempting to sue these three Defendants because Plaintiff is prohibited from suing Thielert—the German manufacturer of the subject engines—which became insolvent and subsequently voided its warranties. Diamond Austria appreciates and sympathizes with the position that Plaintiff has been put in by Thielert; in fact, Diamond Austria has experienced difficulties in the wake of the Thielert insolvency as well.  But this is no ground for suing any Diamond entity.

## V.   Conclusion.

The single word that describes this case is "misplaced."  This action, as a whole, has no place in federal court.  It is between a Danish citizen, on one hand, and two foreign entities (among others) on the other hand.  Thus, there is no subject matter jurisdiction.  Florida is not a proper place for Diamond Austria to be haled into Court because Diamond Austria is not "essentially at home" in Florida, and Diamond Austria committed no act that gave rise to Plaintiff's claim in Florida.  Thus, there is no personal jurisdiction.  Diamond Austria is also a misplaced Defendant because Plaintiff has belatedly added Diamond Austria to this action.

Finally, and perhaps most importantly, Plaintiff's qualms are entirely misplaced.  The entire action arises out of the insolvency of a party not named to this action: Thielert.  Diamond Austria should not have to take the blame for Thielert's actions.  For these reasons, dismissal of either the entire action or of Diamond Austria should be granted.

Respectfully submitted,

s/ Benjamine Reid
Benjamine Reid, FBN 183522
BReid@cfjblaw.com
CARLTON FIELDS JORDEN BURT
Miami Tower
100 S.E. Second St., Ste. 4200
Miami, Florida 33131-2113
Phone: 305.539.7222
Fax: 305.530.0055
*Attorneys for Defendant Diamond Aircraft
Industries, GmbH*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document was served by CM/ECF on May 1, 2014, on all counsel of record on the Service List below:

s/ Benjamine Reid
Benjamine Reid, FBN 183522
BReid@cfjblaw.com
CARLTON FIELDS JORDEN BURT
Miami Tower
100 S.E. Second St., Ste. 4200
Miami, Florida 33131-2113
Phone: 305.539.7222
Fax: 305.530.0055
*Attorneys for Defendant Diamond Aircraft
Industries, GmbH*

## SERVICE LIST

Michael A. Grim
*Admitted pro hac vice*
mgrim@bgdlegal.com
BINGHAM GREENEBAUM DOLL, LLP
3500 National City Tower
101 South Fifth Street
Louisville, KY 40202
Tel: (502) 589-4200
Fax: (502) 587-3695

V. Brandon McGrath
*Admitted pro hac vice*
bmcgrath@bgdlegal.com
BINGHAM GREENEBAUM DOLL, LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202
Tel: (513) 455-7643
Fax: (513) 455-8500

Juan Martinez, FBN 9024
juan.martinez@gray-robinson.com
GRAY ROBINSON P.A.
1221 Brickell Avenue, Suite 1600
Miami, FL 33131-0014
Tel: (305) 416-6880
Fax: (305) 416-6887

*Attorneys for Plaintiff*

Carl R. Nelson, FBN 280186
carl.nelson@bipc.com
Ashley Bruce Trehan, FBN 0043411
ashley.trehan@bipc.com
Scott A. Richards, FBN 0072657
scott.richards@bipc.com
BUCHANAN INGERSOLL & ROONEY / FOWLER
WHITE BOGGS
501 E. Kennedy Blvd., Suite 1700
Tampa, FL 33602
Tel: (813) 228-7411
Fax: (813) 229-8313

*Attorneys for Defendants Diamond Aircraft
Industries, Inc. and Diamond Aircraft Sales
U.S.A., Inc.*