1          **UNITED STATES DISTRICT COURT**
           **SOUTHERN DISTRICT OF FLORIDA**
2                 **MIAMI DIVISION**

3          **CASE NUMBER 11-61663-CIV-MORENO**

4   AIRCRAFT GUARANTY CORPORATION
    TRUSTEE OF CONTINENT AIRCRAFT
5   TRUST 1087,                        **Courtroom 13-3**
                 Plaintiff,
6                                      **Miami, Florida**

7      vs.                             **May 2, 2014**
    DIAMOND AIRCRAFT INDUSTRIES, INC.,
8   et al.,

9              Defendants.

10

11       **PROCEEDINGS ON THE MOTION FOR PROTECTIVE ORDER**
         **BEFORE THE HONORABLE FEDERICO A. MORENO**
           **CHIEF UNITED STATES DISTRICT JUDGE**
12

13  APPEARANCES:

14  FOR THE PLAINTIFF:        **MICHAEL A. GRIM, ESQ.**
                              Bingham Greenebaum Doll, LLP
15                            3500 National City Tower
                              101 South Fifth Street
16                            Louisville, Kentucky 40202
                                            502.589.4200
17                                  Fax:  502.540.2235

18                            **V. BRANDON McGRATH, ESQ.**
                              Bingham Greenebaum Doll, LLP
19                            2350 First Financial Center
                              255 East Fifth Street
20                            Cincinnati, Ohio 45202
                                            513.455.7641
21                                  Fax:  513.762.7941

22                            **JUAN C. MARTINEZ, ESQ.**
                              Gray Robinson, P.A.
23                            1221 Brickell Avenue
                              Suite 1600
24                            Miami, Florida 33131
                                            305.416.6880
25                                  Fax:  305.416.6887

```
 1  FOR DIAMOND AIRCRAFT
    INDUSTRIES, INC.:        CARL R. NELSON, ESQ.
 2                           Fowler White Boggs, P.A.
                             501 East Kennedy Boulevard
 3                           Suite 1700
                             Tampa, Florida 33602
 4                                              813.222.1108
                                      Fax:   813.222.1108
 5  FOR DIAMOND AIRCRAFT
    INDUSTRIES, GmbH:        BENJAMINE REID, ESQ.
 6                           Carlton Fields Jorden Burt,
                             100 SE 2nd Street
 7                           Suite 4200
                             Miami, Florida 33131
 8                                              305.530.0050
                                      Fax:   305.530.0055
 9
    REPORTED BY:             GILDA PASTOR-HERNANDEZ, RPR, FPR
10                           Official United States Court Reporter
                             Wilkie D. Ferguson Jr. US Courthouse
11                           400 North Miami Avenue - Suite 13-3
                             Miami, Florida  33128   305.523.5118
12                           gphofficialreporter@gmail.com
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**TABLE OF CONTENTS**

Page

Reporter's Certificate ..................................... 49

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

```
 1            (The following proceedings were held at 3:05 p.m.)
 2            THE COURT:  Good afternoon, everybody.
 3            MR. REID:  Hello, Judge.
 4            THE COURT:  Let me call the case on an emergency
 5    motion.  Let's get all these parties right since we've got all
 6    of these Diamonds.
 7            Aircraft Guaranty Corporation, Trustee of the Continent
 8    Aircraft Trust versus Diamond Aircraft Industries, Diamond
 9    Aircraft Industries, GmbH and Diamond Aircraft Sales, USA.
10            On behalf of the plaintiff?
11            MR. GRIM:  Michael Grim.
12            THE COURT:  Please stand up when you're addressing the
13    Court unless you're very tired.  Use that microphone over there,
14    please, the microphone that's up there.
15            MR. GRIM:  Sorry, Your Honor.  Good afternoon.  Michael
16    Grim on behalf of the plaintiff, Continent Aircraft Trust,
17    Aircraft Guaranty Corporation, along with Brandon McGrath and
18    Juan Martinez.
19            THE COURT:  Okay.  You're going to do the talking?
20            MR. GRIM:  Yes.
21            THE COURT:  Okay.  On behalf of the Diamond Aircraft
22    Industries, Inc., who do we have?
23            MR. NELSON:  That would be Carl Nelson of Fowler White
24    for Inc. and for Diamond Aircraft Sales, USA.
25            THE COURT:  Okay.  And for the Austrian company, GmbH?
```

 1          MR. REID:  I'm Ben Reid with Carlton Fields and I
 2  represent the Austrian Company and I'll be speaking.
 3          THE COURT:  And you're the one who moved for this, but
 4  I wanted to have all of you here.
 5          MR. REID:  Could I just clear one thing up that was
 6  confusing?  I did move for the emergency hearing.  I think
 7  somebody got the idea that I was asking to appear by phone and
 8  it wasn't me.
 9          THE COURT:  No, you weren't appearing by phone; it was
10  the people from Tampa.
11          MR. REID:  From the other defendants.
12          THE COURT:  But he finished on April 30th.  Was that a
13  big deal to come here on May 2nd?
14          MR. REID:  I just didn't want you to think that I had
15  asked for the emergency hearing and then didn't want to show up.
16          THE COURT:  No, no, no.  I got the names right.  It's
17  easy to keep the names right of the lawyers.  It's harder to
18  keep the names right of the companies because we've got a
19  Canadian company and a USA company.
20          That's you and Mr. Reid who has the Austrians.  Do I
21  have that right?
22          MR. REID:  That's correct, Your Honor.
23          THE COURT:  And you were taking a deposition in
24  Baltimore --
25          MR. NELSON:  Canada.

Motion for Protective Order

```
 1              THE COURT:  -- on this case.

 2              MR. NELSON:  Canada.

 3              THE COURT:  Canada, I'm sorry.  You came back on April

 4    30th and you didn't want to drive or fly down here and your

 5    associate had a family affair, but she was going to rely on you

 6    since you know more and since you are the one who took the depo.

 7    Do I have that right?

 8              MR. NELSON:  That's close, Your Honor.

 9              THE COURT:  They tell me --

10              MR. NELSON:  I intended to come all along.  That was

11    just filed because I wasn't sure I was going to be able to get

12    here because of the --

13              THE COURT:  From April 30th?  What were you going to

14    do?

15              MR. NELSON:  I learned about it late on the -- I

16    planned to come, but as it turned out, that system that wiped

17    out the panhandle is wiping out Tampa today, and it took me

18    longer to fly here from Tampa than it took these folks to fly

19    here from Ohio.

20              THE COURT:  You should have driven on I-75.

21              MR. NELSON:  I should have.  I sat in the plane for

22    three hours.

23              THE COURT:  On a short flight, they're not worth it.

24              MR. NELSON:  You're right.

25              THE COURT:  And I think -- but that's up to you.  You
```

1   all do whatever you want.  But I had to bring you here in any

2   event.  The reason is -- it's not your motion.  So, on the one

3   hand, I feel a little bad because it wasn't your motion; but, on

4   the other hand, one of the reasons that is being discussed, a

5   question of subject matter jurisdiction, someone else has

6   personal jurisdiction, who is going to be deposed, what is the

7   impact on it, and I hate doing that without one side or the

8   other because it may have an impact.  That's the reason I needed

9   everybody here.  And I've got a bunch of these Diamond cases.

10          Now this one is the one that remember what I did, I

11  said plaintiffs pick a couple, defendants pick a couple.  Who

12  picked this one?  This is a plaintiff's selection, right?

13          MR. GRIM:  That's correct, Your Honor.

14          THE COURT:  So it should be a better case for you.

15          MR. GRIM:  Correct.

16          THE COURT:  Even on jurisdiction.  Okay.  Grab the

17  microphone and let's chat a little bit.  Okay?

18          MR. GRIM:  Okay, Your Honor.

19          THE COURT:  All right.  Now, we've got on the discovery

20  and the deposition, it seems like you've even agreed on it

21  already, right?

22          MR. GRIM:  That's correct.

23          THE COURT:  But you couldn't agree until I scheduled a

24  hearing.

25          MR. GRIM:  Well, to be clear --

 1          THE COURT:  Mr. Reid, grab the other microphone so I
 2  have both of you.  It's not an appellate court.
 3          MR. GRIM:  To be clear, Your Honor, we have been
 4  working with Mr. Nelson, who represents both Diamond USA and
 5  Diamond Canada on completing all the various depositions.
 6          THE COURT:  I don't want to know that.  I want to know
 7  about the Austrian depo.
 8          MR. GRIM:  Okay.
 9          THE COURT:  I don't want you to tell me you've been
10  doing great before.  I assume everything you're doing is great.
11  You all are flying all over the place.  You all are working and
12  you're all wonderful.  I really mean that.
13          MR. GRIM:  The issue with the Austrian depo is that
14  although --
15          THE COURT:  How are you going to resolve it?  You want
16  to take it over there; am I right?
17          MR. GRIM:  We would be willing to go to Austria to take
18  the deposition; that's correct.
19          THE COURT:  Okay.  And that would resolve the issue?
20          MR. REID:  Not quite, but this is a proposal.
21          THE COURT:  You wanted to do it in Miami?
22          MR. REID:  No, I want to do it -- I don't want to do it
23  in Austria if it's done.  This is my proposal:
24          THE COURT:  You know, if you go to Vienna, stay in the
25  Imperial Hotel.  It's the best place.

Motion for Protective Order

1      MR. REID:  I'll make a note of that.

2      THE COURT:  Imperial.  It's easy to remember.

3      MR. REID:  My proposal was that for this deposition and

4  there's some discovery that's outstanding --

5      THE COURT:  I know, but I just want to know about the

6  depo.

7      MR. REID:  This deposition, we would be willing to --

8      THE COURT:  The discovery that's outstanding, I can

9  just extend it those extra five days, and it's resolved, right?

10      MR. REID:  That part is resolved.  We have a motion, as

11  you know, to stay discovery.

12      THE COURT:  I understand.  I don't want to get to that

13  yet.

14      MR. REID:  Well, what I'm saying is, we would be

15  willing to extend the discovery cutoff for this one deposition

16  until after you ruled on the motions to dismiss.

17      THE COURT:  I know you want that.

18      MR. REID:  I think they've agreed to that, too.  I

19  think we would agree -- I have the sense, we would both agree.

20  That way we'd get this deposition done after you had time.

21      THE COURT:  Maybe.  Well, I've had plenty of time.  And

22  I've read everything.  In fact, if you're ready, I'll hear what

23  you have to say about that since I brought you all the way over

24  here and you want to add more than what you've written.  .

25      But the deposition in Austria would have no impact on

1   the other two defendants?

2            MR. GRIM:  That's correct.

3            THE COURT:  Everybody agrees with that, right?  The

4   other two defendants agree?  You're not even going to show up in

5   Austria, right?  You don't even want to come to Miami.  You can

6   grab that.  You can stand with whoever you want to be with.  I

7   suspect you probably want to be with the defendants, right?

8            MR. GRIM:  I spent a lot of time with this fellow over

9   the last five weeks, that's correct.

10           THE COURT:  Okay.

11           MR. NELSON:  The deposition of the Austrian --

12           THE COURT:  You're not going to go there, right?

13           MR. NELSON:  I probably would not go, but it will have

14  a potential impact on my clients.  Because of the way the three

15  more recent Complaints are alleged, it ties everything from the

16  Austrian company funneling through the other company, so that it

17  will have an impact on my clients.

18           THE COURT:  On the other Complaints that are in civil

19  suspense or that are open?

20           MR. NELSON:  That are open.  It will have an effect on

21  all three defendants.

22           THE COURT:  And you're going to depose that individual

23  in Austria on the other cases more than once or you want to do

24  it all in one shot?

25           MR. GRIM:  I think from a plaintiff's perspective, Your

1    Honor --

2            THE COURT:  No, I know you want to, but I want to know

3    what the codefendants want to do.

4            MR. NELSON:  This is the gentleman who will depose

5    them.

6            THE COURT:  I understand, so you don't ask any

7    questions when you go there.

8            MR. NELSON:  Maybe.

9            THE COURT:  In other words, he deposes him.  Mr. Reid

10   decides whether he's going to ask his own client any questions.

11   That's why I'm asking you what impact it would have on you.

12           MR. NELSON:  That depends on the scope of the

13   deposition.

14           THE COURT:  Let's say the scope is everything, both

15   jurisdictional and substantive, and then what?

16           MR. NELSON:  Then it has a propound effect on all three

17   defendants.

18           THE COURT:  Which is why I wanted you to tell me that.

19   So the question is whether we should have a deposition that is

20   limited in the first place.  Does that really make sense when

21   perhaps we will have to do it twice?  And it's so far away.

22   Does that make sense?

23           MR. REID:  Yes, sir.  That was the reason for my --

24           THE COURT:  You do want to do that?

25           MR. REID:  I'm sorry.  If we're going to stay in the

1    case --

2         THE COURT:  No, I know about you, but the codefendants,

3    the codefendants is the issue.

4         MR. NELSON:  Okay.  In the first instance, Your Honor,

5    it seems that that deposition probably isn't even necessary for

6    the jurisdictional issues that have been raised.  It would be

7    profoundly important for the substantive issues that --

8         THE COURT:  So you want to be there?

9         MR. NELSON:  -- would be raised.  I would certainly

10   like to be there.

11        THE COURT:  Okay.

12        MR. NELSON:  And there's no doubt about that.

13        THE COURT:  All right.  Okay.  That makes sense.

14   That's what I thought.

15        Now, it's going to cost a lot of time and money to go

16   over there.  And then -- which is why many times, we stay

17   matters.  But most of the time, judges don't want to stay things

18   because if they stay things, it means you work on the cases of

19   the other judges who are pushing.  There seems to be some

20   jurisdictional issues here on diversity of jurisdiction, right?

21        MR. GRIM:  Correct.

22        THE COURT:  And if the defendants are right, then where

23   do you go?  In other words, if I believe that there's no

24   diversity because I find that the real party at interest for the

25   plaintiff is Danish, right --

Motion for Protective Order

1    MR. GRIM:  Correct.

2    THE COURT:  -- then we don't have diversity, right?

3    MR. GRIM:  Correct.

4    THE COURT:  Okay.  And is there a dispute -- there's

5    not a dispute of the facts.  It's really a question of law.

6    Agree?

7    MR. GRIM:  Correct.

8    THE COURT:  So I could rule on it right now.

9    MR. GRIM:  That's true.

10   THE COURT:  See, it's kind of good.  I still remember

11   how to ask leading questions, right?  But you can explain, if

12   you want, like they do at trial.

13   All right.  Now, it wouldn't help you if I send you all

14   the way to Austria, you spend all that money and then I said,

15   you know what?  This fellow is really the guy, Iversen, and he's

16   Dane, and you've got to go to State court, I guess.  Where would

17   you go?  To Florida or Wyoming?  Where would you go?

18   MR. GRIM:  We would have to go to Florida State court.

19   It would still be the trustee that has to maintain the suit, but

20   it would continue on in State court.

21   THE COURT:  Okay.  And then you would still -- would

22   you need to take his deposition in any event?

23   MR. GRIM:  Yes.

24   THE COURT:  So if you took his deposition now and I

25   still found that there's no subject matter jurisdiction, putting

Motion for Protective Order

```
 1   aside the personal jurisdiction issue, which, of course, you can
 2   talk about it, you wouldn't take his depo again if the case is
 3   filed in State court, right?
 4        MR. GRIM:  Would we take it again?
 5        THE COURT:  Yeah.
 6        MR. GRIM:  No, we'd try not to.
 7        THE COURT:  So there's no harm.  There's no reason to
 8   delay it, see?  I'm helping a State court judge if you win here,
 9   right?
10        MR. REID:  Maybe.  I am not sure.  That would be an
11   interesting question as to what --
12        THE COURT:  Well, that's why I ask an interesting
13   question.  Give me an interesting answer.  I'm trying to be
14   practical.  I want to save you time and money.
15        MR. REID:  I know.  Practically speaking, if that
16   deposition would automatically be admissible in the State court
17   case.  There's also statute of limitations issues that we have
18   in this case.
19        THE COURT:  Well, you don't worry about that.  He cares
20   about that.
21        MR. REID:  Sure.
22        THE COURT:  Is there a statute of limitations issue?
23        MR. REID:  In this case.
24        MR. GRIM:  We've argued that there's a relation back,
25   but they have raised those issues and they've re-raised them, I
```

1    think, in the Canada issue.

2         But to clarify to Your Honor, if we went over, because

3    of the issues you've raised about going over there, the time and

4    expense, the other two active cases that do not have the

5    diversity jurisdiction issue in front of you, we would still use

6    the deposition in those cases.  So regardless of how you found

7    with regard to the current --

8         THE COURT:  You're going to question this fellow in

9    Austria in any event?

10        MR. GRIM:  Exactly, for all three cases.

11        THE COURT:  And you are not going to do it three times?

12        MR. GRIM:  No.

13        THE COURT:  You're going to do it all in one shot?

14        So it's not that unique case where I have to stay it

15   while I rule on this because you're going to do that in any

16   event?

17        MR. GRIM:  Correct.

18        THE COURT:  Not just for the possible State case, if

19   there is one, but for my own cases, right?

20        MR. GRIM:  Correct.

21        THE COURT:  So there's no need to stay anything, right?

22        MR. REID:  If we're dismissed from the case, we have a

23   different situation.  That's why --

24        THE COURT:  Because it saves your client money.

25        MR. REID:  Then he would have to figure out how to get

1    the proper service and do all the things he would have to do to

2    get this Austrian citizen to testify.

3              THE COURT:  That's true.

4              MR. REID:  So, yeah, that's the reason for our motion,

5    Your Honor.  That's why we asked for a very limited relief.

6              THE COURT:  Of course, right now, he could take the

7    deposition and then he would know and it would help him in the

8    other cases.  He wouldn't have to argue that.

9              MR. REID:  If you ordered the deposition to go forward

10   in Germany, I mean, in Austria --

11             THE COURT:  Sometimes they think they're the same

12   thing, not all the time.

13             MR. REID:  You know, that's up to you.  It's your

14   discretion, obviously, but it just seems to us that the logical

15   way -- that's why I suggested yesterday -- would be to put just

16   this one piece of the discovery off that could be extended

17   beyond the 22nd, and I don't think they're asking to extend the

18   other discovery, put this off until you ruled on our motion.

19             There are lots of problems that we have to get ready

20   for a case like this in two months.

21             THE COURT:  That's why I don't like to put it off

22   because you've got a September trial date.

23             MR. REID:  Yeah, and I mean, we're going to have to

24   face that down the road somewhere as to what to do about that.

25   That's not for today obviously.

1        THE COURT:  What to do about what?

2        MR. REID:  We're prejudiced by only having two months

3   to get ready for --

4        THE COURT:  Oh, no, you're not.  Two months?

5        MR. REID:  Yeah.

6        THE COURT:  You haven't done anything in this case in

7   the past?

8        MR. REID:  No, we just were served.  I believe it was

9   70 days from --

10       THE COURT:  From March, was it?

11       MR. REID:  Right.

12       THE COURT:  March, April, May, June, July, August,

13  September, seven months.  That is above the average age of the

14  cases in the entire district, let alone in this division.

15       MR. REID:  Sure.  I think the Court can appreciate the

16  fact that we don't believe there's jurisdiction and we don't

17  believe there's --

18       THE COURT:  That's a big point.

19       MR. REID:  And the depositions were only set, I forget

20  when -- I think they were noticed in April.

21       THE COURT:  Well, he couldn't notice it too much

22  earlier, could he?

23       MR. REID:  So like a few weeks ago.

24       THE COURT:  Okay.  You wanted him to do it earlier?

25       MR. REID:  Well, we would have been here earlier having

1    the same discussion.  I was trying to come up with a way that

2    might satisfy all of the interests.  That's why I made that

3    proposal yesterday.

4           THE COURT:  Delays always are an enigma to me,

5    especially on a case that is technically an '11 case.  So now it

6    shows on my books as a three-year-old case, something that I

7    don't have.  Okay.  On the more important issue of diversity,

8    what am I going to do about this?  Because I think there's an

9    issue here with Continent Aircraft Trust and Iversen.   You

10   don't think there's an issue?

11          MR. GRIM:  We believe that the trustee, under the

12   applicable standards, both the Federal rules, as well as the

13   Florida substantive law is the real party in interest, and

14   actually, Mr. Nelson, on behalf of both USA and Canada argued a

15   year ago that he too felt that that was the real party in

16   interest, which is why we did an Amended Complaint to move from

17   the trust to the trustee.

18          THE COURT:  And then you disagree, obviously?

19          MR. REID:  Of course, because there's Navarro Savings

20   and the Airlines Reporting cases, both which say there's a

21   difference between the real party in interest pursuant to Rule

22   17 and the party who's the real party to this controversy for

23   diversity purposes, and the argument they make is that as long

24   as he has the authority, the trustee has the authority to do all

25   these things --

 1          THE COURT:  Doesn't he have the authority to do --

 2          MR. GRIM:  He does.  By contract, he does --

 3          MR. REID:  He does not.

 4          MR. GRIM:  -- and by Wyoming law.

 5          THE COURT:  Hold on.  One at a time.  I interrupt a

 6  lot, but if you interrupt each other, the court reporter goes on

 7  strike.

 8          MR. REID:  6.4(b) of the Trust Agreement that we've

 9  attached says that the trustee can only sell, mortgage, pledge

10  or dispose with the beneficiary's permission.

11          So this is not a case where the trustee has free reign

12  to do all these things.  It's still with the beneficiary.

13  That's the basis for our position on standing.

14          THE COURT:  Now, if I agree with you, then what

15  happens?  He's out.  And then we're ready to go to trial after

16  you finish the discovery in September?

17          MR. REID:  The other two cases that are --

18          THE COURT:  I deal with one case at a time.

19          MR. REID:  Okay.  Fine.

20          THE COURT:  In this case, you're out, right?  You're

21  out if I agree with you.

22          MR. REID:  I'll stand over here.

23          THE COURT:  So you have nothing to say in this case?

24          MR. NELSON:  We'd be ready.

25          THE COURT:  You'll be ready.  And you will be ready.

1          MR. GRIM:  We'll be ready.

2          THE COURT:  That's where I'm leaning.  So anything else

3  you want to argue regarding the motion to dismiss?

4          I mean, you can tell me about Riley, Emerald Investors,

5  the Third Circuit, the Eleventh Circuit, but you've put it all

6  in writing about the power of the trustee, the domicile of all

7  of that.  I mean, that's how most judges have hearings.  You

8  just regurgitate what you put in writing, and if that makes you

9  feel good, I will let you do it, but I've read it all.

10         You can tell, I've got a concern, but I wanted to give

11  you a shot and see what the impact was of any decision that I

12  would make.  I understand that it impacts other cases, but I've

13  got to divide and conquer.

14         MR. GRIM:  Sure.

15         THE COURT:  You don't, but I do.

16         MR. NELSON:  May I make one point?  Subject to my last

17  comment --

18         THE COURT:  It took you longer than anybody, so you

19  should.

20         MR. NELSON:  If this case, the Aircraft Guaranty case

21  is dismissed based on a lack of subject matter jurisdiction,

22  that case goes away entirely and so, no, it wouldn't be tried in

23  September.  That leaves the other two cases.

24         THE COURT:  Because we have a Canadian defendant as

25  well?

1          MR. NELSON:  That's right.

2          THE COURT:  So what if you dismissed against and just

3    went against the American company?

4          MR. GRIM:  Well, they've made it clear that the

5    American company has no assets, no employees, no way to fulfill

6    any kind of --

7          THE COURT:  So that would be kind of dumb.

8          MR. GRIM:  It would be kind of a waste of effort.

9          THE COURT:  There won't be any trial.  There's no point

10   in having any discovery and wasting time and money in Austria or

11   in even Miami or Tampa, or Baltimore, or Canada, right?

12         MR. GRIM:  Well, we would refile the case in Florida

13   State court.

14         THE COURT:  You may have a statute of limitations, but

15   you'll argue before a wiser judge in State court, right?

16         MR. GRIM:  No, we would look at our options in State

17   court.  We wouldn't simply just walk away.  So a lot of this

18   stuff that we've done is --

19         THE COURT:  For not?

20         MR. GRIM:  -- not for not.

21         THE COURT:  Okay.  All right.  So it would take care of

22   the whole case, not just Mr. Reid's client, but the Canadians

23   and the Americans.

24         MR. NELSON:  That's correct, Your Honor.

25         THE COURT:  So it is a big thing.  And have you

1  scheduled anything yet for May?  I know there was a date that

2  you wanted to be in Vienna.  May what?  The 20th or something

3  like that?

4       MR. REID:  None of the dates we discussed have worked

5  out.

6       THE COURT:  Someone offered May 20th, 21st?

7       MR. REID:  They did and that didn't work for us, and

8  then the date that they had offered didn't work or the date we

9  had offered initially didn't work for them, so --

10       THE COURT:  So how did you offer to extend this and say

11  what?

12       MR. REID:  I said that we could take it as soon as you

13  ruled on the -- if we were still in the case after your rulings

14  on the motions, we would agree on a date.

15       THE COURT:  But you couldn't even agree before I ruled.

16  Why after I ruled would you agree?

17       MR. REID:  Well, no, we just picked dates out of the

18  air and said, will these work?  I mean, if it had been two days

19  later, it might have worked.  It wasn't that we were being

20  contentious about it.  It was just that we each picked dates

21  that just happened to be a problem.

22       In our case, it's the Berlin Air Show, the guy that we

23  would produce is there, so ...

24       THE COURT:  There was a conflict.  You think you can

25  pick a date?

1            MR. GRIM:  Correct.  I think the bigger, more

2       fundamental issue is not just picking a date to do the

3       deposition, but the scope of the deposition.  Obviously, a

4       deposition solely limited to jurisdictional issues --

5            THE COURT:  How much longer or wider would be the

6       questioning if it was substantive, and what is the impact on the

7       other cases?  Can you tell me the numbers of the cases, the case

8       numbers of the ones that you think this would have an impact on

9       that are open, that you all have chosen?  So that way, I keep

10      track.

11           MR. REID:  Just so you know, I'm not in those.

12           THE COURT:  I know.  My clerk said it's 11-61670 and

13      11-61684.

14           MR. GRIM:  Correct.

15           THE COURT:  Those are it?

16           Okay.  And those cases, they're set for trial already?

17           MR. GRIM:  September 22nd.

18           THE COURT:  Also.  And you don't have any discovery

19      disputes there?  We don't have any pending motions?

20           MR. GRIM:  No, not for those cases, no.

21           THE COURT:  Right?  So you're ready to go.  So you will

22      be in trial in September.

23           MR. NELSON:  In these other two.

24           THE COURT:  On these other cases.

25           MR. NELSON:  On these other two cases, certainly.

1          THE COURT:  Because there's no jurisdictional issues?

2          MR. NELSON:  That's correct, Your Honor.

3          THE COURT:  And you don't need to take any depositions

4    in Austria or ask subsequent questions?

5          MR. NELSON:  Well, if the deposition is taken in the

6    other two cases, then most certainly, someone would need to

7    defend that deposition.

8          THE COURT:  And do you need to ask questions of the

9    Austrian representative in these other two cases?

10         MR. GRIM:  Yes.

11         THE COURT:  You do.  And that has not been scheduled?

12         MR. GRIM:  It has not been scheduled.

13         THE COURT:  Because you may not even be able -- how

14   would you be able to do that if I dismiss this case?

15         MR. GRIM:  With regard to the current case?

16         THE COURT:  No.  Let's say if I were to dismiss it

17   today, which I'm not going to do, okay, so you can relax, but

18   I'm telegraphing the concerns that I have, so you don't get

19   sandbagged.  But I dismiss it.  Everybody is gone and this case

20   is closed.  You go up to the Court of Appeals and say, hey, the

21   judge got the rules and the cases wrong, et cetera.  You can do

22   that.  With these two cases, you want to take the Austrian's

23   deposition.

24         MR. GRIM:  Correct.

25         THE COURT:  And the Austrian is going to say you can't

1    do it; how are you going to do it?

2              And how are you going to do it?

3              MR. GRIM:  Because they're not a party to the case yet

4    because the letters rogatory.

5              THE COURT:  Yeah, they're not a party to that case.

6    You go through the Hague Convention, which takes forever.  You

7    could --

8              MR. GRIM:  Well, the service of process for the second

9    two of the three cases, it's already been in work, and based on

10   our calculations, should have already been served, but we won't

11   know that.  The process takes, from beginning to end,

12   approximately six months, about three months to get through the

13   process to actually be served and another three months before we

14   have notice.

15             So Mr. Reid and his client would actually know whether

16   they are served with the Complaint two-and-a-half months before

17   we'll ever know because it works back through diplomatic

18   channels.

19             THE COURT:  That has already been done?  Mr. Reid, do

20   you know?

21             MR. NELSON:  I know more about that, Your Honor.

22             THE COURT:  Okay.  Sure.

23             MR. NELSON:  Because we are anticipating service in the

24   other two cases.  That's a concern to me.  The first case that

25   was served, in fact, we advised counsel for plaintiff of that.

1  That's how they learned of it the day after it was served.  And

2  as far as we can tell, that's the only one that has been served.

3          THE COURT:  Which one is that one?

4          MR. NELSON:  The one we're here about today, Aircraft

5  Guaranty.

6          THE COURT:  Oh, this one, okay.

7          MR. NELSON:  That's the only one that has been served.

8  Now, if the other two are served, we will, as a professional

9  courtesy, do as we did with the last one and tell them

10 immediately.  But so far, they have not been served.

11         THE COURT:  So we're talking about -- and you think it

12 would take how much time after they have been served?  You would

13 be ready?

14         MR. NELSON:  For?

15         THE COURT:  For whatever.

16         MR. NELSON:  For whatever, certainly.

17         MR. REID:  Well, that has to do with me.

18         MR. NELSON:  Oh, that has to do with you.  I'm sorry.

19         THE COURT:  You're going to be ready.

20         MR. REID:  I'm going to move to dismiss for personal

21 jurisdiction on the same grounds.

22         THE COURT:  And some judge might say, well, I don't

23 know.  Maybe you have to take a deposition to see whether

24 there's personal jurisdiction because unless there's agreed upon

25 facts -- right?  Right?

Motion for Protective Order

1        MR. REID:  Well, we have filed an affidavit, which

2   we'll file again in the next case, and they have presented no

3   contrary evidence, even though the burden switches to them.

4        THE COURT:  So what would you do?

5        MR. GRIM:  Well, I refute that position.  We filed

6   several bits of information in response to the declaration.

7        THE COURT:  Regarding contacts.

8        MR. GRIM:  Regarding -- right, exactly.  We would do

9   the same with regard to the other two cases.

10       THE COURT:  But you wouldn't need to take any

11  jurisdictional deposition?

12       MR. GRIM:  No, because --

13       THE COURT:  You wouldn't want to?

14       MR. GRIM:  No, because we don't think that would be of

15  any use to anybody's time.

16       THE COURT:  All right.  Okay.  But we can't do that --

17       MR. GRIM:  Correct.

18       THE COURT:  -- until -- what would be your guess?

19       MR. GRIM:  Two weeks ago based on our calculation.

20       THE COURT:  Two weeks ago.  Okay.

21       MR. GRIM:  My point being is that the Austrian process,

22  they don't --

23       THE COURT:  These foreign cases, and then they move at

24  the European pace.  That's really what happens.

25       MR. GRIM:  Yes.  And based on the way the first case

1  service went, it was about 10 weeks.

2          THE COURT:  You did something to the mic.

3          MR. NELSON:  I am vibrating.

4          THE COURT:  No problem.  I'm sorry.

5          MR. GRIM:  I was saying based on our experience with

6  the letters rogatory process in Austria, it takes about 10 weeks

7  from the time it got to the justice department.  That time has

8  far past for the other two to actually have the defendant be

9  served.  So that's why I said, it could be any moment that it

10  actually gets served.  But we don't know that.  We don't know

11  that.

12          THE COURT:  So what do you want to do?

13          MR. GRIM:  We would like --

14          THE COURT:  You're the one who invited us to this

15  party.

16          MR. GRIM:  Well, actually --

17          THE COURT:  Well, originally.

18          MR. GRIM:  Oh, you mean the defendant?

19          We would be willing to file whatever the Court's order

20  is as it relates to scheduling, as we have been attempting to do

21  over the last several weeks with the depositions.  If the Court

22  sees fit to hold the deposition of the 30(b)(6) until such time

23  as the rulings on jurisdiction, that would be amenable to us.

24          THE COURT:  Well, I can rule on the subject matter

25  jurisdiction quickly, but I can't rule on something -- I'm

1   quick, but I can't be that quick.  I've got to wait until a

2   motion is filed before I can grant it or deny it.  Even I have

3   to do that.

4          We do have trial dates, because if I don't give you a

5   date, you all do something else.

6          MR. GRIM:  Correct.

7          THE COURT:  So what would be your suggestion?

8          Mr. Reid's suggestion is don't do anything, stay

9   everything, give us a ruling and then that starts a new clock.

10         MR. GRIM:  Well, with regard to the stay, I think that

11  almost as soon as the stay would be entered, it would be -- the

12  clock would begin running on their 21-day response to the

13  service because it literally should be at any moment.

14         THE COURT:  Okay.  You're that optimistic, huh?

15         MR. GRIM:  What's that?

16         THE COURT:  You're that optimistic, huh?

17         MR. GRIM:  Well, it's the Austrian system.  And

18  likewise, if the Court was inclined to dismiss the case on the

19  basis of lack of diversity, we would appreciate the opportunity

20  to consider dropping the other two foreign defendants to keep

21  the case moving as opposed to refiling in State court.

22         THE COURT:  Well, in this case --

23         MR. GRIM:  Yes.

24         THE COURT:  Well, who would be left?

25         MR. GRIM:  USA.

```
 1            THE COURT:  But you told me they didn't have any money.

 2            MR. GRIM:  Well, as Mr. Nelson pointed out, they're all

 3   controlled by the same individual.

 4            THE COURT:  So you would still pursue it?

 5            MR. GRIM:  You would still -- we would ask, if the

 6   Court was inclined to dismiss the case --

 7            THE COURT:  This is why I like oral hearings because I

 8   never get all of that.

 9            MR. REID:  Mr. Nelson doesn't speak for me, and if he

10   said that, I don't think he did in --

11            MR. NELSON:  Mr. Nelson didn't say that this person

12   speaks for all of the defendants.

13            THE COURT:  Okay.

14            MR. GRIM:  My point being is that it's been our

15   position throughout the entirety of all these cases, that all

16   three entities are controlled by one individual who owns, at

17   this point, Diamond Austria.

18            THE COURT:  Who is that?

19            MR. GRIM:  Christian Dries.

20            THE COURT:  And he's the one you want to depose?

21            MR. GRIM:  Actually, we don't.

22            We want to depose a 30(b)(6).  They put up Christian

23   Dries.  We would just want a 30(b)(6) representative for

24   Austria.

25            THE COURT:  Whoever they pick?
```

1        MR. GRIM:  Whoever they pick.

2        And I guess our position would be that the way that we

3   have pled the cases is that all three companies acted in concert

4   to perpetuate the fraud and the negligence that we claim in the

5   Complaints, but if having the two foreign defendants would

6   destroy diversity jurisdiction, we would rather have the

7   opportunity to dismiss the cases as it relates to those two

8   parties and continue on.

9        THE COURT:  And the other two cases that are set for

10  September, the 11-61670 and 11-61684, which one would you rather

11  go to trial on?  Did you pick those or did the defendants pick

12  them?

13       MR. GRIM:  It would be 61684.

14       THE COURT:  Okay.  And who are the defendants in that

15  one?

16       MR. NELSON:  All three cases share the same defendants.

17       THE COURT:  And the same lawyers?

18       MR. NELSON:  I beg your pardon?

19       THE COURT:  Same lawyers?

20       MR. NELSON:  Same lawyers.

21       THE COURT:  And same trial date?

22       MR. NELSON:  Same trial date.

23       THE COURT:  So I'm going to see you in September no

24  matter what I do, right?

25       MR. GRIM:  Correct.

```
 1          MR. NELSON:  We still get to file motions for summary
 2   judgment, Your Honor, so --
 3          THE COURT:  Well, if I don't extend discovery, though,
 4   right?  Discovery ends when?
 5          MR. NELSON:  May 22nd and that's --
 6          THE COURT:  That's around the corner.
 7          MR. NELSON:  That's the momentary crisis, but I think
 8   the Federal rules say that a motion for summary judgment can be
 9   filed at any time.
10          THE COURT:  Yeah, yeah, I know, but then the later it's
11   filed, the easier it is to deny it and to do it as a motion for
12   judgment as a matter of law, right?  But I want to do this right
13   and I want to do things that help you all.  So I'll hear from
14   each one of you, again, what you want me to do, and then I'll
15   tell you what I think I'm going to do.
16          MR. GRIM:  Well, one thought that we would have is that
17   if you could keep the current case open and allow us to take the
18   30(b)(6) deposition, it would help expedite the entire process
19   not just for these three cases, but hopefully, for the other 14
20   that are currently held in abeyance on the docket because
21   eventually, as Your Honor has pointed out on a number of
22   occasions during this hearing, it's going to have to happen
23   unless --
24          THE COURT:  Unless there's no jurisdiction.
25          MR. GRIM:  -- unless there is no personal jurisdiction.
```

```
 1            THE COURT:  It's kind of looking the other way,

 2   bypassing personal jurisdiction, subject matter jurisdiction,

 3   being overly practical, we have got it all and then we can rule

 4   on it with the content of that 30(b)(6) depo.  If the defendants

 5   win on a motion to dismiss, they're not going to complain

 6   anyway.

 7            MR. GRIM:  Correct.

 8            THE COURT:  And that's gone, but it helps with the

 9   other cases.

10            MR. GRIM:  Correct.

11            THE COURT:  And the opposite view is?

12            MR. REID:  Is that we shouldn't have to go to the

13   trouble and expense of preparing for a deposition until you've

14   ruled on this jurisdiction.

15            THE COURT:  But that's what every defense lawyer says

16   in every case, though.

17            MR. REID:  But you've said in some of your writings

18   that questions of standing and venue are threshold issues that

19   warrant the delay of discovery.

20            THE COURT:  Yeah, the Court of Appeals says that, too.

21   That's why I say that.

22            MR. REID:  So --

23            THE COURT:  Well, I am going to rule by next week

24   anyway, so it will be taken care of one way or another.

25            How about any personal conflicts with May or do you
```

 1   need any help in picking dates, or you can do that on your own,

 2   or any extensions of anything?

 3        MR. GRIM:  We are ready to go whenever.

 4        MR. REID:  The days we've picked didn't work, but

 5   counsel may have some issues.  I don't know, but I'll have to go

 6   back and look at the calendar.

 7        THE COURT:  Mr. McGrath, Nelson and Reid, you can speak

 8   up now or forever hold your peace.

 9        MR. NELSON:  I am completely conflicted until about the

10   end of the second week in June, completely conflicted.  Now,

11   like I said, Your Honor, I may not even go if Mr. Reid is still

12   in the case, but if he's still in the case --

13        THE COURT:  You may not even go.

14        MR. NELSON:  I may not even go.

15        THE COURT:  To where?

16        MR. NELSON:  To Austria to take the deposition if it

17   takes place.

18        THE COURT:  Because he can cover for you.

19        MR. NELSON:  That's right.

20        THE COURT:  Wouldn't you prefer that?

21        MR. NELSON:  I love the Imperial Hotel in Vienna.

22        THE COURT:  That is a nice place.

23        MR. REID:  Obviously, I need to talk to the deponent,

24   but --

25        THE COURT:  Whether he's available before you pick a

1   date.

2          MR. REID:  Yeah.  The last couple of weeks in May,

3   after the 22nd, I know the witness wasn't available.

4          THE COURT:  Well, you want to do it before the summer

5   kicks in because Europe is still very traditional, but Austrians

6   less so.

7          Okay.  Anything else that anybody wants to say about

8   anything related to this case or the other?

9          MR. REID:  Did you want to hear anything about the

10  personal jurisdiction issues or the other briefing?

11         THE COURT:  Well, you know, the problem is, it's not

12  really -- which motion is that?

13         MR. REID:  That's the Motion to Dismiss for Lack of

14  Personal Jurisdiction based on the recent Supreme Court case,

15  Belm (phonetic) versus Mercedes.

16         THE COURT:  Which is a big case.

17         MR. REID:  It changes the rules.

18         THE COURT:  It explains the rules.  I don't know if it

19  changes the rules.

20         MR. REID:  We briefed that fully, both sides have.  We

21  briefed Belm.

22         THE COURT:  I didn't want to deal with that if I have

23  an issue with subject matter jurisdiction.

24         MR. REID:  Sure, makes sense.

25         THE COURT:  But then you're going to repeat that

```
 1   argument later on representing a witness, right?
 2        MR. REID:  I don't get your point.
 3        THE COURT:  Because it's the same individual.  It's not
 4   going to be the same individual who's going to be deposed?
 5        MR. REID:  The 30(b)(6) --
 6        THE COURT:  Who is it going to be?
 7        MR. REID:  It's going to be Mr. Dries.  That was my
 8   current plan.  If we end up totally slammed and we can't get
 9   him, I might have to look for somebody else, but that's the
10   current plan.
11        THE COURT:  So it's the same person no matter what.
12        MR. REID:  Sure.
13        THE COURT:  Right?
14        MR. REID:  But that doesn't deal with the issue of
15   whether we're in or out of the case, obviously.
16        THE COURT:  No, but if I rule that there's no subject
17   matter jurisdiction, I don't have to deal with personal
18   jurisdiction.
19        MR. REID:  Right.
20        THE COURT:  Who would have to deal with personal
21   jurisdiction?
22        MR. REID:  You don't.
23        THE COURT:  Who would?
24        MR. REID:  An appellate court might.
25        THE COURT:  Well, the appellate court might without a
```

Motion for Protective Order

1    ruling from me?

2              MR. REID:  Actually, I have a case where that happened.

3              THE COURT:  No, because they can always deal with

4    jurisdiction.

5              MR. REID:  Yeah, yeah, but anyway --

6              THE COURT:  So I should deal with personal

7    jurisdiction, and there are no additional facts except what is

8    presented here.

9              MR. REID:  Correct.

10             MR. GRIM:  Other than what was presented.

11             MR. REID:  And we briefed it fully.

12             MR. GRIM:  We think it's been fully briefed.

13             THE COURT:  All right.  Do you want to say anything

14   about that or just rest on the pleadings?

15             MR. GRIM:  Well, I mean, as we said, we realized that

16   the beneficiary, they relied on deposition testimony of the

17   beneficiary, but he can't argue against the contract and the

18   agreement.  And Wyoming trust law puts certain powers within the

19   trustee, that the trustee is accountable to the Federal Aviation

20   Administration as an aircraft trust.  This is a fairly common

21   structure.

22             THE COURT:  Why was the reason it was created like

23   that, just for that purpose.

24             MR. GRIM:  That was the reason, that's correct, to

25   maintain the registration, correct.

1      THE COURT:  Period.  But he controls everything.

2      MR. GRIM:  Well, he controls it within the terms of the

3 Trust Agreement and certain requirements from the FAA as to who

4 has control over the asset.

5      THE COURT:  Who does have control over the asset?

6      MR. GRIM:  According to the Federal Aviation

7 Administration the trustee is accountable and responsible as the

8 owner of the asset.

9      THE COURT:  And that means what as far as personal

10 jurisdiction?

11      MR. GRIM:  Well, control -- well, as far as control of

12 the asset, to ensure that it's in compliance with the Federal

13 Aviation Regulations, that it's operated safely, that the

14 operations are conducted safely, the trustees held accountable

15 so that they can't just -- it just can't be a blanket trust

16 where they turn the keys over.  There's accountability from the

17 FAA on those kinds of issues.

18      THE COURT:  And that means what for jurisdictional

19 purposes?

20      MR. GRIM:  Well, it would be from a jurisdictional

21 standpoint, the Federal Aviation Administration looks to the

22 trustee as the ultimate control of the asset for all purposes

23 with the end registration.  It wouldn't be sufficient for the

24 trustee to say, well, it's really the beneficiary's issue.  The

25 FAA holds the trustee accountable for the whereabouts of the

Motion for Protective Order

1    asset and the maintenance and control of the asset.

2         THE COURT:  And that means that I have personal

3    jurisdiction?

4         MR. GRIM:  Well, that would be one of the indications

5    as well as there's a contractual agreement notwithstanding the

6    deposition testimony.  You know, a contractual agreement is

7    relatively straightforward, but the agreement between the

8    trustee and the beneficiary is that it's the trustee who is

9    responsible to manage.  Yes, there are provisions which are

10   fairly standard in any type of fiduciary relationship that the

11   trustee should seek out for the benefit of the beneficiary,

12   whether they're going to pledge the asset or mortgage and how

13   they handle funds, but those are relative.  Legally those

14   provisions are relatively standard in any type of expressed

15   trust.

16        THE COURT:  And that means what, that they're standard?

17        MR. GRIM:  For purposes of personal or diversity

18   jurisdiction, that you should look to the trustee as the

19   individual who's not just, from a Federal standpoint, who owns

20   and manages the asset but also from the substantive right.  I

21   mean, one of the issues under Florida law, as well, is that

22   ultimately it vests in the trustee the right to control the

23   litigation and to pursue the interest of the trust property from

24   a substantive standpoint.

25        THE COURT:  All right.  What do you want to say?

1          See, I really wasn't 100 percent -- I just wanted to do

2     the emergency discovery issue, but because everything seems to

3     be related, and I didn't want to mess things up for any of you

4     three, that's why I'm asking these other questions.

5          MR. NELSON:  This bit about the trustee and the trust

6     has nothing to do with personal jurisdiction at all.

7          THE COURT:  Don't you agree?

8          MR. NELSON:  Nothing.  That has to do with the subject

9     matter jurisdiction.

10         THE COURT:  The diversity; is he Danish, is he

11    Canadian, are they Americans, that type of thing.

12         MR. NELSON:  Exactly.  And what the cases say is that,

13    for diversity purposes, you look at who has the actual right to

14    control, you know, and --

15         THE COURT:  The guy who has the actual control is Dane,

16    right?

17         MR. NELSON:  Absolutely.  No question about it.

18         THE COURT:  And if you've got a Dane and a Canadian,

19    you're out of here.

20         MR. NELSON:  That's right.

21         THE COURT:  I mean, I won't write it like that, but

22    that's the bottom line.

23         MR. NELSON:  That would work.

24         THE COURT:  Okay.

25         MR. GRIM:  Well, and to that point, if the Court were

1    so inclined to rule that way, we would ask for leave to amend

2    the Complaint to drop the Canadian --

3              THE COURT:  Okay.  You said that.

4              MR. GRIM:  Yeah.

5              THE COURT:  All right.  Well, that's easy.  So if I do

6    that, that's what he's going to do.  Okay.  So that means, you

7    have USA.  Diamond Aircraft USA is still here, still ready to go

8    to trial, and we have no jurisdiction issues, including personal

9    jurisdiction right now because the only party is you, right?

10             MR. NELSON:  There's one big problem with that.

11             THE COURT:  Give me the big problem.  I will come up

12   with a big solution.

13             MR. NELSON:  If there is no diversity, there was no

14   diversity because it started off with a Dane and a Canadian, and

15   so there was no diversity when the case was filed, which means

16   the whole case needs to be dismissed.  And then if they can

17   avoid statute of limitations, then they can figure out what

18   they're going to do.  But if there is no subject matter

19   jurisdiction, that's it.

20             THE COURT:  I have to dismiss the entire case.

21             MR. NELSON:  That's correct, Your Honor.

22             THE COURT:  And the reason you want to amend the

23   Complaint is because of statute of limitations?

24             MR. GRIM:  Correct.

25             MR. NELSON:  But the problem with that is the Diamond

1   USA, the American company, has asserted a statute of limitations

2   defense because they just got brought in, although these folks

3   have known about them for four or five years.  So there's also a

4   statute of limitation defense there.

5           THE COURT:  Which you were going to file in a motion

6   for summary judgment.

7           MR. NELSON:  It's in the Motion to Dismiss already.

8   It's there.

9           THE COURT:  But it's disputed?

10          MR. NELSON:  Everything is disputed.

11          THE COURT:  And in the 11-61684 case, we have similar

12  issues?  We don't have any issues?

13          MR. GRIM:  No, we don't.

14          MR. NELSON:  We have no subject matter jurisdiction

15  issue.

16          THE COURT:  Okay.  No personal jurisdiction issues, no

17  statute of limitations issues, no amendment of Complaint issues,

18  no discovery issues.

19          MR. NELSON:  We have a statute of limitation issue as

20  to Diamond Aircraft Sales USA, Inc.  There's a statute of

21  limitations issue there.

22          THE COURT:  And the defendants there are Diamond

23  Aircraft Sales USA and who else?

24          MR. NELSON:  All three are defendants.

25          THE COURT:  All three.

```
 1          MR. NELSON:  Right, except that the Austrian Company

 2  has not been served.

 3          THE COURT:  It's going to be the same thing in all

 4  three cases, one way or another, right?

 5          MR. REID:  Well, not if we don't get served.

 6          THE COURT:  Pardon?

 7          MR. REID:  Not if we don't get served.

 8          THE COURT:  But you're going to get served.

 9          MR. REID:  We have the discovery cutoff and the trial

10  date.

11          THE COURT:  I can always extend discovery cutoffs.  I

12  mean, that's --

13          MR. GRIM:  And, Your Honor, with regard to the

14  discovery issue, regardless of how you rule in the current case

15  before you in this hearing today as it relates to personal

16  jurisdiction, discovery for all intent and purposes is complete.

17  The only thing left to do --

18          THE COURT:  You guys agree?

19          MR. NELSON:  I have one deposition scheduled week after

20  next, I believe.

21          MR. GRIM:  The 14th.

22          MR. NELSON:  The 14th, one, and that concludes it.

23          MR. GRIM:  Mr. Reid is in Diamond Austria in this

24  current case.  I've already received all our discovery even

25  though we haven't gotten any particular discovery request.  And
```

1    the only thing left to do is the 30(b)(6) for Austria and then

2    whatever discovery that they want to give us that's responsive

3    to the documents.

4           THE COURT:  Which means, the most practical thing, it

5    may not be the absolutely correct thing to do, but the most

6    practical thing is to do that and to resolve all the legal

7    issues that are interrelated with all three cases that involve

8    all the three defendants as opposed to dividing and conquering.

9    Normally, I divide and conquer, but the problem is if we divide

10   and conquer, it has such an impact on the others, we might as

11   well do it all together.

12          MR. NELSON:  Your Honor --

13          THE COURT:  Don't you think?

14          MR. NELSON:  -- that may be a very practical solution,

15   but if there is no subject matter jurisdiction, that is a

16   threshold issue and that really should be resolved before doing

17   the practical.

18          THE COURT:  You're right.  You're right.  But if you

19   win on that, at the end, you're not going to complain, are you?

20   You won't appeal.

21          MR. NELSON:  I won't appeal.

22          THE COURT:  No, you won't.

23          MR. REID:  And, of course, we do have the particular

24   specific personal jurisdictional issues as it applies to my

25   client.

 1              THE COURT:  Yeah.

 2              MR. REID:  Belm versus Baymar (phonetic).

 3              THE COURT:  But right now, we can decide that as it

 4    relates to this case.

 5              MR. REID:  We could, which is what we were hoping you

 6    would do.

 7              THE COURT:  In the first place.

 8              MR. REID:  Yeah, before we get into --

 9              THE COURT:  Why did I delay so much on this case?  Why

10    did I --

11              MR. GRIM:  Well, there was originally an issue with

12    improper joinder, that because of potential statute of

13    limitations implications for plaintiffs that aren't currently

14    before the Court, that are active, some of the cases that are

15    held in abeyance, it could have affected that.  So we had to

16    appeal that, hoping they would rule it was interlocutory.

17              THE COURT:  Oh, it went up on appeal.  That's right.

18              THE LAW CLERK:  When they added --

19              THE COURT:  Because of what?

20              THE LAW CLERK:  When they added the --

21              THE COURT:  Oh, because it takes so long when you have

22    a foreign defendant.

23              MR. GRIM:  Correct.

24              THE COURT:  And you don't go to mediation?  These are

25    one of the cases that are exempt?

1          MR. GRIM:  No, we have mediation currently scheduled

2     for all three cases for the Diamond Canada and Diamond US

3     defendants June 8th before mediator J. Fraxedas in Tampa.  June

4     18th, I'm sorry.

5          THE COURT:  Only for two out of three?

6          MR. GRIM:  All three.

7          THE COURT:  All three.  Well, I wouldn't want to

8     interfere with that, would I?  When is that set?

9          MR. NELSON:  I think you would want to, Your Honor.

10          THE COURT:  When is that set?

11          MR. GRIM:  June 18th.

12          MR. NELSON:  June 18th.

13          THE COURT:  June 18th.  Is it because you don't think

14     it would settle?

15          MR. NELSON:  I think it's very doubtful that it would

16     settle because of the current posture and because of the subject

17     matter jurisdiction issue and those are very, very critical.  I

18     really don't think that we even should be forced into mediation

19     until those threshold issues are resolved.

20          THE COURT:  But the problem is once there's a ruling,

21     one side or the other has a super upper hand.  There's no point

22     in going through mediation if there's no jurisdiction, right?

23          MR. NELSON:  Absolutely, Your Honor, and that's just

24     the way it works.

25          MR. GRIM:  Well, but with regard to that issue, there

Motion for Protective Order

1  has already been -- Diamond Canada never argued jurisdiction.

2  So regardless of the jurisdiction determination, that only

3  affects Diamond Austria.

4       THE COURT:  The other case.

5       MR. GRIM:  So we would still need to be mediating with

6  Diamond Canada.

7       MR. NELSON:  That's not true, Your Honor.  In this

8  case, the Aircraft Guaranty case, there is a Motion to Dismiss

9  for Lack of Subject Matter Jurisdiction pending on behalf of the

10  Diamond Canada, Diamond USA and Diamond Austria, all three

11  companies.

12       THE COURT:  But in the other cases.

13       MR. NELSON:  The other two cases, the only substantive

14  motion currently pending is to dismiss on statute of limitations

15  grounds for Diamond USA, and also in all of the cases, there are

16  motions to dismiss for failure to state a claim because of the

17  way they're alleged.

18       THE COURT:  But if I rule your way in those, and I

19  haven't looked at it, I'm being honest, okay -- the only reason

20  you are here is because it was quoted emergency and the dates.

21  If I do that and grant it, you can always amend that Complaint,

22  right?

23       MR. NELSON:  Certainly.  Certainly.

24       THE COURT:  So we're going to move this case probably

25  at the pace that they move some cases in the Middle District of

1    Florida, right?  You don't have to say anything.

2              MR. NELSON:  Thank you for that.

3              THE COURT:  You have the right to remain silent.

4    Anything you say can and will be used against you.  Sometimes we

5    move too fast.

6              Okay.  Anything else?

7              MR. GRIM:  No, Your Honor.

8              MR. REID:  No, sir.

9              THE COURT:  Okay.  I'll let you know what I think in

10   part at least by next week.  I may not rule on everything.  You

11   know, you don't have to do anything.  Well, are you doing

12   anything next week on this case, on these cases?

13             MR. GRIM:  Yes.  I'm sorry, not next week, week after

14   next.

15             MR. NELSON:  Not next week, no.

16             THE COURT:  So if you get some indication from me next

17   week on these motions, then it doesn't create any problems for

18   you.

19             MR. NELSON:  That would give us a lot of guidance on

20   what to do.

21             THE COURT:  On what to do, right?  I mean, that's what

22   I want to do.

23             Okay.  You have other cases, I take it, too, correct?

24             MR. GRIM:  That's correct.  And I guess it depends on

25   what guidance you give us and whatever rulings, yeah.

1        THE COURT:  I don't know yet.  Okay.

2        Thank you for being here.  Have a good weekend, safe

3   trip back.

4        MR. REID:  Thank you, Your Honor.

5        MR. NELSON:  Thank you.

6        THE COURT:  Rent a car.

7        MR. NELSON:  I just saw the radar between here and

8   Tampa.

9        THE COURT:  Is there a storm coming up?

10       MR. NELSON:  That thing that washed out the panhandle

11  is now over Tampa, and it's going to be delightful in this area

12  starting tomorrow, late afternoon.

13       THE COURT:  Oh, late afternoon, not in the morning?

14       MR. NELSON:  Not in the morning.

15       THE COURT:  Oh, good.  Tomorrow is Saturday.

16       Okay.  Thank you.

17    (The hearing was concluded at 4:00 p.m.)

18              C E R T I F I C A T E

19       I hereby certify that the foregoing is an accurate

20  transcription of proceedings in the above-entitled matter.

21

22  ___08-02-14_____   _____
        DATE              GILDA PASTOR-HERNANDEZ, RPR, FPR
23                        Official United States Court Reporter
                          Wilkie D. Ferguson Jr. U.S. Courthouse
24                        400 North Miami Avenue, Suite 13-3
                          Miami, Florida  33128     305.523.5118
25                        gphofficialreporter@gmail.com

**A**

abeyance 32:20 45:15
able 6:11 24:13,14
about 6:15 8:7 9:5,23 12:2,12
  14:2,19,20 15:3 16:24 17:1
  18:8 20:4,6 22:20 25:12,21
  26:4,11 28:1,6 33:25 34:9
  35:7,9 37:14 40:5,17 42:3
above 17:13
above-entitled 49:20
absolutely 40:17 44:5 46:23
According 38:6
accountability 38:16
accountable 37:19 38:7,14,25
accurate 49:19
acted 31:3
active 15:4 45:14
actual 40:13,15
actually 18:14 25:13,15 28:8,10
  28:16 30:21 37:2
add 9:24
added 45:18,20
additional 37:7
addressing 4:12
Administration 37:20 38:7,21
admissible 14:16
advised 25:25
affair 6:5
affected 45:15
affects 47:3
affidavit 27:1
after 9:16,20 19:15 22:13,16
  26:1,12 35:3 43:19 48:13
afternoon 4:2,15 49:12,13
again 14:2,4 27:2 32:14
against 21:2,3 37:17 48:4
age 17:13
ago 17:23 18:15 27:19,20
agree 7:23 9:19,19 10:4 13:6
  19:14,21 22:14,15,16 40:7
  43:18
agreed 7:20 9:18 26:24
agreement 19:8 37:18 38:3 39:5
  39:6,7
agrees 10:3
air 22:18,22
aircraft 1:4,4,7 2:1,5 4:7,8,8,9,9
  4:16,17,21,24 18:9 20:20 26:4
  37:20 41:7 42:20,23 47:8
Airlines 18:20
al 1:8
alleged 10:15 47:17
allow 32:17
almost 29:11
alone 17:14
along 4:17 6:10
already 7:21 23:16 25:9,10,19
  42:7 43:24 47:1
although 8:14 42:2
always 18:4 37:3 43:11 47:21
amenable 28:23
amend 41:1,22 47:21
Amended 18:16
amendment 42:17
American 21:3,5 42:1
Americans 21:23 40:11
another 25:13 33:24 43:4
answer 14:13
anticipating 25:23
anybody 20:18 35:7
anybody's 27:15
anything 15:21 17:6 20:2 22:1
  29:8 34:2 35:7,8,9 37:13 48:1
  48:4,6,11,12
anyway 33:6,24 37:5
appeal 44:20,21 45:16,17
Appeals 24:20 33:20
appear 5:7
APPEARANCES 1:13

**B**

appearing 5:9
appellate 8:2 36:24,25
applicable 18:7
applies 44:24
appreciate 17:15 29:19
approximately 25:12
April 5:12 6:3,13 17:12,20
area 49:11
argue 16:8 20:3 21:15 37:17
argued 14:24 18:14 47:1
argument 18:23 36:1
around 32:6
aside 14:1
asked 5:15 16:5
asking 5:7 11:11 16:17 40:4
asserted 42:1
asset 38:4,5,8,12,2,2 39:1,1,12,20
assets 21:5
associate 6:5
assume 8:10
attached 19:9
attempting 28:20
August 17:12
Austria 8:17,23 9:25 10:5,23
  13:14 15:9 16:10 21:10 24:4
  28:6 30:17,24 34:16 43:23
  44:1 47:3,10
Austrian 4:25 5:2 8:7,13 10:11
  10:16 16:2 24:9,25 27:21
  29:17 43:1
Austrians 5:20 35:5
Austrian's 24:22
authority 18:24,24 19:7
automatically 14:16
available 34:5 35:3
Avenue 1:23 2:11 49:24
average 17:13
Aviation 37:19 38:6,13,21
avoid 41:17
away 11:21 20:22 21:17

**B**

back 6:3 14:24 25:17 34:6 49:3
bad 7:3
Baltimore 5:24 21:11
based 20:21 25:9 27:19,25 28:5
  35:14
basis 19:13 29:19
Baymar 45:2
before 1:11 8:10 21:15 22:15
  25:13,16 29:2 34:25 35:4
  43:15 44:16 45:8,14 46:3
beg 31:18
begin 29:12
beginning 25:11
behalf 4:10,16,21 18:14 47:9
being 7:4 22:19 27:21 30:14
  33:3 47:19 49:2
believe 12:23 17:8,16,17 18:11
  43:20
Belm 35:15,21 45:2
Ben 5:1
beneficiary 19:12 37:16,17 39:8
  39:11
beneficiary's 19:10 38:24
benefit 39:11
BENJAMINE 2:5
Berlin 22:22
best 8:25
better 7:14
between 18:21 39:7 49:7
beyond 16:17
big 15:13 17:18 21:25 35:16
  41:10,11,12
bigger 23:1
Bingham 1:14,18
bit 7:17 40:5
bits 27:6
blanket 38:15

**C**

Boggs 2:2
books 18:6
both 8:2,4 9:19 11:14 18:12,14
  18:20 35:20
bottom 40:22
Boulevard 2:2
Brandon 1:18 4:17
Brickell 1:23
briefed 35:20,21 37:11,12
briefing 35:10
bring 7:1
brought 9:23 42:2
bunch 7:9
burden 27:3
Burt 2:6
bypassing 33:2

**C**

C 1:22 49:18,18
calculation 27:19
calculations 25:10
calendar 34:6
call 4:4
came 6:3
Canada 5:25 6:2,3 8:5 15:1
  18:14 21:11 46:2 47:1,6,10
Canadian 5:19 20:24 40:11,18
  41:2,14
Canadians 21:22
car 49:6
care 21:21 33:24
cares 14:19
Carl 2:1 4:23
Carlton 2:6 5:1
case 1:3 4:4 6:1 7:14 12:1 14:2
  14:17,18,23 15:14,18,22
  16:20 17:6 18:5,5,6 19:11,18
  19:20,23 20:20,20,22 21:12
  21:22 22:13,22 23:7 24:14,18
  24:19 25:3,5,24 27:2,25 29:18
  29:21,22 30:6 32:17 33:16
  34:12,12 35:8,14,16 36:15
  37:2 41:15,16,20 42:11 43:14
  43:24 45:4,9 47:4,8,8,24
  48:12
cases 7:9 10:23 12:18 15:4,6,10
  15:19 16:8 17:14 18:20 19:17
  20:12,23 23:7,7,16,20,24,25
  24:6,9,21,22 25:9,24 27:9,23
  30:15 31:3,7,9,16 32:19 33:9
  40:12 43:4 44:7 45:14,25 46:2
  47:12,13,15,2,5 48:12,23
Center 1:19
certain 37:18 38:3
certainly 12:9 23:25 24:6 26:16
  47:23,23
Certificate 3:4
certify 49:19
cetera 24:21
changes 35:17,19
channels 25:18
chat 7:17
CHIEF 1:11
chosen 23:9
Christian 30:19,22
Cincinnati 1:20
Circuit 20:5,5
citizen 16:2
City 1:15
civil 10:18
claim 31:4 47:16
clarify 15:2
clear 5:5 7:25 8:3 21:4
clerk 23:12 45:18,20
client 11:10 15:24 21:22 25:15
  44:25
clients 10:14,17
clock 29:9,12
close 6:8

**C**

closed 24:20
codefendants 11:3 12:2,3
come 5:13 6:10,16 10:5 18:1
  41:11
coming 49:9
comment 20:17
common 37:20
companies 5:18 31:3 47:11
company 4:25 5:2,19,19 10:16
  10:16 21:3,5 42:1 43:1
complain 33:5 44:19
Complaint 18:16 25:16 41:2,23
  42:17 47:21
Complaints 10:15,18 31:5
complete 43:16
completely 34:9,10
completing 8:5
compliance 38:12
concern 20:10 25:24
concerns 24:18
concert 31:3
concluded 49:17
concludes 43:22
conducted 38:14
conflict 22:24
conflicted 34:9,10
conflicts 33:25
confusing 5:6
conquer 20:13 44:9,10
conquering 44:8
consider 29:20
contacts 27:7
content 33:4
contentious 22:20
CONTENTS 3:1
Continent 1:4 4:7,16 18:9
continue 13:20 31:8
contract 19:2 37:17
contractual 39:5,6
contrary 27:3
control 38:4,5,11,11,2,2 39:1,22
  40:14,15
controlled 30:3,16
controls 38:1,2
controversy 18:22
Convention 25:6
corner 32:6
Corporation 1:4 4:7,17
correct 5:22 7:13,15,22 8:18
  10:2,9 12:21 13:1,3,7 15:17
  15:20 21:24 23:1,14 24:2,24
  27:17 29:6 31:25 33:7,10 37:9
  37:24,25 41:21,24 44:5 45:23
  48:23,24
cost 12:15
counsel 25:25 34:5
couple 7:11,11 35:2
course 14:1 16:6 18:19 44:23
court 1:1 2:10 4:2,4,12,13,19,21
  4:25 5:3,9,12,16,2,3 6:1,3,9,13
  6:20,23,25 7:14,16,19,23 8:1
  8:2,6,9,15,19,21,24 9:2,5,8,12
  9:17,21 10:3,10,12,18,22 11:2
  11:6,9,14,18,24 12:2,8,11,13
  12:22 13:2,4,8,10,16,18,20,21
  13:24 14:3,5,7,8,12,16,19,22
  15:8,11,13,18,21,2,4 16:3,6,11
  16:21 17:1,4,6,10,12,15,18,21
  17:24 18:4,18 19:1,5,6,14,18
  19:20,23,25 20:2,15,18,24
  21:2,7,9,13,14,15,17 22:7,13,15
  22:6,10,15,24 23:5,12,15,18
  23:21,24 24:1,3,8,11,13,16,20
  24:25 25:5,19,22 26:3,6,11,15
  26:19,22 27:4,7,10,13,16,18
  27:20,23 28:2,4,12,14,17,21
  28:24 29:7,14,16,18,21,22,24
  30:1,4,6,7,13,18,20,2,5 31:9
  31:14,17,19,21,2,3 32:3,6,10

32:24 33:1,8,11,15,20,20,23
34:7,13,15,18,20,22,2 5 35:4
35:11,14,16,18,22,2 5 36:3,6
36:11,13,16,20,23,24,25,25
37:3,6,13,22 38:1,5,9,18 39:2
39:16,25 40:7,10,15,18,21,24
40:25 41:3,5,11,20,22 42:5,9
42:11,16,22,2 5 43:3,6,8,11,18
44:4,13,18,22 45:1,3,7,9,14
45:17,19,21,2 4 46:5,7,10,13
46:20 47:4,12,18,2 4 48:3,9,16
48:21 49:1,6,9,13,15,23
**courtesy** 26:9
**Courthouse** 2:10 49:23
**Courtroom** 1:5
**Court's** 28:19
**cover** 34:18
**create** 48:17
**created** 37:22
**crisis** 32:7
**critical** 46:17
**current** 15:7 24:15 32:17 36:8
36:10 43:14,24 46:16
**currently** 32:20 45:13 46:1
47:14
**cutoff** 9:15 43:9
**cutoffs** 43:11

**D**

**D** 2:10 49:23
**Dane** 13:16 40:15,18 41:14
**Danish** 12:25 40:10
**date** 16:22 22:1,8,8,14,2 5 23:2
29:5 31:21,22 35:1 43:10
49:22
**dates** 22:4,17,20 29:4 34:1 47:20
**day** 26:1
**days** 9:9 17:9 22:18 34:4
**deal** 5:13 19:18 35:22 36:14,17
36:20 37:3,6
**decide** 45:3
**decides** 11:10
**decision** 20:11
**declaration** 27:6
**defend** 24:7
**defendant** 20:24 28:8,18 45:22
**defendants** 1:9 5:11 7:11 10:1,4
10:7,21 11:17 12:22 29:20
30:12 31:5,11,14,16 33:4
42:22,24 44:8 46:3
**defense** 33:15 42:2,4
**delay** 14:8 33:19 45:9
**Delays** 18:4
**delightful** 49:11
**deny** 29:2 32:11
**department** 28:7
**depends** 11:12 48:24
**depo** 6:6 8:7,13 9:6 14:2 33:4
**deponent** 34:23
**depose** 10:22 11:4 30:20,22
**deposed** 7:6 36:4
**deposes** 11:9
**deposition** 5:23 7:20 8:18 9:3,7
9:15,20,25 10:11 11:13,19
12:5 13:22,24 14:16 15:6 16:7
16:9 23:3,3,4 24:5,7,23 26:23
27:11 28:22 32:18 33:13
34:16 37:16 39:6 43:19
**depositions** 8:5 17:19 24:3 28:21
**Description** 3:12
**destroy** 31:6
**determination** 47:2
**Diamond** 1:7 2:1,5 4:8,8,9,21,24
7:9 8:4,5 30:17 41:7,25 42:20
42:22 43:23 46:2,2 47:1,3,6
47:10,10,10,15
**Diamonds** 4:6
**difference** 18:21
**different** 15:23

**diplomatic** 25:17
**disagree** 18:18
**discovery** 7:19 9:4,8,11,15 16:16
16:18 19:16 21:10 23:18 32:3
32:4 33:19 40:2 42:18 43:9,11
43:14,16,24,2 5 44:2
**discretion** 16:14
**discussed** 7:4 22:4
**discussion** 18:1
**dismiss** 9:16 20:3 24:14,16,19
26:20 29:18 30:6 31:7 33:5
35:13 41:20 42:7 47:8,14,16
**dismissed** 15:22 20:21 21:2
41:16
**dispose** 19:10
**dispute** 13:4,5
**disputed** 42:9,10
**disputes** 23:19
**district** 1:1,1,11 17:14 47:25
**diversity** 12:20,24 13:2 15:5
18:7,23 29:19 31:6 39:17
40:10,13 41:13,14,15
**divide** 20:13 44:9,9
**dividing** 44:8
**division** 1:2 17:14
**docket** 32:20
**documents** 44:3
**doing** 7:7 8:10,10 44:16 48:11
**Doll** 1:14,18
**domicile** 20:6
**done** 8:23 9:20 17:6 21:18 25:19
**doubt** 12:12
**doubtful** 46:15
**down** 6:4 16:24
**Dries** 30:19,23 36:7
**drive** 6:4
**driven** 6:20
**drop** 41:2
**dropping** 29:20
**dumb** 21:7
**during** 32:22

**E**

**E** 49:18,18
**each** 19:6 22:20 32:14
**earlier** 17:22,24,25
**easier** 32:11
**East** 1:19 2:2
**easy** 5:17 9:2 41:5
**effect** 10:20 11:16
**effort** 21:8
**Eleventh** 20:5
**Emerald** 20:4
**emergency** 4:4 5:6,15 40:2 47:20
**employees** 21:5
**end** 25:11 34:10 36:8 38:23
44:19
**ends** 32:4
**enigma** 18:4
**ensure** 38:12
**entered** 29:11
**entire** 17:14 32:18 41:20
**entirely** 20:22
**entirety** 30:15
**entities** 30:16
**especially** 18:5
**ESQ** 1:14,18,22 2:1,5
**et** 1:8 24:21
**Europe** 35:5
**European** 27:24
**even** 7:16,20 10:4,5 12:5 21:11
22:15 24:13 27:3 29:2 34:11
34:13,14,14 43:24 46:18
**event** 7:2 13:22 15:9,16
**eventually** 32:21
**ever** 25:17
**every** 33:15,16
**everybody** 4:2 7:9 10:3 24:19
**everything** 8:10 9:22 10:15

11:14 29:9 38:1 40:2 42:10
48:10
**evidence** 3:11 27:3
**exactly** 15:10 27:8 40:12
**except** 37:7 43:1
**exempt** 45:25
**Exhibits** 3:10,11
**expedite** 32:18
**expense** 15:4 33:13
**experience** 28:5
**explain** 13:11
**explains** 35:18
**expressed** 39:14
**extend** 9:9,15 16:17 22:10 32:3
43:11
**extended** 16:16
**extensions** 34:2
**extra** 9:9

**F**

**F** 49:18
**FAA** 38:3,17,25
**face** 16:24
**fact** 9:22 17:16 25:25
**facts** 13:5 26:25 37:7
**failure** 47:16
**fairly** 37:20 39:10
**family** 6:5
**far** 11:21 26:2,10 28:8 38:9,11
**fast** 48:5
**Fax** 1:17,21,25 2:4,8
**Federal** 18:12 32:8 37:19 38:6
38:12,21 39:19
**FEDERICO** 1:11
**feel** 7:3 20:9
**fellow** 10:8 13:15 15:8
**felt** 18:15
**Ferguson** 2:10 49:23
**few** 17:23
**fiduciary** 39:10
**Fields** 2:6 5:1
**Fifth** 1:15,19
**figure** 15:25 41:17
**file** 27:2 28:19 32:1 42:5
**filed** 6:11 14:3 27:1,5 29:2 32:9
32:11 41:15
**Financial** 1:19
**find** 12:24
**Fine** 19:19
**finish** 19:16
**finished** 5:12
**first** 1:19 11:20 12:4 25:24 27:25
45:7
**fit** 28:22
**five** 9:9 10:9 42:3
**flight** 6:23
**Florida** 1:1,6,24 2:3,7,11 13:17
13:18 18:13 21:12 39:21 48:1
49:24
**fly** 6:4,18,18
**flying** 8:11
**folks** 6:18 42:2
**following** 4:1
**forced** 46:18
**foregoing** 49:19
**foreign** 27:23 29:20 31:5 45:22
**forever** 25:6 34:8
**forget** 17:19
**forward** 16:9
**found** 13:25 15:6
**four** 42:3
**Fowler** 2:2 4:23
**FPR** 2:9 49:22
**fraud** 31:4
**Fraxedas** 46:3
**free** 19:11
**from** 5:10,11 6:13,18,19 10:15
10:25 15:22 17:9,10 18:16
25:11 28:7 32:13 37:1 38:3,16

38:20 39:19,20,23 48:16
**front** 15:5
**fulfill** 21:5
**fully** 35:20 37:11,12
**fundamental** 23:2
**funds** 39:13
**funneling** 10:16

**G**

**gentleman** 11:4
**Germany** 16:10
**gets** 28:10
**GILDA** 2:9 49:22
**give** 14:13 20:10 29:4,9 41:11
44:2 48:19,25
**GmbH** 2:5 4:9,25
**go** 8:17,24 10:12,13 11:7 12:15
12:23 13:16,17,17,18 16:9
19:15 23:21 24:20 25:6 31:11
33:12 34:3,5,11,13,14 41:7
45:24
**goes** 19:6 20:22
**going** 4:19 6:5,11,13 7:6 8:15
10:4,12,22 11:10,25 12:15
15:3,8,11,13,1 5 16:23 18:8
24:17,25 25:1,2 26:19,20
31:23 32:15,22 33:5,23 35:25
36:4,4,6,7 39:12 41:6,18 42:5
43:3,8 44:19 46:22 47:24
49:11
**gone** 24:19 33:8
**good** 4:2,15 13:10 20:9 49:2,15
**gotten** 43:25
**gphofficialreporter@gmail.com**
2:12 49:25
**grab** 7:16 8:1 10:6
**grant** 29:2 47:21
**Gray** 1:22
**great** 8:10,10
**Greenebaum** 1:14,18
**Grim** 1:14 4:11,11,15,16,2 0 7:13
7:15,18,22,2 5 8:3,8,13,17
10:2,8,25 12:21 13:1,3,7,9,18
13:23 14:4,6,24 15:10,12,17
15:20 18:11 19:2,4 20:1,14
21:4,8,12,16,2 0 23:1,14,17,20
24:10,12,15,2 4 25:3,8 27:5,8
27:12,14,17,19,21,2 5 28:5,13
28:16,18 29:6,10,15,17,23,25
30:2,5,14,19,2 1 31:1,13,25
32:16,25 33:7,10 34:3 37:10
37:12,15,24 38:2,6,11,20 39:4
39:17 40:25 41:4,24 42:13
43:13,21,23 45:11,23 46:1,6
46:11,25 47:5 48:7,13,24
**grounds** 26:21 47:15
**Guaranty** 1:4 4:7,17 20:20 26:5
47:8
**guess** 13:16 27:18 31:2 48:24
**guidance** 48:19,25
**guy** 13:15 22:22 40:15
**guys** 43:18

**H**

**Hague** 25:6
**hand** 7:3,4 46:21
**handle** 39:13
**happen** 32:22
**happened** 22:21 37:2
**happens** 19:15 27:24
**harder** 5:17
**harm** 14:7
**hate** 7:7
**having** 17:2,25 21:10 31:5
**hear** 9:22 32:13 35:9
**hearing** 5:6,15 7:24 32:22 43:15
49:17
**hearings** 20:7 30:7
**held** 4:1 32:20 38:14 45:15

**Hello** 4:3
**help** 13:13 16:7 32:13,18 34:1
**helping** 14:8
**helps** 33:8
**hey** 24:20
**him** 11:9 16:7 17:24 36:9
**hold** 19:5 28:22 34:8
**holds** 38:25
**honest** 47:19
**Honor** 4:15 5:22 6:8 7:13,18 8:3
11:1 12:4 15:2 16:5 21:24
24:2 25:21 32:2,21 34:11
41:21 43:13 44:12 46:9,23
47:7 48:7 49:4
**HONORABLE** 1:11
**hopefully** 32:19
**hoping** 45:5,16
**Hotel** 8:25 34:21
**hours** 6:22
**huh** 29:14,16

**I**

**idea** 5:7
**Identification** 3:11
**immediately** 26:10
**impact** 7:7,8 9:25 10:14,17
11:11 20:11 23:6,8 44:10
**impacts** 20:12
**Imperial** 8:25 9:2 34:21
**implications** 45:13
**important** 12:7 18:7
**improper** 45:12
**Inc** 1:7 2:1 4:22,24 42:20
**inclined** 29:18 30:6 41:1
**including** 41:8
**indication** 48:16
**indications** 39:4
**individual** 10:22 30:3,16 36:3,4
39:19
**Industries** 1:7 2:1,5 4:8,9,22
**information** 27:6
**initially** 22:9
**instance** 12:4
**intended** 6:10
**intent** 43:16
**interest** 12:24 18:13,16,2 1 39:23
**interesting** 14:11,12,13
**interests** 18:2
**interfere** 46:8
**interlocutory** 45:16
**interrelated** 44:7
**interrupt** 19:5,6
**Investors** 20:4
**invited** 28:14
**involve** 44:7
**issue** 8:13,19 12:3 14:1,22 15:1,5
18:7,9,10 23:2 35:23 36:14
38:24 40:2 42:15,19,21 43:14
44:16 45:11 46:17,25
**issues** 12:6,7,20 14:17,25 15:3
23:4 24:1 33:18 34:5 35:10
38:17 39:21 41:8 42:12,12,16
42:17,17,18 44:7,24 46:19
**Iversen** 13:15 18:9
**I-75** 6:20

**J**

**J** 46:3
**joinder** 45:12
**Jorden** 2:6
**Jr** 2:10 49:23
**Juan** 1:22 4:18
**judge** 1:11 4:3 14:8 21:15 24:21
26:22
**judges** 12:17,19 20:7
**judgment** 32:2,8,12 42:6
**July** 17:12
**June** 17:12 34:10 46:3,3,11,12
46:13

**jurisdiction** 7:5,6,16 12:20
13:25 14:1 15:5 17:16 20:21
26:21,24 28:23,25 31:6 32:24
32:25 33:2,2,14 35:10,14,23
36:17,18,21 37:4,7 38:10 39:3
39:18 40:6,9 41:8,9,19 42:14
42:16 43:16 44:15 46:17,22
47:1,2,9
**jurisdictional** 11:15 12:6,20
23:4 24:1 27:11 38:18,20
44:24
**just** 5:5,14 6:11 9:5,9 15:18
16:14,15 17:8 20:8 21:2,17,22
22:17,20,21 23:2,11 30:23
32:19 37:14,23 45:15
39:19 40:1 42:2 46:23 49:7
**justice** 28:7

**K**

**keep** 5:17,18 23:9 29:20 32:17
**Kennedy** 2:2
**Kentucky** 1:16
**keys** 38:16
**kicks** 35:5
**kind** 13:10 21:6,7,8 33:1
**kinds** 38:17
**know** 6:6 8:6,6,24 9:5,5,11,17
11:2,2 12:2 13:15 14:15 16:7
16:13 22:1 23:11,12 25:11,15
25:17,20,21 26:23 28:10,10
32:10 34:5 35:3,11,18 39:6
40:14 48:9,11 49:1
**known** 42:3

**L**

**lack** 20:21 29:19 35:13 47:9
**last** 10:9 20:16 26:9 28:21 35:2
**late** 6:15 49:12,13
**later** 22:19 32:10 36:1
**law** 13:5 18:13 19:4 32:12 37:18
39:21 45:18,20
**lawyer** 33:15
**lawyers** 5:17 31:17,19,20
**leading** 13:11
**leaning** 20:2
**learned** 6:15 26:1
**least** 48:10
**leave** 41:1
**leaves** 20:23
**left** 29:24 43:17 44:1
**legal** 44:6
**Legally** 39:13
**less** 35:6
**let** 4:4 17:14 20:9 48:9
**letters** 25:4 28:6
**let's** 4:5 7:17 11:14 24:16
**like** 7:20 12:10 13:12 16:20,21
17:23 22:3 28:13 30:7 34:11
37:22 40:21
**likewise** 29:18
**limitation** 42:4,19
**limitations** 14:17,22 21:14 41:17
41:23 42:1,17,21 45:13 47:14
**limited** 11:20 16:5 23:4
**line** 3:12,12 40:22
**literally** 29:13
**litigation** 19:23
**little** 7:3,17
**LLP** 1:14,18
**logical** 16:14
**long** 18:23 43:5
**longer** 6:18 20:18 23:5
**look** 21:16 34:6 36:9 39:18 40:13
**looked** 47:19
**looking** 33:1
**looks** 38:21
**lot** 10:8 12:15 19:6 21:17 48:19
**lots** 16:19
**Louisville** 1:16

**love** 34:21

**M**

**made** 18:2 21:4
**maintain** 13:19 37:25
**maintenance** 39:1
**make** 9:1 11:20,22 18:23 20:12
20:16
**makes** 12:13 20:8 35:24
**manage** 39:9
**manages** 39:20
**many** 12:16
**March** 17:10,12
**Marked** 3:11
**Martinez** 1:22 4:18
**matter** 7:5 13:25 20:21 28:24
31:24 32:12 33:2 35:23 36:11
36:17 40:9 41:18 42:14 44:15
46:17 47:9 49:20
**matters** 12:17
**may** 1:7 5:13 7:8 17:12 20:16
21:14 22:1,2,6 24:13 32:5
33:25 34:5,11,13,14 35:2 44:5
44:14 48:10
**Maybe** 9:21 11:8 14:10 26:23
**McGRATH** 1:18 4:17 34:7
**mean** 8:12 16:10,23 20:4,7 22:18
28:18 37:15 39:21 40:21
43:12 48:21
**means** 12:18 38:9,18 39:2,16
41:6,15 44:4
**mediating** 47:5
**mediation** 45:24 46:1,18,22
**mediator** 46:3
**Mercedes** 35:15
**mess** 40:3
**Miami** 1:2,6,24 2:7,11,11 8:21
10:5 21:11 49:24,24
**mic** 28:2
**Michael** 1:14 4:11,15
**microphone** 4:13,14 7:17 8:1
**Middle** 47:25
**might** 18:2 22:19 26:22 36:9,24
36:25 44:10
**moment** 28:9 29:13
**momentary** 32:7
**money** 12:15 13:14 14:14 15:24
21:10 30:1
**months** 16:20 17:2,4,13 25:12
25:12,13,16
**more** 6:6 9:24 10:15,23 18:7
23:1 25:21
**MORENO** 1:11
**morning** 49:13,14
**mortgage** 19:9 39:12
**most** 12:17 20:7 24:6 44:4,5
**motion** 1:10 4:5 7:2,3 9:10 16:4
16:18 20:3 29:2 32:8,11 33:5
35:12,13 42:5,7 47:8,14
**motions** 9:16 22:14 23:19 32:1
47:16 48:17
**move** 5:6 18:16 26:20 27:23
47:24,25 48:5
**moved** 5:3
**moving** 29:21
**much** 17:21 23:5 26:12 45:9

**N**

**names** 5:16,17,18
**National** 1:15
**Navarro** 18:19
**necessary** 12:5
**need** 13:22 15:21 24:3,6,8 27:10
34:1,23 47:5
**needed** 7:8
**needs** 41:16
**negligence** 31:4
**Nelson** 2:1 4:23,23 5:25 6:2,8,10
6:15,21,24 8:4 10:11,13,20

11:4,8,12,16 12:4,9,12 18:14
19:24 20:16,20 21:1,24 23:23
23:25 24:2,5 25:21,23 26:4,7
26:14,16,18 28:3 30:2,9,11,11
31:16,18,20,22 32:1,5,7 34:7
34:9,14,16,19,21 40:5,8,12,17
40:20,23 41:10,13,21,25 42:7
42:10,14,19,24 43:1,19,22
44:12,14,21 46:9,12,15,23
47:7,13,23 48:2,15,19 49:5,7
49:10,14
**never** 30:8 47:1
**new** 29:9
**next** 27:2 33:23 43:20 48:10,12
48:13,14,15,16
**nice** 34:22
**None** 22:4
**Normally** 44:9
**North** 2:11 49:24
**note** 9:1
**nothing** 19:23 40:6,8
**notice** 17:21 25:14
**noticed** 17:20
**notwithstanding** 39:5
**number** 1:3 32:21
**numbers** 23:7,8

**O**

**obviously** 16:14,25 18:18 23:3
34:23 36:15
**occasions** 32:22
**off** 16:16,18,2 1 41:14
**offer** 22:10
**offered** 22:6,8,9
**Official** 2:10 49:23
**Oh** 17:4 26:6,18 28:18 45:17,21
49:13,15
**Ohio** 1:20 6:19
**okay** 4:19,21,25 7:16,17,18 8:8
8:19 10:10 12:4,11,13 13:4,21
17:24 18:7 19:19 21:23 23:16
24:17 25:22 26:6 27:16,20
29:14 30:13 31:14 35:7 40:24
41:3,6 42:16 47:19 48:6,9,23
49:1,16
**once** 10:23 46:20
**one** 5:3,5 6:6 7:2,4,7,10,10,12
9:15 10:24 15:13,19 16:16
19:5,18 20:16 26:2,3,3,4,6,7,9
28:14 30:16,20 31:10,15
32:14,16 33:24 39:4,21 41:10
43:4,19,22 45:25 46:21
**ones** 23:8
**only** 17:2,19 19:9 26:2,7 41:9
43:17 44:1 46:5 47:2,13,19
**open** 10:19,20 23:9 32:17
**operated** 38:13
**operations** 38:14
**opportunity** 29:19 31:7
**opposed** 29:21 44:8
**opposite** 33:11
**optimistic** 29:14,16
**options** 21:16
**oral** 30:7
**order** 1:10 28:19
**ordered** 16:9
**originally** 28:17 45:11
**other** 5:11 7:4,8 8:1 10:1,4,16,18
10:23 11:9 12:19,23 15:4 16:8
16:18 19:6,17 20:12,23 23:7
23:23,24,2 5 24:6,9 25:24 26:8
27:9 28:8 29:20 31:9 32:19
33:1,9 35:8,10 37:10 40:4
46:21 47:4,12,13 48:23
**others** 44:10
**out** 6:16,17,17 15:25 19:15,20
19:21 22:5,17 30:2 32:21
36:15 39:11 40:19 41:17 46:5
49:10

**P**

outstanding 9:4,8
over 4:13 8:11,16 9:23 10:8
  12:16 15:2,3 19:22 28:21 38:4
  38:5,16 49:11
overly 33:3
own 11:10 15:19 34:1
owner 38:8
owns 30:16 39:19

pace 27:24 47:25
Page 3:2,12,12
panhandle 6:17 49:10
pardon 31:18 43:6
part 9:10 48:10
particular 43:25 44:23
parties 4:5 31:8
party 12:24 18:13,15,21,22,22
  25:3,5 28:15 41:9
past 17:7 28:8
PASTOR-HERNANDEZ 2:9
  49:22
peace 34:8
pending 23:19 47:9,14
people 5:10
percent 40:1
perhaps 11:21
Period 38:1
permission 19:10
perpetuate 31:4
person 30:11 36:11
personal 7:6 14:1 26:20,24
  32:25 33:2,25 35:10,14 36:17
  36:20 37:6 38:9 39:2,17 40:6
  41:8 42:16 43:15 44:24
perspective 10:25
phone 5:7,9
phonetic 35:15 45:2
pick 7:11,11 22:25 30:25 31:1,11
  31:11 34:25
picked 7:12 22:17,20 34:4
picking 23:2 34:1
piece 16:16
place 8:11,25 11:20 34:17,22
  45:7
plaintiff 1:5,14 4:10,16 12:25
  25:25
plaintiffs 7:11 45:13
plaintiff's 7:12 10:25
plan 36:8,10
plane 6:21
planned 6:16
pleadings 37:14
please 4:12,14
pled 31:3
pledge 19:9 39:12
plenty 9:21
point 17:18 20:16 21:9 27:21
  30:14,17 36:2 40:25 46:21
pointed 30:2 32:21
position 19:13 27:5 30:15 31:2
possible 15:18
posture 46:16
potential 10:14 45:12
power 20:6
powers 37:18
practical 14:14 33:3 44:4,6,14
  44:17
Practically 14:15
prefer 34:20
prejudiced 17:2
preparing 33:13
presented 27:3 37:8,10
probably 10:7,13 12:5 47:24
problem 22:21 28:4 35:11 41:10
  41:11,25 44:9 46:20
problems 16:19 48:17
proceedings 1:10 4:1 49:20
process 25:8,11,13 27:21 28:6

32:18
produce 22:23
professional 26:8
profoundly 12:7
proper 16:1
property 39:23
proposal 8:20,23 9:3 18:3
propound 11:16
PROTECTIVE 1:10
provisions 39:9,14
purpose 37:23
purposes 18:23 38:19,22 39:17
  40:13 43:16
pursuant 18:21
pursue 30:4 39:23
pushing 12:19
put 16:15,18,21 20:5,8 30:22
puts 37:18
putting 13:25
P.A 1:22 2:2
p.m 4:1 49:17

**Q**

question 7:5 11:19 13:5 14:11
  14:13 15:8 40:17
questioning 23:6
questions 11:7,10 13:11 24:4,8
  33:18 40:4
quick 29:1,1
quickly 28:25
quite 8:20
quoted 47:20

**R**

R 2:1 49:18
radar 49:7
raised 12:6,9 14:25 15:3
rather 31:6,10
read 9:22 20:9
ready 9:22 16:19 17:3 19:15,24
  19:25,25 20:1 23:21 26:13,19
  34:3 41:7
real 12:24 18:13,15,21,22
realized 37:15
really 8:12 11:20 13:5,15 27:24
  35:12 38:24 40:1 44:16 46:18
reason 7:2,8 11:23 14:7 16:4
  37:22,24 41:22 47:19
reasons 7:4
received 3:11 43:24
recent 10:15 35:14
refile 21:12
refiling 29:21
refute 27:5
regard 15:7 24:15 27:9 29:10
  43:13 46:25
regarding 20:3 27:7,8
regardless 15:6 43:14 47:2
registration 37:25 38:23
Regulations 38:13
regurgitate 20:8
Reid 2:5 4:3 5:1,1,5,11,14,20,22
  8:1,20,22 9:1,3,7,10,14,18
  11:9,23,25 14:10,15,21,23
  15:22,25 16:4,9,13,23 17:2,5
  17:8,11,15,19,23,2,5 18:19
  19:3,8,17,19,2,22 22:4,7,12,17
  23:11 25:15,19 26:17,20 27:1
  30:9 33:12,17,22 34:4,7,11,23
  35:2,9,13,17,20,2,4 36:2,5,7
  36:12,14,19,22,2,4 37:2,5,9,11
  43:5,7,9,23 44:23 45:2,5,8
  48:8 49:4
Reid's 21:22 29:8
reign 19:11
related 35:8 40:3
relates 28:20 37:1 43:15 45:4
relation 14:24
relationship 39:10

relative 39:13
relatively 39:7,14
relax 24:17
relied 37:16
relief 16:5
rely 6:5
remain 48:3
remember 7:10 9:2 13:10
Rent 49:6
repeat 35:25
REPORTED 2:9
reporter 2:10 19:6 49:23
Reporter's 3:4
Reporting 18:20
represent 5:2
representative 24:9 30:23
representing 36:1
represents 8:4
request 43:25
requirements 38:3
resolve 8:15,19 44:6
resolved 9:9,10 44:16 46:19
response 27:6 29:12
responsible 38:7 39:9
responsive 44:2
rest 37:14
re-raised 14:25
right 4:5 5:16,17,18,2 1 6:7,24
  7:12,19,21 8:16 9:9 10:3,5,7
  10:12 12:13,20,22,25 13:2,8
  13:11,13 14:3,9 15:19,21 16:6
  17:11 19:20 21:1,11,15,21
  23:21 26:25,25 27:8,16 31:24
  32:4,12,12 34:19 36:1,13,19
  37:13 39:20,22,2,5 40:13,16
  40:20 41:5,9,9 43:1,4,44:18
  44:18 45:3,17 46:22 47:22
  48:1,3,21
Riley 20:4
road 16:24
Robinson 1:22
rogatory 25:4 28:6
RPR 2:9 49:22
rule 13:8 15:15 18:21 28:24,25
  33:3,23 36:16 41:1 43:14
  45:16 47:18 48:10
ruled 9:16 16:18 12:13,15,16
  33:14
rules 18:12 24:21 32:8 35:17,18
  35:19
ruling 29:9 37:1 46:20
rulings 22:13 28:23 48:25
running 29:12

**S**

safe 49:2
safely 38:13,14
Sales 4:9,24 42:20,23
same 16:11 18:1 26:21 27:9 30:3
  31:16,17,19,20,21,2 2 36:3,4
  36:11 43:3
sandbagged 24:19
sat 6:21
satisfy 18:2
Saturday 49:15
save 14:14
saves 15:24
Savings 18:19
saw 49:7
saying 9:14 28:5
says 19:9 33:15,20
scheduled 7:23 22:1 24:11,12
  43:19 46:1
scheduling 28:20
scope 11:12,14 23:3
SE 2:6
second 25:8 34:10
see 13:10 14:8 20:11 26:23 31:23
  40:1

seek 39:11
seems 7:20 12:5,19 16:14 40:2
sees 28:22
selection 7:12
sell 19:9
send 13:13
sense 9:19 11:20,22 12:13 35:24
September 16:22 17:13 19:16
  20:23 23:17,22 31:10,23
served 17:8 25:10,13,16,2 5 26:1
  26:2,7,8,10,12 28:9,10 43:2,5
  43:7,8
service 16:1 25:8,23 28:1 29:13
set 17:19 23:16 31:9 46:8,10
settle 46:14,16
seven 17:13
several 27:6 28:21
share 31:16
short 6:23
shot 10:24 15:13 20:11
show 5:15 10:4 22:22
shows 18:6
side 7:7 46:21
sides 35:20
silent 48:3
similar 42:11
simply 21:17
since 4:5 6:6,6 9:23
sir 11:23 48:8
situation 15:23
six 25:12
slammed 36:8
solely 23:4
solution 41:12 44:14
some 9:4 12:19 26:22 33:17 34:5
  45:14 47:25 48:16
somebody 5:7 36:9
someone 7:5 22:6 24:6
something 18:6 22:2 28:2,25
  29:5
Sometimes 16:11 48:4
somewhere 16:24
soon 22:12 29:11
sorry 4:15 6:3 11:25 26:18 28:4
  46:4 48:13
South 1:15
SOUTHERN 1:1
speak 30:9 34:7
speaking 5:2 14:15
speaks 30:12
specific 44:24
spend 13:14
spent 10:8
stand 4:12 10:6 19:22
standard 39:10,14,16
standards 18:12
standing 19:13 33:18
standpoint 38:21 39:19,24
started 41:14
starting 49:12
starts 29:9
state 13:16,18,20 14:3,8,16
  15:18 21:13,15,16 29:21
  47:16
States 1:1,11 2:10 49:23
statute 14:17,22 21:14 41:17,23
  42:1,4,17,19,2,0 45:12 47:3
stay 8:24 9:11 11:25 12:16,17,18
  15:14,21 29:8,10,11
still 13:10,19,21,2,5 15:5 19:12
  22:13 30:4,5 32:1 34:11,12
  35:5 41:7,7 47:5
storm 49:9
straightforward 39:7
Street 1:15,19 2:6
strike 19:7
structure 37:21
stuff 21:18
subject 7:5 13:25 20:16,21 28:24

33:2 35:23 36:16 40:8 41:18
42:14 44:15 46:16 47:9
**subsequent** 24:4
**substantive** 11:15 12:7 18:13
23:6 39:20,24 47:13
**sufficient** 38:23
**suggested** 16:15
**suggestion** 29:7,8
**suit** 13:19
**Suite** 1:23 2:3,7,11 49:24
**summary** 32:1,8 42:6
**summer** 35:4
**super** 46:21
**Supreme** 35:14
**sure** 6:11 14:10,21 17:15 20:14
25:22 35:24 36:12
**suspect** 10:7
**suspense** 10:19
**switches** 27:3
**system** 6:16 29:17

**T**

**T** 49:18,18
**TABLE** 3:1
**take** 8:16,17 13:22 14:2,4 16:6
21:21 22:12 24:3,22 26:12,23
27:10 32:17 34:16 48:23
**taken** 24:5 33:24
**takes** 25:6,11 28:6 34:17 45:21
**taking** 5:23
**talk** 14:2 34:23
**talking** 4:19 26:11
**Tampa** 2:3 5:10 6:17,18 21:11
46:3 49:8,11
**technically** 18:5
**telegraphing** 24:18
**tell** 6:9 8:9 11:18 20:4,10 23:7
26:2,9 32:15
**terms** 38:2
**testify** 16:2
**testimony** 37:16 39:6
**Thank** 48:2 49:2,4,5,16
**their** 29:12
**thing** 5:5 16:12 21:25 40:11 43:3
43:17 44:1,4,5,6 49:10
**things** 12:17,18 16:1 18:25
19:12 32:13 40:3
**think** 5:6,14 6:25 9:18,19 10:25
15:1 16:11,17 17:15,20 18:8
18:10 22:24 23:1,8 26:11
27:14 29:10 30:10 32:7,15
37:12 44:13 46:9,13,15,18
48:9
**Third** 20:5
**though** 27:3 32:3 33:16 43:25
**thought** 12:14 32:16
**three** 6:22 10:14,21 11:16 15:10
15:11 25:9,12,13 30:16 31:3
31:16 32:19 40:4 42:24,25
43:4 44:7,8 46:2,5,6,7 47:10
**three-year-old** 18:6
**threshold** 33:18 44:16 46:19
**through** 10:16 25:6,12,17 46:22
**throughout** 30:15
**ties** 10:15
**time** 9:20,21 10:8 12:15,17
14:14 15:3 16:12 19:5,18
21:10 26:12 27:15 28:7,7,22
32:9
**times** 12:16 15:11
**tired** 4:13
**today** 6:17 16:25 24:17 26:4
43:15
**together** 44:11
**told** 30:1
**tomorrow** 49:12,15
**totally** 36:8
**Tower** 1:15
**track** 23:10

**traditional** 35:5
**transcription** 49:20
**trial** 13:12 16:22 19:15 21:9
23:16,22 29:4 31:11,21,22
41:8 43:9
**tried** 20:22
**trip** 49:3
**trouble** 33:13
**true** 13:9 16:3 47:7
**trust** 1:5 4:8,16 18:9,17 19:8
37:18,20 38:3,15 39:15,23
40:5
**trustee** 1:4 4:7 13:19 18:11,17
18:24 19:9,11 20:6 37:19,19
38:7,22,24,2 5 39:8,8,11,18,22
40:5
**trustees** 38:14
**try** 14:6
**trying** 14:13 18:1
**turn** 38:16
**turned** 6:16
**twice** 11:21
**two** 10:1,4 15:4 16:20 17:2,4
19:17 20:23 22:18 23:23,25
24:6,9,22 25:9,24 26:8 27:9
27:19,20 28:8 29:20 31:5,7,9
46:5 47:13
**two-and-a-half** 25:16
**type** 39:10,14 40:11

**U**

**ultimate** 38:22
**ultimately** 39:22
**under** 18:11 39:21
**understand** 9:12 11:6 20:12
**unique** 15:14
**United** 1:1,11 2:10 49:23
**unless** 4:13 26:24 32:23,24,25
**until** 7:23 19:16 16:18 27:18
28:22 29:1 33:13 34:9 46:19
**upper** 46:21
**USA** 4:9,24 5:19 8:4 18:14 29:25
41:7,7 42:1,20,23 47:10,15
**use** 4:13 15:5 27:15
**used** 48:4
**U.S** 49:23

**V**

**V** 1:18
**various** 8:5
**venue** 33:18
**versus** 4:8 35:15 45:2
**very** 4:13 16:5 35:5 44:14 46:15
46:17,17
**vests** 39:22
**vibrating** 28:3
**Vienna** 8:24 22:2 34:21
**view** 33:11
**vs** 1:6

**W**

**wait** 29:1
**walk** 21:17
**want** 5:14,15 6:4 7:1 8:6,6,9,15
8:22,22 9:5,12,17,24 10:5,6,7
10:23 11:2,2,3,24 12:8,17
13:12 14:14 20:3 24:22 27:13
28:12 30:20,22,2 3 32:12,13
32:14 35:4,9,22 37:13 39:25
40:3 41:22 44:2 46:7,9 48:22
**wanted** 5:4 8:21 11:18 17:24
20:10 22:2 40:1
**wants** 35:7
**warrant** 33:19
**washed** 49:10
**wasn't** 5:8 6:11 7:3 22:19 35:3
40:1
**waste** 21:8

**wasting** 21:10
**way** 9:20,23 10:14 13:14 16:15
18:1 21:5 23:9 27:25 31:2
33:1,24 41:1 43:4 46:24 47:17
47:18
**week** 33:23 34:10 43:19 48:10
48:12,13,13,15,17
**weekend** 49:2
**weeks** 10:9 17:23 27:19,20 28:1
28:6,21 35:2
**well** 7:25 9:14,21 14:12,19 17:21
17:25 18:12 20:25 21:4,12
22:17 24:5 25:8 26:17,22 27:1
27:5 28:16,17,24 29:10,17,22
29:24 30:2 32:3,16 33:23 35:4
35:11 36:25 37:15 38:2,11,11
38:20,24 39:4,5,21 40:25 41:5
43:5 44:11 45:11 46:7,25
48:11
**went** 15:2 21:3 28:1 45:17
**were** 4:1 5:23 6:13 17:8,19,20
22:13,19 24:16 40:25 42:5
45:15
**weren't** 5:9
**we'll** 20:1 25:17 27:2
**we're** 11:25 15:22 16:23 17:2
19:15 26:4,11 36:15 47:24
**we've** 4:5 5:18 7:19 14:24 19:8
21:18 34:4
**whereabouts** 38:25
**while** 15:15
**White** 2:2 4:23
**whole** 21:22 41:16
**wider** 23:5
**Wilkie** 2:10 49:23
**willing** 8:17 9:7,15 28:19
**win** 14:8 33:5 44:19
**wiped** 6:16
**wiping** 6:17
**wiser** 21:15
**witness** 35:3 36:1
**wonderful** 8:12
**words** 11:9 12:23
**work** 12:18 22:7,8,9,18 25:9
34:4 40:23
**worked** 22:4,19
**working** 8:4,11
**works** 25:17 46:24
**worry** 14:19
**worth** 6:23
**wouldn't** 13:13 14:2 16:8 20:22
21:17 27:10,13 34:20 38:23
46:7
**write** 40:21
**writing** 20:6,8
**writings** 33:17
**written** 9:24
**wrong** 24:21
**Wyoming** 13:17 19:4 37:18

**Y**

**yeah** 14:5 16:4,23 17:5 25:5
32:10,10 33:20 35:2 37:5,5
41:4 45:1,8 48:25
**year** 18:15
**years** 42:3
**yesterday** 16:15 18:3

**1**

**10** 28:1,6
**100** 2:6 40:1
**101** 1:15
**1087** 1:5
**11** 18:5
**11-61663-CIV-MORENO** 1:3
**11-61670** 23:12 31:10
**11-61684** 23:13 31:10 42:11
**1221** 1:23
**13-3** 1:5 2:11 49:24

**14** 32:19
**14th** 43:21,22
**1600** 1:23
**17** 18:22
**1700** 2:3
**18th** 46:4,11,12,13

**2**

**2** 1:7
**2nd** 2:6 5:13
**20th** 22:2,6
**2014** 1:7
**21st** 22:6
**21-day** 29:12
**22nd** 16:17 23:17 32:5 35:3
**2350** 1:19
**255** 1:19

**3**

**3:05** 4:1
**30th** 5:12 6:4,13
**30(b)(6)** 28:22 30:22,23 32:18
33:4 36:5 44:1
**305.416.6880** 1:24
**305.416.6887** 1:25
**305.523.5118** 2:11 49:24
**305.530.0050** 2:8
**305.530.0055** 2:8
**33128** 2:11 49:24
**33131** 1:24 2:7
**33602** 2:3
**3500** 1:15

**4**

**4:00** 49:17
**400** 2:11 49:24
**40202** 1:16
**4200** 2:7
**45202** 1:20
**49** 3:4

**5**

**501** 2:2
**502.540.2235** 1:17
**502.589.4200** 1:16
**513.455.7641** 1:20
**513.762.7941** 1:21

**6**

**6.4(b)** 19:8
**61684** 31:13

**7**

**70** 17:9

**8**

**8th** 46:3
**813.222.1108** 2:4,4